## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

-------------------------------------------------------- x

In re:                                              :

                                                    :   Case No. 11-CV-3554-F

VITRO, S.A.B. DE C.V.,                              :

                                                    :   Bankruptcy Court Case No. 11-33335-hdh-15

      Debtor in a Foreign Proceeding.              :

                                                    :

-------------------------------------------------------- x

### DECLARATION OF LOUIS A. LIPNER IN SUPPORT OF
### FINTECH INVESTMENTS LTD.'S STATEMENT IN SUPPORT OF EMERGENCY
### MOTION FOR PRELIMINARY INJUNCTION PENDING APPEAL OF
### ORDER DENYING ENFORCEMENT OF MEXICAN COURT'S ORDER

I, Louis A. Lipner, do hereby declare as follows:

1.        I am associated with the law firm of Cleary Gottlieb Steen & Hamilton LLP, co-counsel to Fintech Investments Ltd. in the above-captioned proceedings.  I am admitted to the bar of the State of New York and have been a member in good standing of such bar since 2010.  I have an application pending for admission *pro hac vice* in the above-captioned proceedings.

2.        I respectfully submit this Declaration in support of the Fintech Investments Ltd.'s Statement in Support of Emergency Motion for Preliminary Injunction Pending Appeal of Order Denying Enforcement of Mexican Court's Order, filed in this Court on June 26, 2012.  The purpose of this Declaration is to place certain exhibits referred to in the Statement before this Court.

3.        Attached hereto as **Exhibit A** is a true and correct copy of the *Concurso* Approval Order, dated February 3, 2012 (English Translation), as entered into evidence at the hearing held June 4-7, 2012 in the above-captioned chapter 15 case (the "Enforcement Hearing") as Vitro Exhibit 150.

4.        Attached hereto as **Exhibit B** is a true and correct copy of an excerpt of the *Ley de Concursos Mercantiles* containing Article 89, as entered into evidence at the Enforcement Hearing as Ad Hoc Exhibit 139.

I declare under penalty of perjury that, to the best of my knowledge, information and belief, the foregoing is true and correct.

Executed on June 26, 2012

New York, New York

Louis A. Lipher

**<u>EXHIBIT A</u>**

[*Appears seal of the Federal Judicial Power which literally reads:*
United Mexican States.-
Federal Judicial Power.]

---

## AGREEMENT VERIFICATION JUDGMENT
### Commercial Insolvency with prior restructuring plan
### 38/2010.

---

**Monterrey, Nuevo Leon, February third, two thousand and twelve.**

**Having reviewed** the court records from the **commercial insolvency** 38/2010, presented by **Alejandro Francisco Sánchez Mújica**, in his capacity as legal representative of the merchant named "**Vitro**", *Sociedad Anonima Bursatil de Capital Variable* (Variable Capital Stock Market Company), regarding the approval or not of the restructuring agreement, and:

### AS A RESULT:

**FIRST.** Through writ presented on December thirteenth, two thousand and ten, before the Central Filing Desk of the District Courts in Civil and Labor Matters in the State, **Alejandro Francisco Sánchez Mújica**, legal representative of the merchant named **"Vitro"**, *Sociedad Anonima Bursatil de Capital Variable*, legal capacity already recognized through the court records, along with other creditors, holders of approximately sixty eight percent of the total indebtedness, as he declared under oath, he requested that Vitro be declared in **COMMERCIAL INSOLVENY WITH PRIOR RESTRUCTURING PLAN,** founding his claim in the facts and legal considerations evidenced in such writ and, in order to avoid repetitions, are considered to be reproduced herein as if literally inserted, additionally displaying the legal documents.

1

Elena García Beltrán
Expert Translator

**SECOND.** This court was in charge of reviewing this request due to alternation, being filed on December seventeenth two thousand and ten, date in which the clarification request was made, and once the requirements established in articles 17, 20, 24, and 339 of the Commercial Reorganization and Bankruptcy Law (*Ley de Concursos Mercantiles)*, through court record dated December twenty fourth two thousand and then, such request was declared to be admissible. It was ordered to send an official communication, attaching a copy of the claim and the clarification writ to the Federal Institute of Specialists of Insolvency Procedures (*Instituto Federal de Especialistas de Concursos Mercantiles, IFECOM*), as well as to the tax authorities, to let them know that the demand had been admitted. Likewise, the court granted the injunctive relief petitions requested by the plaintiff.

**THIRD.** Given that the petition for commercial insolvency was prepared based on the hypothesis established in article 339 of the Commercial Reorganization and Bankruptcy Law, in such writ of admission it was ordered that, once the notification of such procedure to the merchant became effective, the judgment established in article 42 of such law, would be issued within a five business days term.

**FOURTH.** Through resolution dated January seventh, two thousand and eleven, the holder of this District Court declared the commercial insolvency to be inadmissible. Dissatisfied with such declaration, the merchant and the creditors, supporting the request, filed an appeal which, due to alternation, was known by the Magistrate of the Second Unitary Court of the Fourth Circuit who, through resolution issued on April eighth, two thousand and eleven, rendered null and void

2

Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

the appealed judgment, assumed jurisdiction and declared "Vitro", *Sociedad Anonima Bursatil de Capital Variable* in commercial insolvency.

**FIFTH.** In compliance with the foregoing, this jurisdictional body, among other things, processed the conciliation stage and sent an official communication to the Federal Institute of Specialists of Insolvency Procedures in order to appoint a specialist to perform the functions of a Conciliator, pursuant to the terms of article 43, section IV of the Commercial Reorganization and Bankruptcy Law.

**SIXTH.** Through an agreement dated April twenty sixth, two thousand and eleven, Mr. Javier Luis Navarro Velasco was appointed as Conciliator and he accepted under oath such office and, among other activities, he began the process to recognize the credits pursuant to articles 121, 123, and 128 of the Commercial Reorganization and Bankruptcy Law.

**SEVENTH.** After the Conciliator presented before this Court both the definitive and provisional recognition credit list on August twelfth two thousand and eleven, the judgment regarding the recognition, classification and priority of credits was issued.

**SEVENTH.** On December sixth from last year, the draft of the original agreement executed between the merchant and several of the recognized creditors was presented in due time and proper form for its judicial approval, therefore, through court records, on the following day, such agreement was exposed to all the recognized creditors, for a term of five days, in order to: **a) declare as to the authenticity of their consent and, if applicable, filing the corresponding**

3

Elena García Beltrán
Expert Translator

objection; and **b) the common recognized creditors failing to execute it, exercised, if applicable, their veto right.**

**EIGHTH.** The five days term granted to the parties for the purposes described on article 162 of the Commercial Reorganization and Bankruptcy Law, elapsed from December twelfth to the seventeenth of last year without any of the parties presenting the objections related to the **authenticity of their consent**, (which shall be explained below), while several common creditors who did not executed the agreement, exercised their veto right.

<strong>WHEREAS:</strong>

**FIRST.** This Fourth District Court in Civil and Labor Matters in the State of Nuevo Leon is competent to know this matter pursuant to the provisions of articles 104, section I, of the Political Constitution of the United Mexican States (*Constitucion Politica de los Estados Unidos Mexicanos*), 53 of the Organic Law of the Federal Judicial Power (*Ley Orgánica del Poder Judicial de la Federación*) and articles 17 and 132 of the Commercial Reorganization and Bankruptcy Law.

Pursuant to article 3rd of the Commercial Reorganization and Bankruptcy Law, the purpose of the conciliation stage is to maintain the merchant's company through the agreement executed with its recognized creditors. Therefore, one of the hypothesis to conclude the procedure is through the judicial approval of an agreement executed by and between the merchant and by the creditors representing the degree and amount provided by the law, and to achieve the foregoing, it shall be reviewed that the proposed agreement meets all the

Elena García Beltrán
Expert Translator

[*Appears seal of the Federal Judicial Power which literally reads:*
United Mexican States.-
Federal Judicial Power.]

requirements provided in Title Fifth of such law and that it does not violate any other laws.

**SECOND.** Regarding the veto right exercised by several of the recognized creditors, article 163 of the quoted law, it states that:

*"Article 163. The agreement may be vetoed by a simple majority of the unsecured Recognized Creditors, or by any number of unsecured Recognized Creditors whose recognized credits jointly represent at least fifty percent of the total recognized credits to such class of creditors. Unsecured Recognized Creditors that do not sign the agreement may not exercise their veto power if such agreement provides for the payment of their corresponding credits in accordance with Article 158 hereof.".*

From the foregoing provision it may be inferred that the agreement may be vetoed by a simple majority of unsecured recognized creditors or by any number of creditors as long as their credit jointly represents at least fifty percent of the aggregate amount of the recognized credits in favor of such creditors, i.e., in order for the veto right to be effective, it is necessary for it to be exercised at least by the fifty percent plus one of the unsecured creditors, or, notwithstanding the number of creditors, they shall represent at least 50% (fifty percent) of the aggregate amount of the recognized credits.

In kind, there are twenty six recognized creditors vetoing this agreement, therefore it is indubitable that the latter fails to represent the required simple majority of the unsecured creditors, given that in the recognition, classification and

5

Elena García Beltrán
Expert Translator

priority judgment dated August twelfth, two thousand and twelve, a total of two
hundred ninety three creditors where recognized, while, through the
individualization of several creditors in their capacity of holders of the bonds and of
the stock traded certificates, and of the fact that the conciliator subtracted the
common representatives and others from the recognized amounts, eight hundred
and thirty creditors executed the agreement (section 19).

It shall be clarified that the veto exercised by "BPC POC", LP was not taken
into consideration given that it has not been yet recognized as creditor, due to the
fact that its request was filed during the term to challenge the recognition,
classification and priority judgment, while it was considered to duplicate the veto of
the common representatives of the bonds, due to the fact that "Wilmington Trust"
FSB acts as common representative of the holders of bonds 2012 and 2017,
whereas "US Bank" represents the holders of bonds 2013 and, additionally has a
personal credit.

The second hypothesis provided in article 163 of the Commercial
Reorganization and Bankruptcy Law fails to happen in order to veto the agreement,
because, without carrying out the corresponding arithmetical operations, the
position they state they have, and which allegedly is higher than the fifty percent of
the aggregate amount of the credits, is based on the fact that the recognized
credits of the subsidiaries shall not be taken into consideration by virtue of the
appeal filed against the recognition, classification and priority judgment dated
August twelfth, two thousand and eleven, however, this jurisdictional body is not
able to exclude such credits given the fact that such remedy has yet to be



Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

resolved, therefore the recognition thereof currently governs, hence, the analyzed

assumption to dismiss the agreement proposed by the conciliator is not realized.

Regarding this matter it shall be stressed that pursuant to the insolvency

law, the recognition of credits of a person, either an individual or entity, in the

judgment with the same name, has as consequence that such person is

considered as a **recognized creditor**[1] in order to, among other things, be able to

participate in the negotiations contributing to the execution of an agreement, and, if

possible, adheres thereof, or to exercise their veto right in the event of

disagreement; in this sense, it is evident that as long as this judgment persists, the

right they have to vote and execute the agreement agreed with the required

majority[2], may not be ignored.

---

[1] *"**Article 4.** The following definitions shall apply for purposes of this Law:*
*I. **Recognized Creditors** are creditors that acquired such status on the basis of a recognition, classification and priority judgment;*
*V. **Estate** is the portion of the Merchant's assets declared in insolvency, which assets are comprised of goods and rights, with the exception of those expressly excluded pursuant to the terms of this Law, and against which assets the **Recognized Creditors** and others who have a right may enforce their credits…"*

[2] *"**Article 156.** All the Recognized Creditors, except the creditors of tax credits and the labor credits referred to in Article 123(XXIII)(A) of the Constitution and in this Law, may sign the agreement.*
*The creditors do not have to meet to vote on whether to sign the agreement.*
***Article 157.** To be effective, the agreement must be signed by the merchant and the **Recognized Creditors** that represent more than fifty percent of the sum of:*
*I. The amount recognized to all the **unsecured Recognized Creditors**; and*
*II. The amount acknowledged to those **secured Recognized Creditors or Recognized Creditors with special privilege** that sign the agreement.*
***Article 162.** Once the day following the day the agreement and the summary thereof are filed for the approval of the judge, the judge shall make them available to the Recognized Creditors for a period of five days, so that, if applicable, the **Recognized Creditors** may:*
*I. File the objections they deem appropriate with respect to the authenticity of their approval of the agreement; and*
*II. Exercise the right to veto referred to in the following article.*
***Article 161.** Once the conciliator opines that he counts with the favorable opinion of the merchant and of the **majority of the Recognized Creditors** required to approve the draft agreement, the conciliator shall make the draft available to the Recognized Creditors for a period of ten days to allow them to comment on such draft and, if applicable, to sign the agreement.*
***Article 163.** The agreement may be vetoed by a simple majority of the **unsecured Recognized Creditors**, or by any number of unsecured Recognized Creditors whose recognized credits jointly represent at least fifty percent of the total credits recognized to such class of creditor.*



Elena García Beltrán
Expert Translator

**THIRD.** Regarding the declaration made by the unsecured recognized creditors who didn't execute the agreement, it shall be stated that they are **inadmissible**, pursuant to the provisions of article 162 of the Law in the matter which states that:

> *"Article 162. Once the day following the day the agreement and the summary thereof are filed for the approval of the judge, the judge shall make them available to the Recognized Creditors for a period of five days, so that, if applicable, the Recognized Creditors may:--- I. File the objections they deem appropriate with respect to the **authenticity of their approval of the agreement;** and --- II. Exercise the right to veto referred to in the following article."*

From the foregoing legal provision it is inferred that once the agreement and its summary is filed in the insolvency procedure by the Conciliator, the parties shall have the right to object the insolvency agreement and exercise their veto right; however, in the event they file objections, their arguments shall only be regarding the authenticity of their approval of the agreement; i.e., whether it is because whomever signed on their behalf lacks the necessary authorities to bind them on such terms, lacks the legal capacity to do so, or there are defects in consent, which does not happen in this particular case since the creditors, among other things, argued matters related to the provisions of the agreement, the legitimacy of the subsidiaries, etc.

Due to the foregoing, it may be inferred that such arguments are not aimed to the authenticity of their approval to the agreement regarding the agreement filed,

8



[*Appears seal of the Federal Judicial Power which literally reads:*
United Mexican States.-
Federal Judicial Power.]

so much so that in order to object it is a necessary requirement that, whomever is doing so, needs to have signed the agreement; therefore, the objections and arguments presented by the creditors failing to execute the agreement are inadmissible. On the other hand, "BPC POC", LP fails to have the legitimacy to exercise such right, since it has not been recognized as creditor given that its request was filed during the term to appeal the recognition, classification and priority judgment.

**FOURTH.** Now it's time to decide if the proposed agreement meets the effectiveness requirements, which consist in the following:

**a)** It is filed within the term granted for the conciliation stage (article 145) and;

**b)** Has the necessary signatures (article 157).

In this particular case, the term of one hundred and eighty five calendar days, corresponding to the conciliation period, started as of May eleventh two thousand an eleven, and ended on November twelfth of that same year. Also, it is evidenced in court records dated November ninth and twenty second, that, per request of the Conciliator, an initial extension of forty five days was granted and, later, it was extended to ninety calendar days which was considered to start as of the day following the termination of the term provided for the conciliation period, therefore the conciliation stage was extended until February ten, two thousand and twelve.

Elena García Beltrán
Expert Translator

On such matter, the aforementioned specialist on **December fifth of last year**, filed the original agreement executed by the merchant and several recognized creditors for its judicial approval, as it is provided by article 161 of the law, which shows that in this case the first effectiveness requirement of the agreement is met.

In order to determine if the second requirement is met, the content of article 157 of the Commercial Reorganization and Bankruptcy Law shall be specified, which literally states:

*"**Article 157**. To be effective, the agreement must be signed by the merchant and the __Recognized Creditors__ that represent more than fifty percent of the sum of:*

*I. __The amount recognized to all the unsecured Recognized Creditors__; and*

*II. The amount acknowledged to those secured Recognized Creditors or Recognized Creditors with special privilege that sign the agreement."*

Then, in order to prove the effectiveness of the agreement regarding the provisions of the foregoing article, first, it shall be taken into consideration that according to the list of creditors appearing in the recognition, classification and priority judgment dated August twelfth, two thousand and eleven, the creditors classified as secured and with special privileges fail to appear, appearing only those unsecured recognized creditors, as well as the tax creditor.

Due to the foregoing, it is evident that in this case, the hypothesis provided in section I of article 157 of the Law in the Matter, is applicable.

10



Elena García Beltrán
Expert Translator

[*Appears seal of the Federal Judicial Power which literally reads:*
United Mexican States.-
Federal Judicial Power.]

From the court records, specifically regarding the recognition, classification and priority judgment, it is shown that the **unsecured creditors**, with their corresponding amounts in UDIs (*investment units*) are the following:

**Classification: Unsecured**

**Priority:** They collect in a pro rata basis with respect to others in the same classification, regardless of the dates, once the foregoing credit has been covered.

**Based on:** Articles 217, 222, and 223 of the Commercial Reorganization and Bankruptcy Law.

| | |
|---|---|
| Abraham Martínez Campos | 1,212,847.25 |
| Administración de Fondos Funerarios, S.A. de C.V. | 334,496.47 |
| Administración de Inmuebles Vitro, S.A. de C.V. | 10,892.99 |
| Administración de Inmuebles Vitro, S.A. de C.V. | 1,023,961.80 |
| Adrián Guadalupe Sada González | 453,400.84 |
| Adriana Ramírez Medrano | 260,705.48 |
| Aerovitro, S.A. de C.V. | 17,289,127.73 |
| Alejandra del Carmen Morales Quiroz | 23,803.55 |
| Alejandro Rodríguez Monterde | 113,350.21 |
| Alicia León Lutteroth | 22,670.04 |
| Alicia Sierra Morales y/o Adriaan Ten Kate Thielen | 56,675.10 |
| Álvaro Rocha Lerdo de Tejada | 22,670.04 |
| Amalia Vega Rodríguez | 169,571.91 |
| Ana María Domínguez Moussier | 113,350.21 |
| Angélica Cárdenas Dávila | 340,050.63 |
| Antonio Morales Contreras | 45,340.08 |
| Arnoldo Sergio Santaella Sendel | 249,370.46 |
| Arnulfo Padilla Padilla | 6,801,012.63 |
| Arturo Gonzalo Garza Palazuelos | 226,700.42 |
| Auerelius Opportunities Fund IV, Ltd | 684,999,177.96 |
| Aurora Esther González Gámez | 27,430.75 |
| Avitech de Monterrey, S.A. de C.V. | 2,254.89 |
| Axel Ortega Ruiz | 22,670.04 |
| Tenedores de certificados bursátiles Vitro 08 a través del representante común Banco Invex, S.A. Institución de Banca Múltiple, Invex Grupo Financiero. | 22,987,781.70 |


Elena García Beltrán
Expert Translator

| | |
|---|---|
| Bank of New York Mellon | 589,615.47 |
| Bank of New York Mellon | 6,443,792.92 |
| Basilio Marco Antonio Almazán Goñi | 453,400.84 |
| Benjamín Zermeno Padilla | 332,796.22 |
| Bienes Muebles e Inmuebles del Centro, S.A. de C.V. | 113,350.21 |
| BNP Paribas | 46,349.06 |
| BNP Paribas | 2,211.34 |
| BNP Paribas Prime Brokerage | 31,640,321.14 |
| BNP Paribas Prime Brokerage Inc. | 1,644,248.28 |
| Brookville Opportunities Fund, L.P. (anteriormente Brookville Horizons Fund, L.P.) | 9,988.30 |
| Brown Brothers Harriman & Co. | 2,264,780.89 |
| Brown Brothers Harriman & Co. | 1,364,538.66 |
| Brown Brothers Harriman & Co. | 1,049,030.39 |
| Carlos Felicitos Fernández Sepúlveda | 453,400.84 |
| Carmen Laura Borja Fraustro | 725,441.35 |
| Carmine Puca Camacho y/o Martha Guadalupe Sánchez Bolaños | 226,700.42 |
| CCM Pension-A, L.L.C. | 4,973,377.01 |
| CCM Pension-B, L.L.C. | 1,042,658.67 |
| CCM Pension-C, L.L.C. | 2,078,617.56 |
| Cecilia Consuelo Izurieta Villacis y/o Francisco José Menendez Alonso | 274,987.61 |
| Celso Javier Treviño Elizondo | 113,350.21 |
| Citibank, N.A. | 52,375,884.54 |
| Citibank, N.A. | 49,209,025.78 |
| Citibank, N.A. | 25,831,896.26 |
| Claudia Borja Frausto | 725,441.35 |
| Comercializadora Alcali, S.A. de C.V. | 175,325.70 |
| Comercializadora Alcali, S.A. de C.V. | 678,023.27 |
| Comercializadora Alcali, S.A. de C.V. | 1,862,232.65 |
| Comercializadora Alcalí, S.A. de C.V. | 13,204,314.15 |
| Compañía Vidriera, S.A. de C.V. | 253,751,850.76 |
| Compañía Vidriera, S.A. de C.V. | 2,879,636.12 |
| Compañía Vidriera, S.A. de C.V. | 28,618,962.62 |
| Compañía Vidriera, S.A. de C.V. | 403,051,915.77 |
| Compañía Vidriera, S.A. de C.V. | 44,715,712.77 |
| Compañía Vidriera, S.A. de C.V. | 118,646,914.47 |
| Compañía Vidriera, S.A. de C.V. | 63,366,503.69 |
| Compañía Vidriera, S.A. de C.V. | 6,032,459.86 |
| Conjunto Loma del Bosque, A.C. | 290,629.94 |
| Conjunto Loma del Bosque, A.C. | 136,020.25 |
| Contrarian Advantage Master Fund I Limited | 3,580,816.19 |
| Contrarian Capital Senior Secured, L.P. | 5,602,002.12 |
| Contrarian Capital Trade Claims, L.P. | 7,477,107.47 |



Elena García Beltrán
Expert Translator

[*Appears seal of the Federal Judicial Power which literally reads:*
United Mexican States.-
Federal Judicial Power.]

Format A-55

| Contrarian Distressed Equity, L.P. | 360,507.74 |
|---|---|
| Contrarian Emerging Markets, L.P. | 29,771,876.92 |
| Contrarian Long Short Credit, L.P. | 1,538,718.77 |
| Creel, García-Cuellar, Aiza y Enriquez, S.C. | 1,282.57 |
| Crisa Libbey Mexico, S. de R.L. de C.V. | 92,117.35 |
| Chanin Captial Partners, L.L.C. | 2,224,938.56 |
| Chevez, Ruiz, Zamarripa y Cía., S.C. | 44,443.78 |
| D.F. King & Co., Inc. | 117,036.58 |
| D.F. King (Europe) Limited | 18,818.38 |
| David Juan Anabitarte García | 56,675.10 |
| Davidson Kempner Distressed Opportunities Fund, L.P. | 102,334,468.24 |
| Davidson Kempner Distressed Opportunities International LTD. | 151,602,886.03 |
| Davidson Kempner Institutional Partners, L.P. | 55,111,295.72 |
| Davidson Kempner International LTD. | 60,638,106.74 |
| Davidson Kempner Partners | 24,252,755.77 |
| Desarrollo Personal y Familiar, A.C. | 275,421.52 |
| Diana Laura Doris Alejandro | 79,345.15 |
| Edmundo García Pérez | 113,350.21 |
| Elliot International, L.P. | 233,369,175.02 |
| Emanuel Wapinski Blumert | 226,700.42 |
| Engracia Doniz Gutiérrez | 136,020.25 |
| Eric Gustavo Almazán Goñi | 680,101.26 |
| Esther Guadalupe Cueva Garza | 453,400.84 |
| Eugenio Martín Zambrano Elizondo | 204,030.38 |
| Federico Javier Lo Riggio Frasson | 3,513.86 |
| Felipe José Mario Tomás Cortés Font | 226,700.42 |
| Felipe Salinas Chávez | 2,040,303.79 |
| Fernando Canales Lozano y/o Alejandra Canales Ucha | 680,101.26 |
| Fernando Escobedo Ortiz | 45,340.08 |
| Fernando Franco Nolasco | 453,400.84 |
| FIC Regiomontano S.A.P.I. de C.V. | 239.05 |
| FIC Regiomontano S.A.P.I. de C.V. | 55.26 |
| FIC Regiomontano, S.A.P.I. de C.V. | 50,276,557.00 |
| FIC Regiomontano, S.A.P.I. de C.V. | 31,961,923.93 |
| Fintech Investments Ltd. | 501,828,802.70 |
| Fintech Investments Ltd. | 44,675,878.56 |
| Fintech Investments, Ltd. | 217,072,833.33 |
| Fintech Investments, Ltd. | 167,548,899.17 |
| Fintech Investments, Ltd. | 491,011,156.34 |
| Francisco Javier Rebollar Reyes | 113,350.21 |
| Fumiklin, S.A. de C.V. | 1,263.61 |

13



Elena García Beltrán
Expert Translator

| | |
|---|---|
| Gabriel José de la Torre Rivera | 453,400.84 |
| Gerardo Díaz Torres | 680,101.26 |
| Gerardo Jesús Arguello Leal | 566,751.05 |
| Gerardo Villalobos Chávez | 226,700.42 |
| Gladys Leticia Tappan Esquivel | 648,363.20 |
| Gloria Irene González Tenorio | 226,700.42 |
| Gonzalo Fabián Medina Hernández | 1,793,702.79 |
| Grupo Divitsa, S. de R.L. de C.V. | 680,101.26 |
| Guadalupe Cárdenas Dávila | 226,700.42 |
| Guillermo Becerril Rodríguez | 3,513.86 |
| Guy Georges Albert Marie Le Brun Cuzin | 113,350.21 |
| Héctor Hernández Anaya | 22,670.04 |
| Humberto Garza González | 226,700.42 |
| Ignacio Caballero Lara | 226,700.42 |
| Industria del Alcali, S.A. de C.V. | 47,467,557.30 |
| Industrial del Álcali, S.A. de C.V. | 3,230,709.55 |
| IP Vitro Vidrio y Cristal Ltd. | 31,708,580.24 |
| Irene Albarrán Rodríguez | 34,005.06 |
| IXE Banco, S.A. Institución de Banca Múltiple | 553,874.47 |
| IXE Soluciones, S.A. de C.V., SOFOM, E.R., IXE Grupo | 102,015.19 |
| Jaime Borja Frausto | 725,441.35 |
| Javier Dondé Escalante | 90,680.17 |
| Javier Fernández Trujillo | 68,010.13 |
| Javier López Ortiz | 113,350.21 |
| Javier Pérez Rocha | 59,108.96 |
| Jorge Alberto Arredondo Zambrano | 102,015.19 |
| Jorge Arturo Gavito Mohar y/o María Cristina Rebeca Gavito Mohar | 113,350.21 |
| José Ángel Almada Santa Ana y/o Silvia Elizabeth Monter Moreno | 249,370.46 |
| José Antonio Rodríguez Muñiz | 68,010.13 |
| José Eduardo Cornejo Martínez | 53,274.60 |
| José Enrique Gómez Pérez | 204,030.38 |
| José Gabriel Sirvent Cámara | 204,030.38 |
| José Luis Aguilar Gil | 226,700.42 |
| José Luis Vázquez Costilla | 30,219.17 |
| José María Fernández Gamez | 793,451.47 |
| José Rubén Conchas Bojalil | 226,700.42 |
| JP Morgan Clearing Corp. | 33,808,515.79 |
| JP Morgan Clearing Corp. | 1,644,248.28 |
| JP Morgan Clearing Corp. | 27,988,204.29 |
| JP Morgan Chase Bank, N.A. | 40,836,550.14 |
| JP Morgan Chase Bank, N.A. | 65,386,671.57 |
| JP Morgan Chase Bank, N.A. | 75,617,036.98 |

14

Elena García Beltrán
Expert Translator

Case 3:13-cv-03545-F Document 9 Filed 02/16/12 Entered 02/16/12 19:52:50 Page 50 of 108 Desc
[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]
Exhibit B    Page 16 of 82
Format A-55

| | |
|---|---|
| Juan Bushdid Marck | 467,002.87 |
| Juan Felix Cárdenas Dávila | 226,700.42 |
| Juan Francisco Hernández Medina | 600,756.12 |
| Juan Francisco Vázquez Herrera | 158,690.30 |
| Juan Manuel González Ruiz | 81,158.75 |
| Juan Pablo González Madrigal | 56,675.10 |
| Knighthead Master Fund, L.P. | 210,903,687.43 |
| Laura Catalina Garza Herrera | 226,700.42 |
| Lidag, S.A. de C.V. | 2,387.77 |
| LMA, SPC, EN REPRESENTACIÓN DE MAP 84 SEGREGATED PORTFOLIO | 10,759,000.57 |
| Lord Abbett Bond-Debenture Fund, Inc. | 13,322,240.49 |
| Luis Adolfo Ruíz de Chávez Cervantes | 226,700.42 |
| Luis Alberto Ruiz Cruz | 113,350.21 |
| Luis Daniel Orozco Rodríguez | 559,950.26 |
| Luis Francisco Aranda Estrella | 75,264.54 |
| Luis Jorge Turati Álvarez | 181,360.34 |
| M.H. Davidson & Co. | 3,739,667.33 |
| Ma Sacramento Verónica Borja Frausto | 725,441.35 |
| Magdalena Naim Sucar | 22,670.04 |
| Magdalena Zambrano Elizondo | 453,400.84 |
| Manuel Torres Huato | 113,350.21 |
| Marco Antonio Pinón Doniz | 226,700.42 |
| Marco Antonio Sotomayor Juvera | 680,101.26 |
| María Asunción Costilla Gómez | 872,796.62 |
| María Celestina Vargas Salcedo | 1,207,536.70 |
| María Cristina Bandrich Chávez | 62,342.62 |
| María de los Ángeles Moreno Arroyo | 113,350.21 |
| María del Carmen Arreola Alapizco | 68,010.13 |
| María del Cármen Pinon Doniz | 136,020.25 |
| María del Rocío Pliego Cervantes y/o Mariela Pliego Cervantes | 113,350.21 |
| María del Socorro Gómez Gil | 113,350.21 |
| María Dolores Orvananos Márquez | 6,801.01 |
| María Dolores Rodríguez Salazar | 136,020.25 |
| María Elena Dip Márquez | 117,317.47 |
| María Elena Moya Aceves | 90,680.17 |
| María Emilia Cepeda Yzaga de Rospigliosi | 158,690.29 |
| María Emilia Pohls Andrade | 68,010.13 |
| María Esther Montes Hernández y/o Héctor Ramón Martín Montes | 6,957,889.32 |
| María Fernanda Siegrist Prado | 113,350.21 |



Elena García Beltrán
Expert Translator

| | |
|---|---|
| María Gabriela Pliego Cervantes y/o Mariela Pliego Cervantes | 113,350.21 |
| María Guadalupe Hernández García | 56,675.10 |
| María Guadalupe Monserrat Alejandra Vigil Toscano | 56,675.10 |
| María Margarita Castro González | 68,010.13 |
| Mario Martínez Becerril | 113,350.21 |
| Marisol Gómez Díaz | 68,010.13 |
| Martha Beatriz Dip Márquez | 117,317.47 |
| Melissa Vieyra Padilla y/o Rafaél Villagomez Contreras | 906,801.68 |
| Menpa Chiller Service, S.A. de C.V. | 2,527.22 |
| Mercedes Bonnin Arrieta y/o María del Cármen Erales Sabido | 113,350.21 |
| Metrométrica Avanzada, S.A. de C.V. | 1,314,862.44 |
| Miguel Carrillo Martínez | 136,020.25 |
| Miguel Neumann Castillo | 226,700.42 |
| Moises Kanan Tawil | 113,350.21 |
| Moneda, S.A. Administradora de Fondos de Inversión, Moneda Deuda Latinoamericana Fondo de Inversión | 78,096,581.38 |
| Morgan Stanley and Co., L.L.C. | 333,056.01 |
| Nacional Financiera, S.N.C. | 30,188,417.47 |
| National Financial Services, L.L.C. | 39,966.73 |
| National Financial Services, L.L.C. | 4,656,277.65 |
| National Financial Services, L.L.C. | 374,888.60 |
| Oppenheimer & Co. Inc. | 4,026,230.14 |
| Oppenheimer & Co. Inc. | 328,849.66 |
| Orlafam, S.A. de C.V. | 1,212,847.25 |
| Oscar Elizondo Alonso | 884.53 |
| Oscar Ernesto Córdova y Soto | 45,340.08 |
| Óscar Zavala López y/o Christian Zavala López | 226,700.42 |
| Paciencia Ontanón Sánchez | 453,400.84 |
| Patricia González González | 100.65 |
| Patterson Belknap Webb & Tyler LLP | 75,742.31 |
| Pedro Gustavo Catella Eguren | 113,350.21 |
| Performancia Creativa Integral, S.A. de C.V. | 1,314,862.44 |
| Permal Contrarian Fund I, Ltd. | 3,127,937.35 |
| Proyectos Construcciones Mantenimiento y Asesoría, S.A. de C. V. | 113,350.21 |
| Rafael Ángel Rosado Lebrum | 11,335.02 |
| Ramiro Torres Ramírez | 453,400.84 |
| Ramón Antonio Rionda de González Arguelles | 68,010.13 |
| Raúl Robles Álvarez | 226,700.42 |
| RBC Capital Markets, L.L.C. | 117,923.09 |
| RBC Capital Markets, L.L.C. | 117,923.09 |
| RBC Capital Markets, L.L.C. | 333,056.01 |
| RBC Dominion Securities, Inc. | 303,230.81 |



Elena García Beltrán
Expert Translator

[*Appears seal of the Federal Judicial Power which literally reads:*
United Mexican States.-
Federal Judicial Power.]

Format A-55

| | |
|---|---|
| RBC Dominion Securities, Inc. | 1,145,712.68 |
| RBC Dominion Securities, Inc. | 1,404,188.02 |
| René Lee Reyes | 498,740.93 |
| Roberto Gutiérrez García | 16,095.73 |
| Rodolfo Alberto Farías Rivera | 90,680.17 |
| Rogelio Juárez Ruiz | 31,783.40 |
| Rogelio Morales Botello | 453,400.84 |
| Rómulo Chávez Olivares | 793,451.47 |
| Rosario Galindez González | 45,340.08 |
| Salvador Díaz Campos | 226,700.42 |
| Salvador Gómez Díaz | 68,010.13 |
| Salvador Gómez Ramírez | 22,670.04 |
| Holders of cebures Vitro 03 through common representative Scotia Inverlat, Casa de Bolsa, S.A. de C.V. Grupo Financiero Scotiabank Inverlat. | 9,855,722.42 |
| Sergio Arturo Guerrero Reynoso | 1,464,031.33 |
| Servicios Vidriera Guadalajara, S.A. de C.V. | 166,480.94 |
| Servicios Vitro Cosmos, S.A. de C.V. | 277,468.23 |
| Sigvard Ortiz Sarralde | 272,040.51 |
| Sigvard Ortiz Reyes Spindola | 6,744,337.53 |
| Simón Anibal Villavicencio Cinco | 113,350.21 |
| Sistema Avanzado Bachillerato Educ. Sup. Edo. Gto. (SABES) | 4,012,597.45 |
| State Street Bank and Trust | 99,916.81 |
| State Street Bank and Trust | 98,654.91 |
| The Bank of New York | 5,794.29 |
| The Bank of New York Mellon | 276,781.34 |
| The Liverpool Limited Partnership | 155,580,560.16 |
| Thomspon & Knight Abogados, S.C. | 1,658.01 |
| Thompson & Knight LLP | 627,771.24 |
| Holders of 2013 bonds represented by U.S. Bank N.A. | 190,307,661.86 |
| UBS Financial Services Inc. | 3,840,923.68 |
| UBS Financial Services Inc. | 7,577,024.28 |
| UBS Financial Services, Inc. | 4,423,027.86 |
| UBS Securities, L.L.C. | 336,922.98 |
| UBS Securities, L.L.C. | 3,226,091.86 |
| Uriel González Chona | 56,675.10 |
| US Bank | 27,564.43 |
| Vanguard Marketing Corporation | 19,730.99 |
| Vanguard Marketing Corporation | 16,846.15 |
| Victor Manuel Treviño Herrera | 56,675.10 |
| Vidriera Los Reyes, S.A. de C.V. | 141,973,241.32 |

17


Elena García Beltrán
Expert Translator

| Vidriera Monterrey, S.A. de C.V. | 61,839.73 |
|---|---|
| Vidriera Monterrey, S.A. de C.V. | 85,186,265.19 |
| Vidriera Monterrey, S.A. de C.V. | 164,769,157.83 |
| Vidrio Plano de México, S.A. de C.V. | 204,232.88 |
| Vidrio Plano, S.A. de C.V. | 482,440.68 |
| Viméxico S.A. de C.V. | 83,222,542.26 |
| Virgina Borja Frausto | 725,441.35 |
| Vitro Automotriz, S.A. de C.V. | 270,996,759.74 |
| Vitro Cristalglass S.L | 2,874.74 |
| Vitro Envases Norteamérica, S.A. de C.V. | 159,474,582.95 |
| Vitro Envases Norteamérica, S.A. de C.V. | 987,314,671.04 |
| Vitro Envases Norteamérica, S.A. de C.V. | 1,510,651,233.89 |
| Vitro Envases Norteamérica, S.A. de C.V. | 154,787,435.34 |
| Vitro Envases Norteamérica, S.A. de C.V. | 6,980,936.17 |
| Vitro Europa Ltd | 161,409,894.80 |
| Vitro Europa Ltd | 103,797,728.95 |
| Vitro Global Ltd. | 9,806,846.51 |
| Vitro Packaging L.L.C. | 26,847,071.94 |
| Vitro Vidrio y Cristal, S.A. de C.V. | 337,886,497.72 |
| Vitro Vidrio y Cristal, S.A. de C.V. | 76,114,503.89 |
| VVP Europa Holdings B.V. | 77,245,527.64 |
| Walter Armando Gómez Díaz | 68,010.13 |
| Holders of 2017 bonds represented by Wilmington Trust FSB | 463,750,521.81 |
| Holders of 2012 bonds, represented by Wilmington Trust FSB | 221,333,843.84 |
| Yvonne Kawas Baboune y/o José Bernardo Kawas Bichara | 56,675.10 |

Secondly, the list composing section 14 and filed by the conciliator with the agreement shall be taken into consideration; the foregoing shows that the specialist is considering several persons not identified in the recognition, classification and priority judgment, due to the fact that they requested the individualization in order to appear and execute the agreement in their capacity as holders of the bonds and of the stock traded certificates.

In this regard, this District Court determines that even if this group of people has not requested their recognition of credits individually in the credit recognition

18



Elena Ga__ía Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

stage, the truth is that they were recognized as creditors in their capacity as holders of the bonds and of the stock traded certificates not identified through the corresponding common representatives. [3]

It shall also be highlighted that several persons that individualized their requests were subtracted from the recognized credits of other institutions; while the conciliator informed through the formats of the Federal Institute of Commercial Insolvencies (*Instituto Federal de Concursos Mercantiles*) several transfers of ownership of credits (bonds), therefore, several holders increased the amount of their credits, subtracting the common representatives in the same proportion, except for the sale of bonds carried out by **Moneda, S.A. Administradora de Fondos de Inversión, Moneda Deuda Latinoamericana Fondo de Inversión,** because in such case, given the fact that the acquiring party of the securities was unknown, such position was added to such of the common representatives.

Therefore the vote of the updated persons shall be counted, given that, in general, they were recognized as creditors, and its addition only had as consequence the decrease in the amounts recognized of several institutions, therefore the votes of credits or of non recognized amounts, are not being counted.

Therefore, the **updated list of creditors, regarding their individualization and amounts**, is the following:

| | CREDITOR | AMOUNT |
|---|---|---|
| 1. | Abelardo Martínez Mendoza | 3,369.23 |
| 2. | Abraham Martínez Campos | 1,212,847.25 |
| 3. | Accivest Global Advisors | 10,461,463.15 |

[3] **Recognition, classification and priority judgment** "*3. The holders who failed to request their individual recognition of the stock certificates Vitro 03 and 08 and Bonds 2003, 2012 and 2017 are recognized as creditors, which are represented through their corresponding common representatives.*"


Elena García Beltrán
Expert Translator

| 4. | Actividades de Alta Cultura en México | 673,846.26 |
|---|---|---|
| 5. | Adalberto Ocampo Saldate | 3,369.23 |
| 6. | Administración de Fondos Funerarios S.A. de C.V. | 334,496.47 |
| 7. | Administración de Inmuebles Vitro, S.A. de C.V. (now FIC Export, S.A. de C.V.) | 1,023,961.80 |
| 8. | Administración de Inmuebles Vitro, S.A. de C.V. (noe FIC Export, S.A. de C.V.) | 10.892.99 |
| 9. | Adolfo González Taméz | 3,369.23 |
| 10. | Adolfo Iván Cantú Calderón | 3,369.23 |
| 11. | Adrián Carlos Meouchi Cueva | 3,369.23 |
| 12. | Adrián Guadalupe Sada González | 453,400.84 |
| 13. | Adrián Jaramillo Mata | 3,369.23 |
| 14. | Adrián Ontiveros Pérez | 3,369.23 |
| 15. | Adrián Treviño Guerrero | 3,369.23 |
| 16. | Adriana Ramírez Medrano | 260,705.48 |
| 17. | Aerovitro, S.A. de C.V. | 17,289,127.73 |
| 18. | Agustín Rosendo Ríos Martínez | 3,369.23 |
| 19. | Alberto Hernández Delsol | 3,369.23 |
| 20. | Alberto Hernández Tellez | 3,369.23 |
| 21. | Alberto Luis López Garza | 113,350.21 |
| 22. | Alberto Solis Oba | 3,369.23 |
| 23. | Alejandra del Carmen Morales Quiroz | 23,803.55 |
| 24. | Alejandro Algaze | 411,062.07 |
| 25. | Alejandro Almaguer Vega | 3,369.23 |
| 26. | Alejandro Barrero Fagoaga | 1,122,167.08 |
| 27. | Alejandro Becker del Río | 3,369.23 |
| 28. | Alejandro Cantú Garza | 3,369.23 |
| 29. | Alejandro David Álvarez Hoyt | 3,369.23 |
| 30. | Alejandro de Jesús Astorga Cantú | 3,369.23 |
| 31. | Alejandro Francisco Sánchez Mújica | 3,369.23 |
| 32. | Alejandro Garza González | 3,369.23 |
| 33. | Alejandro González | 107,815.40 |
| 34. | Alejandro González Ojeda | 3,369.23 |
| 35. | Alejandro Iván Sepúlveda A. | 3, 369.23 |
| 36. | Alejandro Leal García | 3,369.23 |
| 37. | Alejandro Marcelo Camou Cubillas | 3,369,231.29 |
| 38. | Alejandro Mendoza Cervantes | 3,369.23 |
| 39. | Alejandro Molina Castillo | 3,369.23 |
| 40. | Alejandro Rodríguez Monterde | 113,350.21 |
| 41. | Alex Holding Co. | 333,056.01 |
| 42. | Alexis Delgado | 83,264.00 |
| 43. | Alfonso Gómez Tamez | 3,369.23 |
| 44. | Alfonso Javier Cantú González | 3,369.23 |
| 45. | Alfonso de Jesús Rodríguez Nájera | 3,369.23 |
| 46. | Alfonso Sáenz Espericueta | 3,369.23 |
| 47. | Alfredo Amador Ortega | 3,369.23 |
| 48. | Alfredo Caltum | 666,112.02 |
| 49. | Alfredo Meléndez Arteaga | 3,369.23 |
| 50. | Alicia León Lutteroth | 22,670.04 |
| 51. | Alicia Sierra Morales and/or Adriaan Ten Kate Thielen | 56,675.10 |
| 52. | Alvaro Marín Zamora | 3,368.23 |
| 53. | Alvaro Rocha Lerdo de Tejada | 22,670.04 |
| 54. | Amalia Vega Rodríguez | 169,571.91 |
| 55. | Ana Lylia Leyva Solis | 3,369.23 |
| 56. | Ana María Bringas Rábago | 113,350.21 |
| 57. | Ana María Delano Abbot | 13,322,240.48 |
| 58. | Ana María Domínguez Moussier | 113,350.21 |
| 59. | Andra Rodríguez Pérez - Goñi | 322,272.66 |
| 60. | Andrés Castillo Martínez | 3,369.23 |
| 61. | Andrés Ramírez Chavez | 3,369.23 |
| 62. | Andrés Von Dincklage | 216,486.41 |
| 63. | Andrew Luwings Lee Stevens | 33,305.60 |
| 64. | Angel Abdenago Vázquez Alonso | 3,369.23 |
| 65. | Angel Alonso Sáenz Valero | 3,369.23 |
| 66. | Ángel David Alba Garrido | 3,369.23 |
| 67. | Ángel de Jesús | 1,875,105.35 |


Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

| 68. | Ángel de Jesús | 333,056.01 |
|---|---|---|
| 69. | Ángel Gregorio Martínez Cantú | 3,369.23 |
| 70. | Angélica Cárdenas Dávila | 340,050.63 |
| 71. | Anne Jee | 333,056.01 |
| 72. | Antonio Docampo | 328,849.65 |
| 73. | Antonio Gilberto Schleske Farah | 113,350.21 |
| 74. | Antonio Javier Ruiz González | 3,369.23 |
| 75. | Antonio Kuri Ahued | 960,230.92 |
| 76. | Antonio Morales Contreras | 45,340.08 |
| 77. | Anwar Leonardo Aguilar Araujo | 3,369.23 |
| 78. | Apolinar Figueroa Navarrete | 3,369.23 |
| 79. | Araceli García Peña | 3,369.23 |
| 80. | Armando Molina García | 3,369.23 |
| 81. | Armin Zimmerztadt | 1,287,046.35 |
| 82. | Armin Zimmerztadt | 33,692.31 |
| 83. | Armin Zimmerztadt | 43,800.01 |
| 84. | Armin Zimmerztadt | 333,056.01 |
| 85. | Arnoldo Sergio Santaella Sendel | 249,370.46 |
| 86. | Arturo Padilla Padilla | 6,801,012.63 |
| 87. | Arturo Alejandro Escamilla Benavides | 3,369.23 |
| 88. | Arturo Enrique Alcantara Sanchez | 3,369.23 |
| 89. | Arturo Gonzalo Garza Palazuelos | 226,700.42 |
| 90. | Arturo Javier Sainz Chávez | 3,369.23 |
| 91. | Arturo Vite del Valle | 3,369.23 |
| 92. | Aurelius Opportunieties Fund IV, Ltd. | 684,999,177.96 |
| 93. | Aurora Esther González Gámez | 27,430.75 |
| 94. | Avitech de Monterrey, S.A. de C.V. | 2,254.89 |
| 95. | Axel Ortega Ruiz | 22,670.04 |
| 96. | Bachean Investment | 499,584.02 |
| 97. | Baldomero Gardea de la Fuente | 3,369.23 |
| 98. | Bancard International Investment | 3,330,560.12 |
| 99. | Banco Santander | 1,973,097.93 |
| 100. | Banco Santander | 3,830,114.14 |
| 101. | Bank of New York Mellon | 6,443,792.92 |
| 102. | Bank of New York Mellon | 589,615.47 |
| 103. | Barcelona Investments Ltd | 493,274.48 |
| 104. | Basilio Marco Antonio Almazán Goñi | 453,400.84 |
| 105. | Benjamín Acuña Pérez | 3,369.23 |
| 106. | Benjamín Hernández Cortez | 3,369.23 |
| 107. | Benjamín Puga Arriaga | 3,369.23 |
| 108. | Benjamín Zermeno Padilla | 332,796.22 |
| 109. | Bernardo Splenser | 67,384.63 |
| 110. | Beta Capital MGMT LP | 149,875.21 |
| 111. | Beta Capital MGMT LP | 999,168.04 |
| 112. | Beta Capital MGMT LP | 333,056.01 |
| 113. | Beta Capital MGMT LP | 166,528.01 |
| 114. | Beta Capital MGMT LP | 599,500.82 |
| 115. | Beta Capital MGMT LP | 33,305.60 |
| 116. | Beta Capital MGMT LP | 366,361.61 |
| 117. | Beta Capital MGMT LP | 499,584.02 |
| 118. | Beta Capital MGMT LP | 1,665,280.06 |
| 119. | Beta Capital MGMT LP | 166,528.01 |
| 120. | Beta Capital MGMT LP | 333,056.01 |
| 121. | Beta Capital MGMT LP | 333,056.01 |
| 122. | Beta Capital MGMT LP | 499,584.02 |
| 123. | Bienes Muebles e Inmuebles del Centro, S.A. de C.V. | 113,350.21 |
| 124. | Blanca Amelia Montaño López Castro | 3,369.23 |
| 125. | BNP Paribas | 46,349.06 |
| 126. | BNP Paribas | 2,211.34 |
| 127. | BNP Paribas Prime Brookerage | 31,640,321.14 |
| 128. | BNP Paribas Prime Brookerage, Inc | 1,644,248.28 |
| 129. | Breterville S.A. | 2,298,089.48 |



Elena García Beltrán
Expert Translator

| 130. | Breterville S.A. | 33,305.60 |
|---|---|---|
| 131. | Brígida Angélica Salgado Ávila | 3,369.23 |
| 132. | Brookville Opportunities Fund, L.P. (formerly known as Brookville Horizons Fund, L.P. | 9,988.30 |
| 133. | Brown Brothers Harriman & Co. | 0.00 |
| 134. | Brown Brothers Harriman & Co. | 0.00 |
| 135. | Brown Brothers Harriman & Co. | 1,049,030.39 |
| 136. | Carlos A Enriquez | 1,665,280.06 |
| 137. | Carlos Alberto Calderón Bautista | 3,369.23 |
| 138. | Carlos Alberto Gómez de León. | 3,369.23 |
| 139. | Carlos Alfredo Moreno Robles | 3,369.23 |
| 140. | Carlos Constandse Madrazo | 2,833,755.26 |
| 141. | Carlos Daniel Tovar Rivera | 3,369.23 |
| 142. | Carlos Federico Segovia Cruz | 3,369.23 |
| 143. | Carlos Felicitos Fernández Sepúlveda | 453,400.84 |
| 144. | Carlos Galnares Alonso | 269,538.50 |
| 145. | Carlos Humberto Gutierrez Escarpita | 3,369.23 |
| 146. | Carlos Mario Bernal Gálvez | 3,369.23 |
| 147. | Carlos Miguel Leyton González | 3,369.23 |
| 148. | Carlos Padilla Verdeja | 3,369.23 |
| 149. | Carmen Laura Borja Frausto | 725,441.35 |
| 150. | Carmine Puca Camacho and/or Martha Guadalupe Sánchez Bolaños | 226,700.42 |
| 151. | Carolina Camacho Solis | 3,369.23 |
| 152. | CCM Pension- A, L.L.C. | 4,973,377.01 |
| 153. | CCM Pension- B, L.L.C. | 1,042,658.67 |
| 154. | CCM Pension- C, L.L.C | 2,078,617.56 |
| 155. | Cecilia Consuelo Izurieta Villacis and/or Francisco José Menéndez Alonso | 274,987.61 |
| 156. | Celso Javier Treviño Reynoso | 113,350.21 |
| 157. | César Eduardo García Duran | 3,369.23 |
| 158. | César Eduardo Vásquez Montemayor | 3,369.23 |
| 159. | CFM Mónaco | 230,194.74 |
| 160. | Citibank, N.A. | 51,027,600.95 |
| 161. | Citibank, N.A. | 48,229,841.11 |
| 162. | Citibank, N.A. | 11,694,601.80 |
| 163. | Clariden Leu AG | 99,916.80 |
| 164. | Claudia Borja Frausto | 725,441.35 |
| 165. | Claudia Guadalupe Silva Castillo | 3,369.23 |
| 166. | Claudio Luis del Valle Cabello | 3,369.23 |
| 167. | Comercializadora Álcali, S.A. de C.V. | 13,204,314.15 |
| 168. | Comercializadora Álcali, S.A. de C.V. | 1,862,232.65 |
| 169. | Comercializadora Álcali, S.A. de C.V. | 678,023.27 |
| 170. | Comercializadora Álcali, S.A. de C.V. | 175,325.70 |
| 171. | Commonwealth Inst Ltd. | 336,923.13 |
| 172. | Compañía Vidriera, S.A. de C.V. | 253,751,850.76 |
| 173. | Compañía Vidriera, S.A. de C.V. | 63,366,503.69 |
| 174. | Compañía Vidriera, S.A. de C.V. | 2,879,636.12 |
| 175. | Compañía Vidriera, S.A. de C.V. | 28,618,962.62 |
| 176. | Compañía Vidriera, S.A. de C.V. | 44,715,712.77 |
| 177. | Compañía Vidriera, S.A. de C.V. | 403,051,915.77 |
| 178. | Compañía Vidriera, S.A. de C.V. | 6,032,459.86 |
| 179. | Compañía Vidriera, S.A. de C.V. | 118,646,914.47 |
| 180. | Compass Group LLC | 10,107,693.86 |
| 181. | Compass Group LLC | 1,665,280.06 |
| 182. | Compass Group LLC | 3,330,560.12 |
| 183. | Conjunto Loma del Bosque A.C. | 136,020.25 |
| 184. | Conjunto Loma del Bosque A.C. | 290,629.94 |
| 185. | Consuelo Acosta Carrillo and/or Raúl Rivera Garza | 113,350.21 |
| 186. | Contrarian Advantage Master Fund I Limited | 3,580,816.19 |
| 187. | Contrarian Capital Senior Secured, L.P. | 5,602,002.12 |
| 188. | Contrarian Capital Trade Claims, L.P. | 7,477,107.47 |
| 189. | Contrarian Distressed Equity, L.P. | 360,507.74 |
| 190. | Contrarian Emerging Markets L.P. | 29,771,876.92 |
| 191. | Contrarian Long Short Credict, L.P. | 1,538,718.77 |
| 192. | Credit Suisse | 32,884.97 |
| 193. | Credit Suisse | 75,635.42 |



Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

| 194. | Credit Suisse | 65,769.93 |
|------|---------------|-----------|
| 195. | Credit Suisse | 92,007.90 |
| 196. | Credit Suisse | 66,611.20 |
| 197. | Credit Suisse | 32,884.97 |
| 198. | Credit Suisse | 32,884.97 |
| 199. | Credit Suisse | 266,368.22 |
| 200. | Credit Suisse | 49,327.45 |
| 201. | Credit Suisse | 115,097.38 |
| 202. | Credit Suisse | 1,644,248.27 |
| 203. | Credit Suisse | 65,769.93 |
| 204. | Credit Suisse | 88,789.41 |
| 205. | Credit Suisse | 303,230.82 |
| 206. | Credit Suisse | 49,327.45 |
| 207. | Creel, García- Cuellar, Aiza y Enríquez, S.C. | 1,282.57 |
| 208. | Crisa Libbey México, S. de R. L. de C.V. | 92,117.35 |
| 209. | Cristian Israel Márquez Sainz | 3,369.23 |
| 210. | Chanin Capital Partners, L.L.C. | 2,224,938.56 |
| 211. | Chevez, Ruiz, Zamarripa y Cía. , S.C. | 44,443.78 |
| 212. | Chin Yu Lee | 98,654.90 |
| 213. | Chislaine Marie Josephe | 6,661,120.24 |
| 214. | Christian Fossa Andersen | 134,769.25 |
| 215. | Christian Tiscareño Velazquez | 3,369.23 |
| 216. | D.F. King & Co., Inc | 117,036.58 |
| 217. | D.F. King (Europe) Limited | 18,818.38 |
| 218. | Daniel González Carmona | 3,369.23 |
| 219. | Daniel Horacio Tomás | 328,849.65 |
| 220. | Daniel Mario Pulido Gómez | 3,369.23 |
| 221. | Daniel Martínez Navarro | 3,369.23 |
| 222. | Daniel Román Ramírez | 3,369.23 |
| 223. | David Baptista García | 166,528.01 |
| 224. | David Juan Anabitarte García | 56,675.10 |
| 225. | David Martín González de la Fuente | 3,369.23 |
| 226. | Davidson Kempner Distressed Opportunities Fund, L.P. | 102,334,468.24 |
| 227. | Davidson Kempner Distressed Opportunities International LTD. | 151,602,886.03 |
| 228. | Davidson Kempner Institutional Partners, L.P. | 55,111,295.72 |
| 229. | Davidson Kempner International LTD | 60,638,106.74 |
| 230. | Davidson Kempner Partners | 24,252,755.77 |
| 231. | Desarrollo Personal y Familiar, A.C. | 275,421.52 |
| 232. | Diana Laura Doris Alejandro | 79,354.15 |
| 233. | Domingo Israel López Rodríguez | 3,369.23 |
| 234. | Edgar Eugenio Romero Valdez | 3,369.23 |
| 235. | Edgar Rodríguez Pastrana | 3,369.23 |
| 236. | Edgar Rogelio Alanis Garza | 3,369.23 |
| 237. | Edgar Valverde Chong | 3,369.23 |
| 238. | Edilberto González Serna | 3,369.23 |
| 239. | Edmundo García Pérez | 113,350.21 |
| 240. | Eduardo A. Ancona González | 113,350.21 |
| 241. | Eduardo Alberto Del Valle Cabello | 3,369.23 |
| 242. | Eduardo Chávez Cervantes | 3,369.23 |
| 243. | Eduardo Enrique Rodríguez Ibarra | 3,369.23 |
| 244. | Eduardo Igartua Ruiloba | 68,010.13 |
| 245. | Eduardo José Alvarez Tostado Ferández | 3,369.23 |
| 246. | Eduardo Pacheco Leines | 3,369.23 |
| 247. | Efraín Valero Villarreal | 3,369.23 |
| 248. | Eliezer Garza Martínez | 3,369.23 |
| 249. | Eloísa Rodríguez Rodríguez | 3,369.23 |
| 250. | Elliott International,I L.P. | 233,369,175.02 |
| 251. | Emanuel Wapinski Blumert | 226,700.42 |
| 252. | Emeterio Lozano González | 3,369.23 |
| 253. | Emiliano Ondarza Garza | 3,369.23 |
| 254. | Engracia Doniz Gutiérrez | 136,020.25 |
| 255. | Enrique Agustín Bernal González | 3,369.23 |



Elena García Beltrán
Expert Translator

| 256. | Enrique Alberto de la Garza Zamarrón | 6,809,436.66 |
|------|--------------------------------------|--------------|
| 257. | Enrique Baquerie González | 3,369.23 |
| 258. | Enrique Gerardo Montemayor González | 3,369.23 |
| 259. | Enrique Lacea Arriaga | 3,369.23 |
| 260. | Enrique Lacea Cantú | 3,369.23 |
| 261. | Enrique Pablo Gurfrakel | 66,611.20 |
| 262. | Enrique Soto Iñiguez | 3,369.23 |
| 263. | Enriqueta Martínez Ramos | 3,369.23 |
| 264. | Eric Gustavo Almazán Goñi | 680,101.26 |
| 265. | Ernesto Echeverría | 1,998,336.07 |
| 266. | Ernesto Edgar Alberto Rodríguez Dávila | 3,369.23 |
| 267. | Ernesto Martens | 657,699.31 |
| 268. | Ernesto Martens Rebolledo | 328,849.65 |
| 269. | Ernesto Roel Paniagua | 986,548.96 |
| 270. | Ernesto Roel Paniagua | 657,699.31 |
| 271. | Ernesto Roel Paniagua | 657,699.31 |
| 272. | Esther Guadalupe Cueva Garza | 453,400.84 |
| 273. | Eugenio Martín Zambrano Elizondo | 204,030.38 |
| 274. | Eulogio Alejandro López García | 3,369.23 |
| 275. | Fabián Cano García | 3,369.23 |
| 276. | Fco. De Paula Victor Man Osornio Bravo | 3,369.23 |
| 277. | Federico Guillermo Esrial Angulo | 164,424.83 |
| 278. | Federico Javier Lo Riggio Frasson | 3,513.86 |
| 279. | Federico Sada Melo | 3,369.23 |
| 280. | Federico Triana Mendoza | 3,369.23 |
| 281. | Federico Viveros Villeda | 3,369.23 |
| 282. | Felipe Eduardo Valdez de la Fuente | 3,369.23 |
| 283. | Felipe Estupiñan Lozaria | 3,369.23 |
| 284. | Felipe José Mario Tomás Cortés Font | 226,700.42 |
| 285. | Felipe Salinas Chávez | 2,040,303.79 |
| 286. | Felipe Solis Oba | 3,369.23 |
| 287. | Fenisa Trading Inc. | 986,548.96 |
| 288. | Ferasan Investment Ltd. | 186,511.37 |
| 289. | Fermin Omar Fernández Oteo | 3,369.23 |
| 290. | Fernando Arturo Rosas Tellez | 3,369.23 |
| 291. | Fernando Canales Lozano and/or Alejandra Canales Ucha | 680,101.26 |
| 292. | Fernando Dávila Salazar | 3,369.23 |
| 293. | Fernando Escobedo Ortiz | 45,340.08 |
| 294. | Fernando Esquivel | 94,338.48 |
| 295. | Fernando Franco Nolasco | 453,400.84 |
| 296. | Fernando José Rodríguez Lozano | 3,369.23 |
| 297. | Fernando Luna Villarreal | 3,369.23 |
| 298. | Fernando Marín Treviño Castillo | 3,369.23 |
| 299. | Ferando Zaror | 164,424.83 |
| 300. | FIC Regiomontano S.A.P.I de C.V. | 239.05 |
| 301. | FIC Regiomontano S.A.P.I de C.V. | 55.26 |
| 302. | FIC Regiomontano S.A.P.I de C.V. | 31,961,923.93 |
| 303. | FIC Regiomontano S.A.P.I de C.V. | 50,276,557.00 |
| 304. | Filiberto Santoyo Soria | 3,369.23 |
| 305. | Fintech Investments Ltd. | 501,828,802.70 |
| 306. | Fintech Investments Ltd. | 44,675,878.56 |
| 307. | Fintech Investments Ltd. | 615,101,165.32 |
| 308. | Fintech Investments Ltd. | 179,394,063.74 |
| 309. | Fintech Investments Ltd. | 236,169,636.26 |
| 310. | Francisco Gómez Zúñiga | 3,369.23 |
| 311. | Francisco González Camarena | 226,700.42 |
| 312. | Francisco Guadalupe Sada Zuazua | 3,369.23 |
| 313. | Francisco Haro González | 3,369.23 |
| 314. | Francisco Javier Blancarte Ruiz | 3,369.23 |
| 315. | Francisco Javier García Garza | 3,369.23 |
| 316. | Francisco Javier Guzman Gaytan | 3,369.23 |
| 317. | Francisco Javier Manzanero Cauich | 3,369.23 |
| 318. | Francisco Javier Ramírez Robledo | 3,369.23 |
| 319. | Francisco Javier Rebollar Reyes | 113,350.21 |
| 320. | Francisco López Saldaña | 3,369.23 |
| 321. | Francisco Luna Barragán | 3,369.23 |



Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

| 322. | Francisco Robles Barrientos | 3,369.23 |
|------|------------------------------|----------|
| 323. | Francisco Rodríguez González | 3,369.23 |
| 324. | Fumiklin, S.A. de C.V. | 1,263.61 |
| 325. | Gabriel González Rocha | 3,369.23 |
| 326. | Gabriel José de la Torre Rivera | 453,400.84 |
| 327. | Gabriel R. Macchiavelo | 65,769.93 |
| 328. | Garavi | 333,056.01 |
| 329. | Gerardo Díaz Torres | 680,101.26 |
| 330. | Gerardo Esteva Gutiérrez | 3,369.23 |
| 331. | Gerardo Gabriel Montemayor Garza | 3,369.23 |
| 332. | Gerardo Gebara Jarish | 3,369.23 |
| 333. | Gerardo Gómez Garza | 3,369.23 |
| 334. | Gerardo de Jesús Arguello Leal | 582,848.02 |
| 335. | Gerardo de Jesús Arguello Leal | 566,751.05 |
| 336. | Gerardo Lozano Martínez | 3,369.23 |
| 337. | Gerardo Miguel Pérez Santos | 3,369.23 |
| 338. | Gerardo Olivo González | 3,369.23 |
| 339. | Gerardo Rico Ortega | 3,369.23 |
| 340. | Gerardo Villalobos Chávez | 226,700.42 |
| 341. | Gilberto Islas Navarro | 3,369.23 |
| 342. | Ginvest Civil Company | 842,307.82 |
| 343. | Gioia Investment S.A. | 98,654.90 |
| 344. | Gladys Leticia Tappan Esquivel | 648,363.20 |
| 345. | Global Financial Investments | 336,923.13 |
| 346. | Global Financial Investments | 421,153.91 |
| 347. | Gloria Irene González Tenorio | 226,700.42 |
| 348. | Gonzalo Fabián Medina Hernández | 1,793,702.79 |
| 349. | Gonzalo Velarde Fernández | 3,369.23 |
| 350. | Goodhealth Retirement Inc | 832,640.03 |
| 351. | Graciela Fagoaga Gutierrez | 45,340.08 |
| 352. | Gurpo Divitsa, S. de R.L. de C.V. | 680,101.26 |
| 353. | Guadalupe Cárdenas Dávila | 226,700.42 |
| 354. | Guillermo Becerril Rodríguez | 3,513.86 |
| 355. | Guillermo Martínez Campuzano | 3,369.23 |
| 356. | Gustavo Rodríguez Manrique | 3,369.23 |
| 357. | Guy Georges Albert Marie Le Brun Cuzin | 113,350.21 |
| 358. | Héctor Ariel Alejo García | 3,369.23 |
| 359. | Héctor Herández Anaya | 22,670.04 |
| 360. | Héctor Ignacio Acosta Rosas | 3,369.23 |
| 361. | Héctor Javier González de la Garza | 3,369.23 |
| 362. | Héctor Rodríguez Villalón | 3,369.23 |
| 363. | Héctor Rolando Gurrola González | 3,369.23 |
| 364. | Héctos Steele Garza | 3,369.23 |
| 365. | Heriberto Eduardo López Tecillos | 3,369.23 |
| 366. | Herman Mayer | 427.504.55 |
| 367. | Homero Elizondo Islas | 3,369.23 |
| 368. | Homero Martín Navarro Pérez | 3,369.23 |
| 369. | Horel Gámez Aguillón | 3,369.23 |
| 370. | Hugo Alejandro Lara García | 3,369.23 |
| 371. | Hugo Armando Carretero Gutiérrez | 3,369.23 |
| 372. | Hugo Enrique Martínez Hernández | 3,369.23 |
| 373. | Humberto Alanis Alanis | 3,369.23 |
| 374. | Humberto Figueroa Urquiza | 3,369.23 |
| 375. | Humberto Garza González | 226,700.42 |
| 376. | Humberto Valdés Carrillo | 3,369.23 |
| 377. | IDB Bank | 109,908.48 |
| 378. | IDB Bank | 133,222.40 |
| 379. | IDB Bank | 166,528.01 |
| 380. | IDB Bank | 163,197.45 |
| 381. | IDB Bank | 168,461.56 |
| 382. | IDB Bank | 82,212.41 |
| 383. | IDB Bank | 164,424.83 |


Elena García Beltrán
Expert Translator

| 384. | IDB Bank | 164.424.83 |
|------|----------|------------|
| 385. | IDB Bank | 115,097.38 |
| 386. | IDB Bank | 82,212.41 |
| 387. | IDB Bank | 82,212.41 |
| 388. | IDB Bank | 328,849.65 |
| 389. | IDB Bank | 647,833.82 |
| 390. | IDB Bank | 108,520.39 |
| 391. | IDB Bank | 82,212.41 |
| 392. | IDB Bank | 246,637.24 |
| 393. | IDB Bank | 82,212.41 |
| 394. | IDB Bank | 164,424.83 |
| 395. | IDB Bank | 164,424.83 |
| 396. | IDB Bank | 164,424.83 |
| 397. | IDB Bank | 197,309.79 |
| 398. | IDB Bank | 333,056.01 |
| 399. | IDB Bank | 131,539.86 |
| 400. | IDB Bank | 82,212.41 |
| 401. | Ignacio Adolfo Martínez Alanís | 1,347,692.51 |
| 402. | Ignacio Caballero Lara | 226,700.42 |
| 403. | Industria del Álcali, S.A. de C.V. | 47,467,557.30 |
| 404. | Industria del Álcali, S.A. de C.V. | 3,230,709.55 |
| 405. | Inmobiliaria Estrella del Sur | 3,369,231.29 |
| 406. | Investec Global Strategy Fund | 3,330,560.12 |
| 407. | IP Vitro Vidrio y Cristal LTD. (now Vitro Global Ltd.) | 31,708,580.24 |
| 408. | Irene Albarrán Rodríguez | 34,005.06 |
| 409. | Isaac Esteban Abrego Vargas | 3,369.23 |
| 410. | Israel Gudiño Reyes | 3,369.23 |
| 411. | Iván Jorge Solis Martínez | 3,369.23 |
| 412. | IXE Banco, S.A. Institución de Banca Múltiple | 553,874.47 |
| 413. | IXE Soluciones, S.A. de C.V., SOFOM, E.R., IXE Grupo | 102,015.19 |
| 414. | J. Felipe Palau | 197,309.79 |
| 415. | J. Jesús Facio Silva | 3,369.23 |
| 416. | Jaime Borja Fausto | 725,441.35 |
| 417. | Jaime Enrique Sinta Araujo | 3,369.23 |
| 418. | Jaime González Guerrero | 3,369.23 |
| 419. | Jaime Jorge Guzmán Salazar | 3,369.23 |
| 420. | Jason Wolf | 166,528.01 |
| 421. | Javier Arechavaleta Santos | 3,369.23 |
| 422. | Javier Cruz Garza | 3,369.23 |
| 423. | Javier Dondé Escalante | 90,680.17 |
| 424. | Javier Fernández Trujillo | 68,010.13 |
| 425. | Javier Jarquin Moreno | 3,369.23 |
| 426. | Javier Leal Orta | 3,369.23 |
| 427. | Javier Ortiz López | 113,350.21 |
| 428. | Javier Pérez Rocha | 59,108.96 |
| 429. | Javier Romero Olmos | 3,369.23 |
| 430. | Javier Uriegas de León | 3,369.23 |
| 431. | Jerome Villalba | 67,384.63 |
| 432. | Jerónimo Gilberto Argoytia Godoy | 3,369.23 |
| 433. | Jesús Nicolás Medina Solis | 3,369.23 |
| 434. | Jesús Avedraño López | 113,350.21 |
| 435. | Jesús Eduardo Solis Chavarría | 3,369.23 |
| 436. | Jesús Garza Treviño | 3,369.23 |
| 437. | Jesús González Olivo | 3,369.23 |
| 438. | Jesús Joel Bravo Valdés | 3,369.23 |
| 439. | Jesús Omar González González | 3,369.23 |
| 440. | Jesús Salvador Magallan Tejada | 3,369.23 |
| 441. | Jesús Sandoval Chávez | 3,369.23 |
| 442. | Jesús Sierra de Hoyos | 3,369.23 |
| 443. | Jesús Vázquez Hernández | 3,369.23 |
| 444. | Jesús Zubiria Luque | 3,369.23 |
| 445. | Jorge Alberto Arredondo Zambrano | 102,015.19 |
| 446. | Jorge Alberto Villarreal Garza | 3,369.23 |
| 447. | Jorge Arnoldo Treviño Fernández | 3,369.23 |
| 448. | Jorge Arturo Gavito Mohar and/or María Cristina Rebeca Gavito Mohar | 113,350.21 |
| 449. | Jorge González Herández | 3,369.23 |



Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

| 450. | Jorge Guillermo Balderas Ayala | 3,369.23 |
|---|---|---|
| 451. | Jorge Horacio Narváez | 82,212.41 |
| 452. | Jorge Luis Robles Villarreal | 3,369.23 |
| 453. | Jorge Mario Guzmán Guzmán | 3,369.23 |
| 454. | Jorge Rafael Morales Arguello | 3,369.23 |
| 455. | Jorge Sánchez González | 3,369.23 |
| 456. | José A. García | 657,669.81 |
| 457. | José A. García | 1,381,384.43 |
| 458. | José A. García | 3,972,323.69 |
| 459. | José A. García | 252,692.35 |
| 460. | José Adrián Hernández Niño | 3,369.23 |
| 461. | José Agustín Matamoros Figueroa | 3,369.23 |
| 462. | José Aladro Pérez | 3,369.23 |
| 463. | José Alberto Aviña Arévalo | 3,369.23 |
| 464. | José Alberto Figueroa Córdova | 3,369.23 |
| 465. | José Alberto García López | 3,369.23 |
| 466. | José Alberto Marines González | 3,369.23 |
| 467. | José Alejandro Gebara Irash | 3,369.23 |
| 468. | José Alfaro Ramírez | 3,369.23 |
| 469. | José Alfredo García Quiroga | 3,369.23 |
| 470. | José Ángel Almada Santa Ana and/or Silvia Elizabeth Monter Moreno | 249,370.46 |
| 471. | José Ángel de la Garza Garza | 3,369.23 |
| 472. | José Ángel Lucero Licea | 3,369.23 |
| 473. | José Antonio Contreras Onofre | 3,369.23 |
| 474. | José Antonio González Gallardo | 3,369.23 |
| 475. | José Antonio González Mendoza | 3,369.23 |
| 476. | José Antonio Julian González | 3,369.23 |
| 477. | José Antonio Muñoz Borrego | 3,369.23 |
| 478. | José Antonio Oviedo Rodríguez | 3,369.23 |
| 479. | José Antonio Rodríguez Muñiz | 68,010.13 |
| 480. | José Carlos Guel Valles | 3,369.23 |
| 481. | José Carlos Martínez Flores | 3,369.23 |
| 482. | José de Jesús Martínez Ferrara | 3,369.23 |
| 483. | José Eduardo Cornejo Martínez | 53,274.60 |
| 484. | José Enrique Gómez Pérez | 204,030.38 |
| 485. | José Gabriel Sirvent Cámara | 204,030.38 |
| 486. | José Gilberto Guajardo Treviño | 3,369.23 |
| 487. | José Gleen Salazar Valdez | 3,369.23 |
| 488. | José Guadalupe Carrera Aguirre | 3,369.23 |
| 489. | José Guadalupe Cid Aguilar | 3,369.23 |
| 490. | José Hamlet Hernández Hernández | 3,369.23 |
| 491. | José Ignacio Tijerina Acosta | 3,369.23 |
| 492. | José Luis Aguilar Gil | 226,700.42 |
| 493. | José Luis Carvajal Espinosa | 3,369.23 |
| 494. | José Luis López Pelcastre | 3,369.23 |
| 495. | José Luis Solórzano Escandón | 3,369.23 |
| 496. | José Luis Treviño Marroquín | 3,369.23 |
| 497. | José Luis Vázquez Costilla | 30,219.17 |
| 498. | José Luis Vázquez Niebla | 3,369.23 |
| 499. | José Lys Obycki | 67,384.63 |
| 500. | José Manuel Albarrán Mora | 3,369.23 |
| 501. | José Manuel González Hernández | 3,369.23 |
| 502. | José Manuel Orendain Lara | 3,369.23 |
| 503. | José María Fernández Gómez | 793,451.47 |
| 504. | José Mario Miramontes Carbajal | 3,369.23 |
| 505. | José Nagih Farah Made y Pérez | 203,803.68 |
| 506. | José Rafael Fernández Aguirre | 3,369.23 |
| 507. | José Roberto Díaz Kirk | 3,369.23 |
| 508. | José Ruben Conchas Bojalil | 226,700.42 |
| 509. | José Santiago Torres Rodríguez | 3,369.23 |
| 510. | José Sergio Ledezma López | 3,369.23 |
| 511. | JP Morgan Clearing Corp | 0.00 |



Elena García Beltrán
Expert Translator

| 512. | JP Morgan Clearing Corp | 0.00 |
|---|---|---|
| 513. | JP Morgan Clearing Corp | 0.00 |
| 514. | JP Morgan Chase Bank, N.A. | 45,342,245.48 |
| 515. | JP Morgan Chase Bank, N.A | 55,073,454.61 |
| 516. | JP Morgan Chase Bank, N.A. | 26,590,783.10 |
| 517. | Jr. Rubén Palacios Carranza | 3,369.23 |
| 518. | Juan Alfonso Vásquez Mata | 3,369.23 |
| 519. | Juan Antonio Barboza Montoya | 3,369.23 |
| 520. | Juan Antonio González Cantú | 3,369.23 |
| 521. | Juan Antonio Nieto Almaraz | 3,369.23 |
| 522. | Juan Bushdid Marck | 467,002.87 |
| 523. | Juan Camarillo Villegas | 3,369.23 |
| 524. | Juan Carlos García López | 3,369.23 |
| 525. | Juan Eduardo Armas Carrillo | 3,369.23 |
| 526. | Juan Félix Cárdenas Dávila | 226,700.42 |
| 527. | Juan Francisco Hernández Medina | 600,756.12 |
| 528. | Juan Francisco Vázquez Herrera | 158,690.30 |
| 529. | Juan García Rodríguez | 3,369.23 |
| 530. | Juan Ignacio Páez Cuellar | 3,369.23 |
| 531. | Juan José Arellano Padilla | 3,369.23 |
| 532. | Juan José Villarreal González | 3,369.23 |
| 533. | Juan Manuel Chapa Guerrero | 3,369.23 |
| 534. | Juan Manuel González Ruiz | 81,158.75 |
| 535. | Juan Manuel Millan Morales | 3,369.23 |
| 536. | Juan Manuel Rodríguez Garza | 3,369.23 |
| 537. | Juan Pablo González Madrigal | 56,675.10 |
| 538. | Juan Salvador Farias Garza | 3,369.23 |
| 539. | Juan Suárez Ruiz | 3,369.23 |
| 540. | Juan Valentín Ramírez Torres | 3,369.23 |
| 541. | Julio Castillo Barreda | 3,369.23 |
| 542. | Julio César Martínez Gutiérrez | 3,369.23 |
| 543. | Julio R. Carrasco | 328,849.65 |
| 544. | Julio Raúl Luna Guerrero | 3,369.23 |
| 545. | Julio Roberto Carrasco | 99,916.80 |
| 546. | Karin M Gabriella | 246,637.24 |
| 547. | Knighthead Master Found L.P. | 210,903,687.43 |
| 548. | Laura Catalina Garza Herrera | 226,700.42 |
| 549. | Lázaro Francisco Lozano Farías | 3,369.23 |
| 550. | León Constantino Lara Mariscurrena | 3,369.23 |
| 551. | Leonardo G Becerra | 1,347,692.51 |
| 552. | Leticia Margarita Guerra González | 3,369.23 |
| 553. | Lidag, S.A. de C.V. | 2,387.77 |
| 554. | LMA, SPC, on behalf of DE MAP 84 SEGREGATED PORTFOLIO | 10,759,000.57 |
| 555. | Lord Abbett Bond – Debenture Fund, Inc. | 0.00 |
| 556. | Lucía Ortiz de Iturbide | 336,923.13 |
| 557. | Luis Adolfo Ruíz de Chávez Cervantes | 226,700.42 |
| 558. | Luis Alberto Ruiz Cruz | 113,350.21 |
| 559. | Luis Alberto Talavera Ramírez | 3,369.23 |
| 560. | Luis Armando Zertuche Rodríguez | 3,369.23 |
| 561. | Luis Bernardo Salinas Paredes | 3,369.23 |
| 562. | Luis Carlos Arizpe Arizpe | 3,369.23 |
| 563. | Luis Daniel Orozco Rodríguez | 559,950.26 |
| 564. | Luis Enrique Campos Meléndez | 3,369.23 |
| 565. | Luis Ernesto Cervantes Luna | 3,369.23 |
| 566. | Luis Francisco Aranda Estrella | 75,264.54 |
| 567. | Luis Gabriel González Arias | 3,369.23 |
| 568. | Luis Gerardo Urbina Menchaca | 3,369.23 |
| 569. | Luis Ignacio Hernández Navarro | 3,369.23 |
| 570. | Luis Jorge Turati Álvarez | 181,360.34 |
| 571. | Luis Roberto Esparza González | 3,369.23 |
| 572. | Luz Margarita Mejía Cáceres | 680,101.26 |
| 573. | Luz Margarita Mejía Cáceres | 563,350.55 |
| 574. | M.H. Davidson & Co. | 3,739,667.33 |
| 575. | Ma Sacramento Verónica Borja Frausto | 725,441.35 |
| 576. | Ma Teresa de Jesús López Peniche | 272,040.51 |
| 577. | Ma Teresa de Jesús López Peniche | 170,025.32 |



Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Exhibit B    Page 30 of 82

Format A-55

| 578. | Madrazo Martínez | 236,771.75 |
|---|---|---|
| 579. | Magaly Garatachia Contreras | 3,369.23 |
| 580. | Magdalena Naim Sucar | 22,670.04 |
| 581. | Magdalena Zambrano Elizondo | 453,400.84 |
| 582. | Management & Financial Corp | 832,640.03 |
| 583. | Manuel Ascencio | 1,347,692.51 |
| 584. | Manuel López García | 3,369.23 |
| 585. | Manuel Nemecio Rodríguez Alvarado | 3,369.23 |
| 586. | Manuel Torres Huato | 113,350.21 |
| 587. | Manuella Garavi | 986,548.96 |
| 588. | Marcantonio Tonino Di Labio | 3,369.23 |
| 589. | Marcela Margarita Rodríguez Pérez | 3,369.23 |
| 590. | Marcela Mayela Rodríguez Quintanilla | 3,369.23 |
| 591. | Marcelo Andujo Pérez | 3,369.23 |
| 592. | Marco Antonio Acuña Medellín | 3,369.23 |
| 593. | Marco Antonio Leal Ávila | 3,369.23 |
| 594. | Marco Antonio Pinon Doniz | 226,700.42 |
| 595. | Marco Antonio Sotomayor Juvera | 680,101.26 |
| 596. | María Asunción Costilla Gómez | 872,796.62 |
| 597. | María Celestina Vargas Salcedo | 1,207,536.70 |
| 598. | María Cristina Bandrich Chávez | 62,342.62 |
| 599. | María Cristina Wendt | 83,264.00 |
| 600. | María de la Luz Tamayo de Zavala and/or José Humberto Zavala Tamayo | 453,400.84 |
| 601. | María de los Angeles Moreno Arroyo | 113,350.21 |
| 602. | María del Carmen Arreola Alapizco | 68,010.13 |
| 603. | María del Carmen Pinon Doniz | 136,020.25 |
| 604. | María del Pilar González Fernández y Camilo Kuri Con | 2,661,692.72 |
| 605. | María del Pilar Marta García y Hurtebise Dit de la Borde | 566,751.05 |
| 606. | María del Refugio Montoya Villalobos | 167,758.31 |
| 607. | María del Rocío Pliego Cervantes and/or Mariela Pliego Cervantes | 113,350.21 |
| 608. | María del Rosario Garza González | 3,369.23 |
| 609. | María del Socorro Gómez Gil | 113,350.21 |
| 610. | María Dolores Orvananos Márquez | 6,801.01 |
| 611. | María Dolores Rodríguez Salazar | 136,020.25 |
| 612. | María Elena Dip Márquez | 117,317.47 |
| 613. | María Elena Moya Aceves | 90,680.17 |
| 614. | María Elena Nogaledo García | 3,369.23 |
| 615. | María Emilia Cepeda Yzaga de Rospigliosi | 158,690.29 |
| 616. | María Emilia Pohls Andrade | 68,010.13 |
| 617. | María Esther Montes HerNández and/or Héctor Ramón Martín Montes | 6,957,889.32 |
| 618. | María Fernanda Siegrist Prado | 113,350.21 |
| 619. | María Gabriela Pliego Cervantes and/or Mariela Pliego Cervantes | 113,350.21 |
| 620. | María Guadalupe Hernández García | 56,675.10 |
| 621. | María Guadalupe Monserrat Alejandra Vigil Toscano | 56,675.10 |
| 622. | María Magdalena Treviño Garza | 3,369.23 |
| 623. | María Margarita Castro González | 68,010.13 |
| 624. | María Olga Toledo | 336,923.13 |
| 625. | Mario Alberto Marcos Zablah | 68,010.13 |
| 626. | Mario Benito Alemán Vázquez | 3,369.23 |
| 627. | Mario de la Garza | 421,153.91 |
| 628. | Mario Martínez Becerril | 113,350.21 |
| 629. | Marisela Hernández Molina | 3,369.23 |
| 630. | Marisol Gómez Díaz | 68,010.13 |
| 631. | Martha Beatriz Dip Márquez | 117,317.47 |
| 632. | Martha Guadalupe Solis Barbosa | 3,369.23 |
| 633. | Martha Liliana Bravo Hemández | 3,369.23 |
| 634. | Martha Ofelia Ramírez González | 3,369.23 |
| 635. | Mauricio Alejandro Morales González | 3,369.23 |
| 636. | Mauricio León Zafran | 74,123.09 |
| 637. | Mauricio Rubén Vargas García | 3,369.23 |
| 638. | Melissa Vieyra Padilla and/or Rafael Villagómez Contreras | 906,801.68 |
| 639. | Menpa Chiller Service, S.A. de C.V. | 2,527.22 |


Elena García Beltrán
Expert Translator

| 640. | Mercedes Bonnin Arrieta and/or María del Carmen Erales Sabido | 113,350.21 |
| 641. | Merril Lynck | 1,045,741.90 |
| 642. | Metrométrica Avanzada, S.A. de C.V. | 1,314,862.44 |
| 643. | Miguel Alejandro González Yáñez | 3,369.23 |
| 644. | Miguel Ángel Nájera Flores | 3,369.23 |
| 645. | Miguel Ángel Olivier Tenorio | 3,369.23 |
| 646. | Miguel Ángel Ortiz Cervantes | 3,369.23 |
| 647. | Miguel Ángel Ramírez García | 3,369.23 |
| 648. | Miguel Arroyo Ortega | 3,369.23 |
| 649. | Miguel Carrillo Martínez | 136,020.25 |
| 650. | Miguel Neumann Castillo | 226,700.42 |
| 651. | Miguel Pérez Iturbide | 3,369.23 |
| 652. | Millesime Campagnie Financiere | 328,849.65 |
| 653. | Millesime Campagnie Financiere | 779,373.68 |
| 654. | Millesime Campagnie Financiere | 723,723.23 |
| 655. | Millesime Campagnie Financiere | 333,056.01 |
| 656. | Millesime Campagnie Financiere | 166,528.01 |
| 657. | Millesime Campagnie Financiere | 2,930,892.91 |
| 658. | Millesime Campagnie Financiere | 99,916.80 |
| 659. | Millessime Campagnie Financiere | 539,077.01 |
| 660. | Mirko Sugich Prandini | 3,369.2 |
| 661. | Miroff Overseas- Corp | 66,112.02 |
| 662. | Moises Kanan Tawil | 113,350.21 |
| 663. | Moneda, S.A. Administradora de Fondos de Inversión, Moneda Deuda Latinoamericana Fondo de Inversión | 0.00 |
| 664. | Morgan Stanley and Co., L.L.C. | 333,056.01 |
| 665. | Multivalores, Casa de Bolsa, S.A. de C.V. | 1,097,760.63 |
| 666. | Myriam E. Dabdou | 246,637.24 |
| 667. | Nacional Financiera, S.N.C. | 30,188,417.47 |
| 668. | Naoya Atarashi | 3,369.23 |
| 669. | Nathan Brottman | 2,081,600.08 |
| 670. | National Financial Services, L.L.C | 39,966.73 |
| 671. | National Financial Services, L.L.C. | 4,656,277.65 |
| 672. | National Financial Services, L.L.C | 374,888.60 |
| 673. | Nayeli Flores Gómez | 3,369.23 |
| 674. | Nayeli Padilla Reyes | 3,369.23 |
| 675. | Nelson Gabriel Hurtado Ávila | 3,369.23 |
| 676. | Nelva Guadalupe Bautista Rodríguez | 3,369.23 |
| 677. | Nicolás Flores Cardona | 3,369.23 |
| 678. | Nicolás Noguera Correa | 3,369,231.29 |
| 679. | Nora Rebeca Arosemena Crespo | 80,861.55 |
| 680. | Nuri Fernanda Godínez Gómez | 3,369.23 |
| 681. | Octavio Salazar Romero | 3,369.23 |
| 682. | Omar Antonio Huerta Granados | 3,369.23 |
| 683. | Omar Vicente Zarate González | 3,369.23 |
| 684. | Oppenheimer & Co. Inc. | 328,849.66 |
| 685. | Oppenheimer & Co. Inc. | 0.00 |
| 686. | Orlafam, S.A. de C.V. | 1,212,847.25 |
| 687. | Oscar Elizondo Alonso | 884.53 |
| 688. | Oscar Ernesto Córdova y Soto | 45,340.08 |
| 689. | Oscar Zavala López and/or Christian Zavala López | 226,700.42 |
| 690. | Paciencia Ontanón Sánchez | 453,400.84 |
| 691. | Patricia González González | 100.65 |
| 692. | Patricio Salinas Santos | 3.369.23 |
| 693. | Patterson Belknap Webb & Tyler LLP | 75,742.31 |
| 694. | Paulina Encinas Millan | 3,369.23 |
| 695. | Pedro Ángel Castillo Castellanos | 340,050.63 |
| 696. | Pedro Cárdenas Salinas | 3,369.23 |
| 697. | Pedro Dávila Garza | 3,369.23 |
| 698. | Pedro Delfino Magaña González | 3,369.23 |
| 699. | Pedro Gustavo Catella Eguren | 113,350.21 |
| 700. | Pedro José Isla Martínez | 3,369.23 |
| 701. | Performancia Creativa Integral, S.A. de C.V. | 1,314,862.44 |
| 702. | Permal Contrarian Fund I, Ltd | 3,127,937.35 |
| 703. | Proyectos Construcciones Mantenimiento y Asesoría, S.A. de C.V. | 113,350.21 |
| 704. | Rafael Ángel Rosado Lebrum | 11,335.02 |


Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Exhibit B    Page 32 of 82

Format A-55

| | | | |
|---|---|---|---|
| 705. | Rafael Avalos Guzmán | 3,369.23 | |
| 706. | Rafael Colome Carrasco | 3,369.23 | |
| 707. | Ramiro Alberto Tello Álvarez | 3,369.23 | |
| 708. | Ramiro Torres Ramírez | 453,400.84 | |
| 709. | Ramón Antonio Rionda de González Arguelles | 68,010.13 | |
| 710. | Ramón Bernardino Amador | 3,369.23 | |
| 711. | Ramón Panamá Tostado | 3,369.23 | |
| 712. | Ramón Peniche Bernal | 3,369.23 | |
| 713. | Raúl Armando Contreras Villafranca | 3,369.23 | |
| 714. | Raúl Dávila Garza | 3,369.23 | |
| 715. | Raúl Eugenio González Sada | 3,369.23 | |
| 716. | Raúl G. Marcos Charur | 328,849.65 | |
| 717. | Raúl Garza Rodríguez | 3,369.23 | |
| 718. | Raúl Gerardo González Sáenz | 3,369.23 | |
| 719. | Raúl Robles Álvarez | 226,700.42 | |
| 720. | RBC Capital Makets, L.L.C. | 333,056.01 | |
| 721. | RBC Capital Makets, L.L.C. | 117,923.09 | |
| 722. | RBC Dominion Securities Inc. | 0.00 | |
| 723. | RBC Dominion Securities Inc. | 328,849.65 | |
| 724. | RBC Dominion Securities Inc. | 672,773.14 | |
| 725. | René Lee Reyes | 498,740.93 | |
| 726. | Rene Toussaint | 432,972.82 | |
| 727. | Rene Toussaint | 116,569.60 | |
| 728. | Rene Toussaint | 99.916.80 | |
| 729. | Rene Toussaint | 66,611.20 | |
| 730. | Rene Toussaint | 166,528.01 | |
| 731. | Rene Toussaint | 134,769.25 | |
| 732. | Rene Toussaint | 333,056.01 | |
| 733. | Rene Toussaint | 333,056.01 | |
| 734. | Rene Toussaint | 166,528.01 | |
| 735. | Rene Toussaint | 233,139.21 | |
| 736. | Rene Toussaint | 133,222.40 | |
| 737. | Rene Toussaint | 1,665,280.06 | |
| 738. | Rene Toussaint | 166,528.01 | |
| 739. | Rene Toussaint | 101,076.94 | |
| 740. | Rene Toussaint | 299,750.41 | |
| 741. | Rene Toussaint | 1,665,280.06 | |
| 742. | Rene Toussaint | 133,222.40 | |
| 743. | Rene Toussaint | 166,528.01 | |
| 744. | Rene Toussaint | 166,528.01 | |
| 745. | Rene Toussaint | 266,444.81 | |
| 746. | Rene Toussaint | 657,699.31 | |
| 747. | Rene Toussaint | 133,222.40 | |
| 748. | Rene Toussaint | 83,264.00 | |
| 749. | Rene Velasco Sevilla | | 3,369.23 |
| 750. | Ricardo Alberto González Leal | | 3,369.23 |
| 751. | Ricardo Flores Delsol | | 3,369.23 |
| 752. | Ricardo Garza Chaul | | 3,369.23 |
| 753. | Ricardo Javier Mena Rodríguez | | 3,369.23 |
| 754. | Ricardo Javier Nájera Lozano | | 3,369.23 |
| 755. | Ricardo Landeros López | | 3,369.23 |
| 756. | Ricardo Tomás | | 333,056.01 |
| 757. | RIG Investment | | 83,264.00 |
| 758. | Roberto Adrián Salinas Margain | | 3,369.23 |
| 759. | Roberto Alejandro Sandoval García | | 3,369.23 |
| 760. | Roberto Attie | | 336,923.13 |
| 761. | Roberto Barrios Archundia | | 3,369.23 |
| 762. | Roberto Carlos Cantú Arreaga | | 3,369.23 |
| 763. | Roberto Gutiérrez García | | 16,095.73 |
| 764. | Roberto Iruegas Torres | | 3,369.23 |
| 765. | Roberto José Flores Gutiérrez | | 3,369.23 |
| 766. | Roberto Manuel Romero Samano | | 3,369.23 |

31


Elena García Beltrán
Expert Translator

| | | |
|---|---|---|
| 767. | Roberto Marco Cabrera Llanos | 3,369.23 |
| 768. | Roberto Palacios Garza | 3,369.23 |
| 769. | Roberto Riva Palacio Alonso | 3,369.23 |
| 770. | Roberto Roel Rodríguez Puente | 3,369.23 |
| 771. | Roberto Virgilio Valdez Carrillo | 3,369.23 |
| 772. | Roberto Yever Aguirre | 3,369.23 |
| 773. | Rocío Gabriela Armenta Rosales | 3,369.23 |
| 774. | Rodolfo Alberto Farías Rivera | 90,680.17 |
| 775. | Rogelio Valero Fernández | 3,369.23 |
| 776. | Rogelio González | 134,769.25 |
| 777. | Rogelio Guajardo Castro | 3,369.23 |
| 778. | Rogelio Humberto González Grimaldo | 3,369.23 |
| 779. | Rogelio Ignacio Ontiveros Ramos | 3,369.23 |
| 780. | Rogelio Juan González de la Fuente | 3,369.23 |
| 781. | Rogelio Juárez Ruiz | 31,783.40 |
| 782. | Rogelio Morales Botello | 453,400.84 |
| 783. | Romeel Gutiérrez Cabrera | 3,369.23 |
| 784. | Rómulo Chávez Olivares | 793,451.47 |
| 785. | Rosa Angeles Domínguez | 3,369.23 |
| 786. | Rosario Galíndez González | 45,340.08 |
| 787. | Rowan Ltd | 1,665,280.06 |
| 788. | Rubén Moreno Garza | 3,369.23 |
| 789. | Rubén Olivares Sánchez | 3,369.23 |
| 790. | Rubén Omar Alvarado | 66,611.20 |
| 791. | Rubén Robles Chavira | 3,369.23 |
| 792. | Rubén Torres Martínez | 3,369.23 |
| 793. | Salomón Attie | 168,461.56 |
| 794. | Salustio Mario Villarreal Sánchez | 3,369.23 |
| 795. | Salvador Díaz Campos | 226,700.42 |
| 796. | Salvador Gómez Díaz | 68,010.13 |
| 797. | Salvador Gómez Ramírez | 22,670.04 |
| 798. | Salvador Sandoval Pérez | 3,369.23 |
| 799. | Salvador Valdez Pérez | 113,350.21 |
| 800. | Salvador Velazquez del Monte | 3,369.23 |
| 801. | Samuel Elchner | 999,168.04 |
| 802. | Samuel Papazian | 333,056.01 |
| 803. | Santiago Gutiérrez Cantú | 3,369.23 |
| 804. | Saúl Román Ruiz Ontiveros | 3,369.23 |
| 805. | Sergio Arturo Guerrero Reynoso | 1,464,031.33 |
| 806. | Sergio David Jimenez Ledezma | 3,369.23 |
| 807. | Sergio Eduardo Álvarez Martínez | 3,369.23 |
| 808. | Sergio Pretto | 526,159.45 |
| 809. | Sergio Ricardo Rosas Rentería | 3,369.23 |
| 810. | Servicios Vidriera Guadalajara, S.A. de C.V. | 166,480.94 |
| 811. | Servicios Vitro Cosmos, S.A. de C.V. | 277,468.23 |
| 812. | Shlomo Frymerman Konigsberg | 3,369.23 |
| 813. | Sigvard Ortiz Larralde | 272,040.51 |
| 814. | Sigvard Ortiz Reyes Spindola | 6,744,337.53 |
| 815. | Simón Anibal Villavicencio Cinco | 113,350.21 |
| 816. | Sistema Avanzado Bachillerato Educ. Sup. Edo. Gto. (SABES) | 4,012,597.45 |
| 817. | Sixto Ortiz Díaz | 3,369.23 |
| 818. | Societe Generale Private Banking | 266,444.81 |
| 819. | Srloyme Chajem Moire | 73,272.32 |
| 820. | State Street Bank and Trust | 99,916.81 |
| 821. | State Street Bank and Trust | 98,654.91 |
| 822. | Stephanie Godefroy Otalora | 3,369.23 |
| 823. | Stephanie Luckey | 8,530,893.62 |
| 824. | Tania Elizabeth Gómez Contreras | 3,369.23 |
| 825. | Tenedores de Bonos 2012 representados por Wilmington Trust FSB | 219,321,283.95 |
| 826. | Tenedores de Bonos 2017 representador por Wilmington Trust FSB | 398,251,726.50 |
| 827. | Tenedores de Bonos de 2013 representados por U.S. Bank N.A. | 192,962,614.85 |
| 828. | Tenedores de certificados bursátiles Vitro 03, a través del representante común Scotia Inverlat, Casa de Bola, S.A. de C.V. Grupo Financiero Scotiabank Inverlat | 713,544.41 |
| 829. | Tenedores de certificados bursátiles Vitro 08, a través del representante común Banco Invex S.A. Institución de Banca Múltiple, Invex Grupo | 14,299,714.77 |



Elena García Beltrán
Expert Translator

[*Appears seal of the Federal Judicial Power which literally reads:*
United Mexican States.-
Federal Judicial Power.]

Format A-55

| | Financiero. | |
|---|---|---:|
| 830. | The Bank of New York | 5,794.29 |
| 831. | The Bank of New York Mellon | 276,781.34 |
| 832. | The Liverpool Limited Partnership | 155,580,560.16 |
| 833. | Thompson & Knight Abogados, S.C. | 1,658.01 |
| 834. | Thompson & Knight LLP | 627,771.24 |
| 835. | Tomás Daniel Horacio | 213,752.28 |
| 836. | Tomás Gerardo De la Peña Alanis | 3,369.23 |
| 837. | Tomás Guerrero Avilés | 3,369.23 |
| 838. | UBS AG | 979,184.68 |
| 839. | UBS AG | 690,584.28 |
| 840. | UBS Financial Services Inc. | 0.00 |
| 841. | UBS Financial Services Inc | 0.00 |
| 842. | UBS Financial Services, Inc. | 0.00 |
| 843. | UBS Securities, L.L.C. | 3,226,091.86 |
| 844. | UBS Securities, L.L.C. | 336,922.98 |
| 845. | Uriel González Chona | 56,675.10 |
| 846. | US Bank | 27,564.43 |
| 847. | Vanguard Marketing Corporation | 19,730.99 |
| 848. | Vanguard Marketing Corporation | 16,846.15 |
| 849. | Vapor del Nilo | 1,010,769.39 |
| 850. | Vector Casa de Bolsa | 1,234,980.71 |
| 851. | Verónica Bolio Medina | 113,350.21 |
| 852. | Victor Aguilera Hernández | 3,369.23 |
| 853. | Victor Hugo Patlan Méndez | 3,369.23 |
| 854. | Victor Manuel García Durán | 3,369.23 |
| 855. | Victor Manuel Treviño Herrera | 3,369.23 |
| 856. | Victor Manuel Treviño Herrera | 56,675.10 |
| 857. | Vidal Alejandro Fragoso Ramírez | 3,369.23 |
| 858. | Vidriera Los Reyes, S.A. de C.V. | 141,973,241.32 |
| 859. | Vidriera Monterrey, S.A. de C.V. | 164,769,157.83 |
| 860. | Vidriera Monterrey, S.A. de C.V. | 61,839.73 |
| 861. | Vidriera Monterrey, S.A. de C.V. | 85,186,265.19 |
| 862. | Vidrio Plano de México, S.A. de C.V. | 204,232.88 |
| 863. | Vidrio Plano, S.A. de C.V. | 482,440.68 |
| 864. | Viméxico S.A. de C.V. | 83,222,542.26 |
| 865. | Virgina Borja Frausto | 725,441.35 |
| 866. | Vitro Automotriz, S.A. de C.V. | 270,966,759.74 |
| 867. | Vitro Cristalglass S.L. | 2,874.74 |
| 868. | Vitro Envases Norteamérica, S.A. de C.V. | 1,510,651,233.89 |
| 869. | Vitro Envases Norteamérica, S.A. de C.V. | 159,474,582.95 |
| 870. | Vitro Envases Norteamérica, S.A. de C.V. | 6,980,936.17 |
| 871. | Vitro Envases Norteamérica, S.A. de C.V. | 987,314,671.04 |
| 872. | Vitro Envases Norteamérica, S.A. de C.V. | 154,787,435.34 |
| 873. | Vitro Europa Ltd (ahora Vitro Global Ltd.) | 161,409,894.80 |
| 874. | Vitro Europa Ltd (ahora Vitro Global Ltd.) | 103,797,728.95 |
| 875. | Vitro Global Ltd. | 9,806,846.51 |
| 876. | Vitro Packaging L.L.C. | 26,847,071.94 |
| 877. | Vitro Vidrio y Cristal, S.A. de C.V. | 337,886,497.72 |
| 878. | Vitro Vidrio y Cristal, S.A. de C.V. | 76,114,503.89 |
| 879. | VVP Europa Holdings B.V. | 77,245,527.64 |
| 880. | Walter Armando Gómez Díaz | 68,010.13 |
| 881. | Walter Cedeño Triana | 3,369.23 |
| 882. | William John Adsett | 107,815.40 |
| 883. | Willy A. Bros | 454,846.22 |
| 884. | Yvonne Kawas Baboune and/or José Bernardo Kawas Bichara | 56,675.10 |
| 885. | Zafrán Mauricio León | 98,654.90 |
| 886. | Zoulfia Nagamedianova | 3,369.23 |
| Total of the class : | | 10,207,621,683.01 |



Elena García Beltrán
Expert Translator

In this particular case, the agreement filed for judicial approval meets the foregoing requirement, since it is signed by the creditors representing more than fifty percent of the aggregate amount represented by the unsecured recognized creditors executing the agreement.

In fact, the amount of the credits that shall be quantified to determine the necessary percentage for the agreement to be valid, is the amount of **10,207,621,683.01 (ten billion two hundred and seven million six hundred twenty one thousand six hundred and eighty three point cero one investment units)** which is the total amount recognized to the unsecured recognized creditors.

From the foregoing amount, **fifty percent** equals **5'103'810,841.50 UDI's (five billion one hundred and three million eight hundred and ten thousand eight hundred and forty one point fifty investment units)**, amount from which it shall exceed the amount held by the executing creditors.

The agreement, which is being analyzed, evidences that is also executed by the insolvent merchant, **"Vitro"**, *Sociedad Anonima Bursatil de Capital Variable* through its legal representative **Alejandro Francisco Sánchez Mújica**, whose legal capacity is acknowledged and evidenced through the certified copy of public deed one thousand eight hundred and forty, granted by Mr. Oscar Elizondo Alonso, Holder of Notary Public number twenty five in this city, through which the minutes of the board of directors' meeting of the insolvent company, held on October twenty eight, two thousand eleven, at eleven hours, was formalized; in such meeting, the board of directors granted him a special power of attorney for ownership and

Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

management acts, and for litigations and collections in order to sign, execute and

deliver the restructuring agreement.

It is also noted that the agreement  was executed by the creditors identified

below, with their name and amount:

|  | CREDITOR | AMOUNT |
|---|---|---|
| 1. | Abelardo Martínez Mendoza | 3,369.23 |
| 2. | Abraham Martínez Campos | 1,212,847.25 |
| 3. | Accivest Global Advisors | 10,461,463.15 |
| 4. | Actividades de Alta Cultura en México | 673,846.26 |
| 5. | Adalberto Ocampo Saldate | 3,369.23 |
| 6. | Administración de Fondos Funerarios S.A. de C.V. | 334, 496.47 |
| 7. | Administración de Inmuebles Vitro, S.A. de C.V. (nowFIC Export, S.A. de C.V.) | 10,892.99 |
| 8. | Administración de Inmuebles Vitro, S.A. de C.V. (nowFIC Export, S.A. de C.V.) | 1,023,961.80 |
| 9. | Adolfo González Taméz | 3,369.23 |
| 10. | Adolfo Iván Cantú Calderón | 3,369.23 |
| 11. | Adrián Carlos Meouchi Cueva | 3,369.23 |
| 12. | Adrián Guadalupe Sada González | 453,400.84 |
| 13. | Adrián Jaramillo Mata | 3,369.23 |
| 14. | Adrián Ontiveros Pérez | 3,369.23 |
| 15. | Adrián Treviño Guerrero | 3,369.23 |
| 16. | Adriana Ramírez Medrano | 260,705.48 |
| 17. | Aerovitro, S.A. de C.V. | 17,289,127.73 |
| 18. | Agustín Rosendo Ríos Martínez | 3,369.23 |
| 19. | Alberto Hernández Delsol | 3,369.23 |
| 20. | Alberto Hernández Tellez | 3,369.23 |
| 21. | Alberto Luis López Garza | 113,350.21 |
| 22. | Alberto Solis Oba | 3,369.23 |
| 23. | Alejandra del Carmen Morales Quiroz | 23,803.55 |
| 24. | Alejandro Algaze | 411,062.07 |
| 25. | Alejandro Almaguer Vega | 3,369.23 |
| 26. | Alejandro Barrero Fagoaga | 1,122,167.08 |
| 27. | Alejandro Becker del Río | 3,369.23 |
| 28. | Alejandro Cantú Garza | 3,369.23 |
| 29. | Alejandro David Álvarez Hoyt | 3,369.23 |
| 30. | Alejandro de Jesús Astorga Cantú | 3,369.23 |
| 31. | Alejandro Francisco Sanchez Mújica | 3,369.23 |
| 32. | Alejandro Garza González | 3,369.23 |
| 33. | Alejandro González | 107,815.40 |
| 34. | Alejandro Leal García | 3,369.23 |
| 35. | Alejandro Marcelo Camou Cubillas | 3,369,231.29 |
| 36. | Alejandro Mendoza Cervantes | 3,369.23 |
| 37. | Alejandro Molina Castillo | 3,369.23 |
| 38. | Alejandro Rodríguez Monterde | 113,350.21 |
| 39. | Alex Holding Co. | 333,056.01 |
| 40. | Alexis Delgado | 83,264.00 |
| 41. | Alfonso Gómez Tamez | 3,369.23 |
| 42. | Alfonso Javier Cantú González | 3,369.23 |
| 43. | Alfonso de Jesús Rodríguez Nájera | 3,369.23 |
| 44. | Alfonso Sáenz Espericueta | 3,369.23 |
| 45. | Alfredo Amador Ortega | 3,369.23 |
| 46. | Alfredo Caltum | 666,112.02 |
| 47. | Alicia León Lutteroth | 22,670.04 |
| 48. | Alicia Sierra Morales and/orAdriaan Ten Kate Thielen | 56,675.10 |
| 49. | Alvaro Marín Zamora | 3,369.23 |
| 50. | Alvaro Rocha Lerdo de Tejada | 22,670.04 |

Elena García Beltrán
Expert Translator

| | | |
|---|---|---|
| 51. | Amalia Vega Rodríguez | 169,571.91 |
| 52. | Ana Lylia Leyva Solis | 3,369.23 |
| 53. | Ana María Bringas Rábago | 113,350.21 |
| 54. | Ana María DelanoAbbot | 13,322,240,48 |
| 55. | Ana María Domínguez Moussier | 113,350.21 |
| 56. | Andra Rodríguez Pérez – Goñi | 322,272.66 |
| 57. | Andrés Castillo Martínez | 3,369.23 |
| 58. | Andrés Ramírez Chavez | 3,369.23 |
| 59. | Andrés Von Dincklage | 216,486.41 |
| 60. | Andrew Luwings Lee Stevens | 33,305.60 |
| 61. | AngelAbdenago Vázquez Alonso | 3,369.23 |
| 62. | Angel Alonso Sáenz Valero | 3,369.23 |
| 63. | Ángel de Jesús | 333,056.01 |
| 64. | Ángel de Jesús | 1,875,105.35 |
| 65. | Ángel Gregorio Martínez Cantú | 3,369.23 |
| 66. | Angélica Cárdenas Dávila | 340,050.63 |
| 67. | AnneJee | 333,056.01 |
| 68. | Antonio Docampo | 328,849.65 |
| 69. | Antonio Gilberto SchleskeFarah | 113,350.21 |
| 70. | Antonio Javier Ruíz González | 3,369.23 |
| 71. | Antonio Kuri Ahued | 960,230.92 |
| 72. | Antonio Morales Contreras | 45,340.08 |
| 73. | Anwar Leonardo Aguilar Araujo | 3,369.23 |
| 74. | Apolinar Figueroa Navarrete | 3,369.23 |
| 75. | Araceli García Peña | 3,369.23 |
| 76. | Armando Molina García | 3,369.23 |
| 77. | ArminZimmerztadt | 43,800.01 |
| 78. | ArminZimmerztadt | 33,692.31 |
| 79. | ArminZimmerztadt | 333,056.01 |
| 80. | ArminZimmerztadt | 1,287,046.35 |
| 81. | Arnoldo Sergio SantaellaSendel | 249,370.46 |
| 82. | Arturo Padilla Padilla | 6,801,012.63 |
| 83. | Arturo Alejandro Escamilla Benavides | 3,369.23 |
| 84. | Arturo Enrique AlcantaraSanchez | 3,369.23 |
| 85. | Arturo Gonzalo Garza Palazuelos | 226,700.42 |
| 86. | Arturo Javier Sainz Chávez | 3,369.23 |
| 87. | Arturo Vite del Valle | 3,369.23 |
| 88. | Aurora Esther González Gámez | 27,430.75 |
| 89. | Axel Ortega Ruíz | 22,670.04 |
| 90. | Bachean Investment | 499,584.02 |
| 91. | Baldomero Gardea de la Fuente | 3,369.23 |
| 92. | Bancard International Investment | 3,330,560.12 |
| 93. | Banco Santander | 1,973,097.93 |
| 94. | Banco Santander | 3,830,114.14 |
| 95. | Bank of New York Mellon | 589,615.47 |
| 96. | Bank of New York Mellon | 6,443,792.92 |
| 97. | Barcelona InvestmentsLtd | 493,274.48 |
| 98. | Basilio Marco Antonio Almazán Goñí | 453,400.84 |
| 99. | Benjamín Acuña Pérez | 3,369.23 |
| 100. | Benjamín Hernández Cortez | 3,369.23 |
| 101. | Benjamín Puga Arriaga | 3,369.23 |
| 102. | Benjamín Zermeno Padilla | 332,796.22 |
| 103. | Bernardo Splenser | 67,384.63 |
| 104. | Beta Capital MGMT LP | 166,528.01 |
| 105. | Beta Capital MGMT LP | 149,875.21 |
| 106. | Beta Capital MGMT LP | 999,168.04 |
| 107. | Beta Capital MGMT LP | 166,528.01 |
| 108. | Beta Capital MGMT LP | 499,584.02 |
| 109. | Beta Capital MGMT LP | 333,056.01 |
| 110. | Beta Capital MGMT LP | 1,665,280.06 |
| 111. | Beta Capital MGMT LP | 599,500.82 |
| 112. | Beta Capital MGMT LP | 366,361.61 |
| 113. | Beta Capital MGMT LP | 499,584.02 |
| 114. | Beta Capital MGMT LP | 333,056.01 |
| 115. | Beta Capital MGMT LP | 333,056.01 |
| 116. | Beta Capital MGMT LP | 33,305.60 |



Elena García Beltrán
Expert Translator

[*Appears seal of the Federal Judicial Power which literally reads:*
United Mexican States.-
Federal Judicial Power.]

Format A-55

| 117. | Bienes Muebles e Inmuebles del Centro, S.A. de C.V. | 113,350.21 |
|---|---|---|
| 118. | Blanca Amelia Montaño López Castro | 3,369.23 |
| 119. | BNP Paribas Prime Brookerage | 31,640,321.14 |
| 120. | BNP Paribas Prime Brookerage Inc. | 1,644,248.28 |
| 121. | Breterville S.A. | 33,305.60 |
| 122. | Breterville S.A. | 2,298,086.48 |
| 123. | Brígida Angélica Salgado Ávila | 3,369.23 |
| 124. | Brown BrothersHarriman& Co. | 0.00 |
| 125. | Brown BrothersHarriman& Co. | 1,049,030.39 |
| 126. | Brown BrothersHarriman& Co. | 0.00 |
| 127. | Carlos A Enriquez | 1,665,280.06 |
| 128. | Carlos Alberto Calderón Bautista | 3,369.23 |
| 129. | Carlos Alberto Gómez de León | 3,369.23 |
| 130. | Carlos Alfredo Moreno Robles | 3,369.23 |
| 131. | Carlos Constandse Madrazo | 2,833,755.26 |
| 132. | Carlos Daniel Tovar Rivera | 3,369.23 |
| 133. | Carlos Federico Segovia Cruz | 3,369.23 |
| 134. | Carlos Felicitos Fernández Sepúlveda | 453,400.84 |
| 135. | Carlos Galnares Alonso | 269,538.50 |
| 136. | Carlos Humberto GutierrezEscarpita | 3,369.23 |
| 137. | Carlos Mario Bernal Gálvez | 3,369.23 |
| 138. | Carlos Miguel Leyton González | 3,369.23 |
| 139. | Carlos Padilla Verdeja | 3,369.23 |
| 140. | Carmen Laura Borja Frausto | 725,441.35 |
| 141. | CarminePuca Camacho and/or Martha Guadalupe Sánchez Bolaños | 226,700.42 |
| 142. | Carolina Camacho Solis | 3,369.23 |
| 143. | Cecilia Consuelo Izurieta Villacisand/or Francisco José Menéndez Alonso | 274,987.61 |
| 144. | Celso Javier Treviño Reynoso | 113,350.21 |
| 145. | César Eduardo García Duran | 3,369.23 |
| 146. | César Eduardo Vásquez Montemayor | 3,369.23 |
| 147. | CFM Mónaco | 230,194.76 |
| 148. | Citibank, N.A. | 11,694,601.80 |
| 149. | Citibank, N.A. | 51,027,600.95 |
| 150. | Citibank, N.A. | 48,229,841.11 |
| 151. | Clariden Leu AG | 99,916.80 |
| 152. | Claudia Borja Frausto | 725,441.35 |
| 153. | Claudia Guadalupe Silva Castillo | 3,369.23 |
| 154. | Claudio Luis del Valle Cabello | 3,369.23 |
| 155. | Comercializadora Álcali, S.A. de C.V. | 13,204,314.15 |
| 156. | Comercializadora Álcali, S.A. de C.V. | 1,862,232.65 |
| 157. | Comercializadora Álcali, S.A. de C.V. | 678,023.27 |
| 158. | Comercializadora Álcali, S.A. de C.V. | 175,325.70 |
| 159. | Commonwealth Inst Ltd. | 336,923.13 |
| 160. | Compañía Vidriera, S.A. de C.V. | 2,879,636.12 |
| 161. | Compañía Vidriera, S.A. de C.V. | 118,646,914.47 |
| 162. | Compañía Vidriera, S.A. de C.V. | 6,032,459.86 |
| 163. | Compañía Vidriera, S.A. de C.V. | 403,051,915.77 |
| 164. | Compañía Vidriera, S.A. de C.V. | 28,618,962.62 |
| 165. | Compañía Vidriera, S.A. de C.V. | 63,366,503.69 |
| 166. | Compañía Vidriera, S.A. de C.V. | 253,751,850.76 |
| 167. | Compañía Vidriera, S.A. de C.V. | 44,715,712.77 |
| 168. | CompassGroup LLC | 10,107,693.86 |
| 169. | CompassGroup LLC | 1,665,280.06 |
| 170. | CompassGroup LLC | 3,330,560.12 |
| 171. | Conjunto Loma del Bosque A.C. | 290,629.94 |
| 172. | Conjunto Loma del Bosque A.C. | 136,020.25 |
| 173. | Consuelo Acosta Carrillo and/or Raúl Rivera Garza | 113,350.21 |
| 174. | CreditSuisse | 32,884.97 |
| 175. | CreditSuisse | 266,368.22 |
| 176. | CreditSuisse | 49,327.45 |
| 177. | CreditSuisse | 32,884.97 |
| 178. | CreditSuisse | 32,884.97 |



Elena García Beltrán
Expert Translator

| 179. | CreditSuisse | 65,769.93 |
| 180. | CreditSuisse | 65,769.93 |
| 181. | CreditSuisse | 92,077.90 |
| 182. | CreditSuisse | 75,635.42 |
| 183. | CreditSuisse | 88,789.41 |
| 184. | CreditSuisse | 1,644,248.27 |
| 185. | CreditSuisse | 49,327.45 |
| 186. | CreditSuisse | 303,230.82 |
| 187. | CreditSuisse | 66,611.20 |
| 188. | CreditSuisse | 115,097.38 |
| 189. | Cristian Israel Márquez Sainz | 3,369.23 |
| 190. | Chevez, Ruiz, Zamarripa y Cía. , S.C. | 44,443.78 |
| 191. | Chin Yu Lee | 98,654.90 |
| 192. | Chislaine Marie Josephe | 6,661,120.24 |
| 193. | Christian Fossa Andersen | 134,769.25 |
| 194. | Christian TiscareñoVelazquez | 3,369.23 |
| 195. | Daniel González Carmona | 3,369.23 |
| 196. | Daniel Horacio Tomás | 328,849.65 |
| 197. | Daniel Mario Pulido Gómez | 3,369.23 |
| 198. | Daniel Martínez Navarro | 3,369.23 |
| 199. | Daniel Román Ramírez | 3,369.23 |
| 200. | David Baptista García | 166,528.01 |
| 201. | David Juan Anabitarte García | 56,675.10 |
| 202. | David Martín González de la Fuente | 3,369.23 |
| 203. | Desarrollo Personal y Familiar, A.C. | 275,421.52 |
| 204. | Diana Laura Doris Alejandro | 79,345.15 |
| 205. | Domingo Israel López Rodríguez | 3,369.23 |
| 206. | Edgar Eugenio Romero Valdez | 3,369.23 |
| 207. | Edgar Rodríguez Pastrana | 3,369.23 |
| 208. | Edgar Rogelio Alanis Garza | 3,369.23 |
| 209. | Edgar Valverde Chong | 3,369.23 |
| 210. | Edilberto González Serna | 3,369.23 |
| 211. | Edmundo García Pérez | 113,350.21 |
| 212. | Eduardo A. Ancona González | 113,350.21 |
| 213. | Eduardo Alberto Del Valle Cabello | 3,369.23 |
| 214. | Eduardo Chávez Cervantes | 3,369.23 |
| 215. | Eduardo Enrique Rodríguez Ibarra | 3,369.23 |
| 216. | Eduardo IgartuaRuiloba | 68,010.13 |
| 217. | Eduardo José Alvarez Tostado Ferández | 3,369.23 |
| 218. | Eduardo Pacheco Leines | 3,369.23 |
| 219. | Efraín Valero Villarreal | 3,369.23 |
| 220. | Eliezer Garza Martínez | 3,369.23 |
| 221. | Eloísa Rodríguez Rodríguez | 3,369.23 |
| 222. | Emanuel WapinskiBlumert | 226,700.42 |
| 223. | Emeterio Lozano González | 3,369.23 |
| 224. | Emiliano Ondarza Garza | 3,369.23 |
| 225. | Engracia Doniz Gutiérrez | 136,020.25 |
| 226. | Enrique Agustín Bernal González | 3,369.23 |
| 227. | Enrique Alberto de la Garza Zamarrón | 6,809,436.66 |
| 228. | Enrique Baquerie González | 3,369.23 |
| 229. | Enrique Gerardo Montemayor González | 3,369.23 |
| 230. | Enrique Lacea Arriaga | 3,369.23 |
| 231. | Enrique Lacea Cantú | 3,369.23 |
| 232. | Enrique Pablo Gurfrakel | 66,611.20 |
| 233. | Enrique Soto Iñiguez | 3,369.23 |
| 234. | Enriqueta Martínez Ramos | 3,369.23 |
| 235. | Eric Gustavo Almazán Goñi | 680,101.26 |
| 236. | Ernesto Echaverría | 1,998,336.07 |
| 237. | Ernesto Edgar Alberto Rodríguez Dávila | 3,369.23 |
| 238. | Ernesto Martens | 657,699.31 |
| 239. | Ernesto Martens Rebolledo | 328,849.65 |
| 240. | Ernesto Roel Paniagua | 657,699.31 |
| 241. | Ernesto Roel Paniagua | 986,548.96 |
| 242. | Ernesto Roel Paniagua | 657,699.31 |
| 243. | Esther Guadalupe Cueva Garza | 453,400.84 |
| 244. | Eugenio Martín Zambrano Elizondo | 204,030.38 |



Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

| | | |
|---|---|---|
| 245. | Eulogio Alejandro López García | 3,369.23 |
| 246. | Fabián Cano García | 3,369.23 |
| 247. | Fco. De Paula VictorManOsornio Bravo | 3,369.23 |
| 248. | Federico Guillermo Esrial Angulo | 164,424.83 |
| 249. | Federico Javier Lo RiggioFrasson | 3,513.86 |
| 250. | Federico Triana Mendoza | 3,369.23 |
| 251. | Federico Viveros Villeda | 3,369.23 |
| 252. | Felipe Eduardo Valdez de la Fuente | 3,369.23 |
| 253. | Felipe EstupiñanLozaria | 3,369.23 |
| 254. | Felipe José Mario Tomás Cortés Font | 226,700.42 |
| 255. | Felipe Salinas Chávez | 2,040,303.79 |
| 256. | Felipe Solis Oba | 3,369.23 |
| 257. | Fenisa Trading Inc. | 986,548.96 |
| 258. | FerasanInvestment Ltd. | 186,511.37 |
| 259. | Fermín Omar Fernández Oteo | 3,369.23 |
| 260. | Fernando Arturo Rosas Tellez | 3,369.23 |
| 261. | Fernando Canales Lozano and/or Alejandra Canales Ucha | 680,101.26 |
| 262. | Fernando Dávila Salazar | 3,369.23 |
| 263. | Fernando Escobedo Ortiz | 45,340.08 |
| 264. | Fernando Esquivel | 94,338.48 |
| 265. | Fernando Franco Nolasco | 453,400.84 |
| 266. | Fernando José Rodríguez Lozano | 3,369.23 |
| 267. | Fernando Luna Villarreal | 3,369.23 |
| 268. | Fernando Martín Treviño Castillo | 3,369.23 |
| 269. | FerandoZaror | 164,424.83 |
| 270. | FIC Regiomontano S.A.P.I de C.V. | 239.05 |
| 271. | FIC Regiomontano S.A.P.I de C.V. | 55.26 |
| 272. | FIC Regiomontano S.A.P.I de C.V. | 31,961,923.93 |
| 273. | FIC Regiomontano S.A.P.I de C.V. | 50,276,557.00 |
| 274. | Filiberto Santoyo Soria | 3,369.23 |
| 275. | FintechInvestments Ltd. | 501,828,802.70 |
| 276. | FintechInvestments Ltd. | 44,675,878.56 |
| 277. | FintechInvestments Ltd. | 236,169,636.26 |
| 278. | FintechInvestments Ltd. | 179,394,063.74 |
| 279. | FintechInvestments Ltd. | 615,101,165.32 |
| 280. | Francisco Gómez Zúñiga | 3,369.23 |
| 281. | Francisco González Camarena | 226,700.42 |
| 282. | Francisco Guadalupe Sada Zuazua | 3,369.23 |
| 283. | Francisco Haro González | 3,369.23 |
| 284. | Francisco Javier Blancarte Ruíz | 3,369.23 |
| 285. | Francisco Javier García Garza | 3,369.23 |
| 286. | Francisco Javier Guzman Gaytan | 3,369.23 |
| 287. | Francisco Javier Manzanero Cauich | 3,369.23 |
| 288. | Francisco Javier Ramírez Robledo | 3,369.23 |
| 289. | Francisco Javier Rebollar Reyes | 113,350.21 |
| 290. | Francisco López Saldaña | 3,369.23 |
| 291. | Francisco Luna Barragán | 3,369.23 |
| 292. | Francisco Robles Barrientos | 3,369.23 |
| 293. | Francisco Rodríguez González | 3,369.23 |
| 294. | Fumiklin, S.A. de C.V. | 1,263.61 |
| 295. | Gabriel González Rocha | 3,369.23 |
| 296. | Gabriel José de la Torre Rivera | 453,400.84 |
| 297. | Gabriel R. Macchiavelo | 65,769.93 |
| 298. | Garavi | 333,056.01 |
| 299. | Gerardo Díaz Torres | 680,101.26 |
| 300. | Gerardo Esteva Gutiérrez | 3,369.23 |
| 301. | Gerardo Gabriel Montemayor Garza | 3,369.23 |
| 302. | Gerardo GebaraJirash | 3,369.23 |
| 303. | Gerardo Gómez Garza | 3,369.23 |
| 304. | Gerardo de Jesús Arguello Leal | 582,848.02 |
| 305. | Gerardo de Jesús Arguello Leal | 566,751.05 |
| 306. | Gerardo Lozano Martínez | 3,369.23 |

Elena García Beltrán
Expert Translator

| 307. | Gerardo Miguel Pérez Santos | 3,369.23 |
|------|------------------------------|----------|
| 308. | Gerardo Olivo González | 3,369.23 |
| 309. | Gerardo Rico Ortega | 3,369.23 |
| 310. | Gerardo Villalobos Chávez | 226,700.42 |
| 311. | Gilberto Islas Navarro | 3,369.23 |
| 312. | Ginvest Civil Company | 842,307.82 |
| 313. | GioiaInvestment S.A. | 98,654.90 |
| 314. | Gladys Leticia Tappan Esquivel | 648,363.20 |
| 315. | Global FinancialInvestments | 421,153.91 |
| 316. | Global FinancialInvestments | 336,923.13 |
| 317. | Gloria Irene González Tenorio | 226,700.42 |
| 318. | Gonzalo Velarde Fernández | 3,369.23 |
| 319. | GoodhealthRetirementInc | 832,640.03 |
| 320. | Graciela FagoagaGutierrez | 45,340.08 |
| 321. | Grupo Divitsa, S. de R.L. de C.V. | 680,101.26 |
| 322. | Guadalupe Cárdenas Dávila | 226,700.42 |
| 323. | Guillermo Becerril Rodríguez | 3,513.86 |
| 324. | Guillermo Martínez Campuzano | 3,369.23 |
| 325. | Gustavo Rodríguez Manrique | 3,369.23 |
| 326. | Guy Georges Albert Marie Le Brun Cuzin | 113,350.21 |
| 327. | Héctor Ariel Alejo García | 3,369.23 |
| 328. | Héctor Herández Anaya | 22,670.04 |
| 329. | Héctor Ignacio Acosta Rosas | 3,369.23 |
| 330. | Héctor Javier González de la Garza | 3,369.23 |
| 331. | Héctor Rodríguez Villalón | 3,369.23 |
| 332. | Héctor Rolando Gurrola González | 3,369.23 |
| 333. | HéctosSteele Garza | 3,369.23 |
| 334. | Heriberto Eduardo López Tecillos | 3,369.23 |
| 335. | Herman Meyer | 427.504.55 |
| 336. | Homero Elizondo Islas | 3,369.23 |
| 337. | Homero Martín Navarro Pérez | 3,369.23 |
| 338. | Horel Gámez Aguillón | 3,369.23 |
| 339. | Hugo Armando Carretero Gutiérrez | 3,369.23 |
| 340. | Humberto AlanisAlanis | 3,369.23 |
| 341. | Humberto Figueroa Urquiza | 3,369.23 |
| 342. | Humberto Garza González | 226,700.42 |
| 343. | Humberto Valdés Carrillo | 3,369.23 |
| 344. | IDB Bank | 82,212.41 |
| 345. | IDB Bank | 109,908.48 |
| 346. | IDB Bank | 166,528.01 |
| 347. | IDB Bank | 133,222.40 |
| 348. | IDB Bank | 163,197.45 |
| 349. | IDB Bank | 164,424.83 |
| 350. | IDB Bank | 164,424.83 |
| 351. | IDB Bank | 246,637.24 |
| 352. | IDB Bank | 82,212.41 |
| 353. | IDB Bank | 164,424.83 |
| 354. | IDB Bank | 82,212.41 |
| 355. | IDB Bank | 82,212.41 |
| 356. | IDB Bank | 197,309.79 |
| 357. | IDB Bank | 82,212.41 |
| 358. | IDB Bank | 333,056.01 |
| 359. | IDB Bank | 168,461.56 |
| 360. | IDB Bank | 164,424.83 |
| 361. | IDB Bank | 108,520.39 |
| 362. | IDB Bank | 647,833.82 |
| 363. | IDB Bank | 328,849.65 |
| 364. | IDB Bank | 164,424.83 |
| 365. | IDB Bank | 115,097.38 |
| 366. | IDB Bank | 82,212.41 |
| 367. | IDB Bank | 131,539.86 |
| 368. | Ignacio Adolfo Martínez Alanís | 1,347,692.51 |
| 369. | Ignacio Caballero Lara | 226,700.42 |
| 370. | Industria del Álcali, S.A. de C.V. | 47,467,557.30 |
| 371. | Industria del Álcali, S.A. de C.V. | 3,230,709.55 |
| 372. | Inmobiliaria Estrella del Sur | 3,369,231.29 |

Elena García Beltrán
Expert Translator

[*Appears seal of the Federal Judicial Power which literally reads:*
United Mexican States.-
Federal Judicial Power.]

Format A-55

| | | |
|---|---|---|
| 373. | Investec Global StrategyFund | 3,330,560.12 |
| 374. | IP Vitro Vidrio y Cristal LTD. (nowVitro Global Ltd.) | 31,708,580.24 |
| 375. | Irene Albarrán Rodríguez | 34,005.06 |
| 376. | Isaac Esteban Abrego Vargas | 3,369.23 |
| 377. | Israel Gudiño Reyes | 3,369.23 |
| 378. | Iván Jorge Solis Martínez | 3,369.23 |
| 379. | IXE Banco, S.A. Institución de Banca Múltiple | 553,874.47 |
| 380. | IXE Soluciones, S.A. de C.V., SOFOM, E.R., IXE Grupo | 102,015.19 |
| 381. | J. Felipe Palau | 197,309.79 |
| 382. | J. Jesús Facio Silva | 3,369.23 |
| 383. | Jaime Borja Fausto | 725,441.35 |
| 384. | Jaime Enrique Sinta Araujo | 3,369.23 |
| 385. | Jaime González Guerrero | 3,369.23 |
| 386. | Jaime Jorge Guzmán Salazar | 3,369.23 |
| 387. | Jason Wolf | 166,528.01 |
| 388. | Javier Arechavaleta Santos | 3,369.23 |
| 389. | Javier Cruz Garza | 3,369.23 |
| 390. | Javier Dondé Escalante | 90,680.17 |
| 391. | Javier Fernández Trujillo | 68,010.13 |
| 392. | Javier Jarquin Moreno | 3,369.23 |
| 393. | Javier Leal Orta | 3,369.23 |
| 394. | Javier Ortiz López | 113,350.21 |
| 395. | Javier Romero Olmos | 3,369.23 |
| 396. | Javier Uriegas de León | 3,369.23 |
| 397. | Jerome Villalba | 67,384.63 |
| 398. | Jerónimo Gilberto Argoytia Godoy | 3,369.23 |
| 399. | Jesús Nicolás Medina Solis | 3,369.23 |
| 400. | Jesús Avedaño López | 113,350.21 |
| 401. | Jesús Eduardo Solis Chavarría | 3,369.23 |
| 402. | Jesús Garza Treviño | 3,369.23 |
| 403. | Jesús González Olivo | 3,369.23 |
| 404. | Jesús Joel Bravo Valdés | 3,369.23 |
| 405. | Jesús Omar González González | 3,369.23 |
| 406. | Jesús Salvador Magallan Tejada | 3,369.23 |
| 407. | Jesús Sandoval Chávez | 3,369.23 |
| 408. | Jesús Sierra de Hoyos | 3,369.23 |
| 409. | Jesús Vázquez Hernández | 3,369.23 |
| 410. | Jesús Zubiria Luque | 3,369.23 |
| 411. | Jorge Alberto Arredondo Zambrano | 102,015.19 |
| 412. | Jorge Alberto Villarreal Garza | 3,369.23 |
| 413. | Jorge Arnoldo Treviño Fernández | 3,369.23 |
| 414. | Jorge Arturo Gavito Moharand/or María Cristina Rebeca Gavito Mohar | 113,350.21 |
| 415. | Jorge González Hernández | 3,369.23 |
| 416. | Jorge Guillermo Balderas Ayala | 3,369.23 |
| 417. | Jorge Horacio Narváez | 82,212.41 |
| 418. | Jorge Luis Robles Villarreal | 3,369.23 |
| 419. | Jorge Mario Guzmán Guzmán | 3,369.23 |
| 420. | Jorge Rafael Morales Arguello | 3,369.23 |
| 421. | Jorge Sánchez González | 3,369.23 |
| 422. | José A. García | 657,699.31 |
| 423. | José A. García | 252,692.35 |
| 424. | José A. García | 1,381,384.83 |
| 425. | José A. García | 3,972,323.69 |
| 426. | José Adrián Hernández Niño | 3,369.23 |
| 427. | José Agustin Matamoros Figueroa | 3,369.23 |
| 428. | José Alberto Aviña Arévalo | 3,369.23 |
| 429. | José Alberto Figueroa Córdova | 3,369.23 |
| 430. | José Alberto García López | 3,369.23 |
| 431. | José Alberto Marines González | 3,369.23 |
| 432. | José Alejandro Gebaralrash | 3,369.23 |
| 433. | José Alfaro Ramírez | 3,369.23 |
| 434. | José Alfredo García Quiroga | 3,369.23 |


Elena García Beltrán
Expert Translator

| 435. | José Ángel Almada Santa Ana and/or Silvia Elizabeth Monter Moreno | 249,370.46 |
|------|------|------|
| 436. | José Ángel de la Garza Garza | 3,369.23 |
| 437. | José Ángel Lucero Licea | 3,369.23 |
| 438. | José Antonio Contreras Onofre | 3,369.23 |
| 439. | José Antonio González Gallardo | 3,369.23 |
| 440. | José Antonio González Mendoza | 3,369.23 |
| 441. | José Antonio Julian González | 3,369.23 |
| 442. | José Antonio Muñoz Borrego | 3,369.23 |
| 443. | José Antonio Oviedo Rodríguez | 3,369.23 |
| 444. | José Antonio Rodríguez Muñiz | 68,010.13 |
| 445. | José Carlos Guel Valles | 3,369.23 |
| 446. | José Carlos Martínez Flores | 3,369.23 |
| 447. | José de Jesús Martínez Ferrara | 3,369.23 |
| 448. | José Eduardo Cornejo Martínez | 53,274.60 |
| 449. | José Enrique Gómez Pérez | 204,030.38 |
| 450. | José Gabriel Sirvent Cámara | 204,030.38 |
| 451. | José Gilberto Guajardo Treviño | 3,369.23 |
| 452. | José Gleen Salazar Valdez | 3,369.23 |
| 453. | José Guadalupe Carrera Aguirre | 3,369.23 |
| 454. | José Guadalupe Cid Aguilar | 3,369.23 |
| 455. | José Hamlet Hernández Hernández | 3,369.23 |
| 456. | José Ignacio Tijerina Acosta | 3,369.23 |
| 457. | José Luis Aguilar Gil | 226,700.42 |
| 458. | José Luis Carvajal Espinosa | 3,369.23 |
| 459. | José Luis López Pelcastre | 3,369.23 |
| 460. | José Luis Solórzano Escandón | 3,369.23 |
| 461. | José Luis Treviño Marroquín | 3,369.23 |
| 462. | José Luis Vázquez Costilla | 30,219.17 |
| 463. | José Luis Vázquez Niebla | 3,369.23 |
| 464. | José LysObycki | 67,384.63 |
| 465. | José Manuel Albarrán Mora | 3,369.23 |
| 466. | José Manuel González Hernández | 3,369.23 |
| 467. | José Manuel Orendain Lara | 3,369.23 |
| 468. | José María Fernández Gómez | 793,451.47 |
| 469. | José Mario Miramontes Carbajal | 3,369.23 |
| 470. | José NagihFarahMade y Pérez | 203,803.68 |
| 471. | José Rafael Fernández Aguirre | 3,369.23 |
| 472. | José Roberto Díaz Kirk | 3,369.23 |
| 473. | José Rubén Conchas Bojalil | 226,700.42 |
| 474. | José Santiago Torres Rodríguez | 3,369.23 |
| 475. | José Sergio Ledezma López | 3,369.23 |
| 476. | JP Morgan ClearingCorp | 0.00 |
| 477. | JP Morgan ClearingCorp | 0.00 |
| 478. | JP Morgan ClearingCorp | 0.00 |
| 479. | JP Morgan Chase Bank, N.A. | 55,073,454.61 |
| 480. | JP Morgan Chase Bank, N.A | 26,590,783.10 |
| 481. | JP Morgan Chase Bank, N.A. | 45,342,245.48 |
| 482. | Jr. Rubén Palacios Carranza | 3,369.23 |
| 483. | Juan Alfonso Vásquez Mata | 3,369.23 |
| 484. | Juan Antonio Barboza Montoya | 3,369.23 |
| 485. | Juan Antonio González Cantú | 3,369.23 |
| 486. | Juan Antonio Nieto Almaraz | 3,369.23 |
| 487. | Juan BushdidMarck | 467,002.87 |
| 488. | Juan Camarillo Villegas | 3,369.23 |
| 489. | Juan Carlos García López | 3,369.23 |
| 490. | Juan Eduardo Armas Carrillo | 3,369.23 |
| 491. | Juan Félix Cárdenas Dávila | 226,700.42 |
| 492. | Juan Francisco Hernández Medina | 600,756.12 |
| 493. | Juan Francisco Vázquez Herrera | 158,690.30 |
| 494. | Juan García Rodríguez | 3,369.23 |
| 495. | Juan Ignacio Páez Cuellar | 3,369.23 |
| 496. | Juan José Arellano Padilla | 3,369.23 |
| 497. | Juan José Villarreal González | 3,369.23 |
| 498. | Juan Manuel Chapa Guerrero | 3,369.23 |
| 499. | Juan Manuel González Ruiz | 81,158.75 |
| 500. | Juan Manuel Millan Morales | 3,369.23 |



Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

| 501. | Juan Manuel Rodríguez Garza | 3,369.23 |
|------|------------------------------|----------|
| 502. | Juan Pablo González Madrigal | 56,675.10 |
| 503. | Juan Salvador Farias Garza | 3,369.23 |
| 504. | Juan Suárez Ruiz | 3,369.23 |
| 505. | Juan Valentin Ramírez Torres | 3,369.23 |
| 506. | Julio Castillo Barreda | 3,369.23 |
| 507. | Julio César Martínez Gutiérrez | 3,369.23 |
| 508. | Julio R. Carrasco | 328,849.65 |
| 509. | Julio Raúl Luna Guerrero | 3,369.23 |
| 510. | Julio Roberto Carrasco | 99,916.80 |
| 511. | Karin M Gabriella | 246,637.24 |
| 512. | Laura Catalina Garza Herrera | 226,700.42 |
| 513. | Lázaro Francisco Lozano Farías | 3,369.23 |
| 514. | León Constantino Lara Mariscurrena | 3,369.23 |
| 515. | Leonardo G Becerra | 1,347,692.51 |
| 516. | Leticia Margarita Guerra González | 3,369.23 |
| 517. | Lidag, S.A. de C.V. | 2,387.77 |
| 518. | Lucía Ortiz de Iturbide | 336,923.13 |
| 519. | Luis Adolfo Ruíz de Chávez Cervantes | 226,700.42 |
| 520. | Luis Alberto Ruiz Cruz | 113,350.21 |
| 521. | Luis Alberto Talavera Ramírez | 3,369.23 |
| 522. | Luis Armando Zertuche Rodriguez | 3,369.23 |
| 523. | Luis Bernardo Salinas Paredes | 3,369.23 |
| 524. | Luis Carlos Arizpe Arizpe | 3,369.23 |
| 525. | Luis Daniel Orozco Rodríguez | 559,950.26 |
| 526. | Luis Enrique Campos Meléndez | 3,369.23 |
| 527. | Luis Ernesto Cervantes Luna | 3,369.23 |
| 528. | Luis Francisco Aranda Estrella | 75,264.54 |
| 529. | Luis Gabriel González Arias | 3,369.23 |
| 530. | Luis Gerardo Urbina Menchaca | 3,369.23 |
| 531. | Luis Ignacio Hernández Navarro | 3,369.23 |
| 532. | Luis Jorge Turati Álvarez | 181,360.34 |
| 533. | Luis Roberto Esparza González | 3,369.23 |
| 534. | Luz Margarita Mejía Cáceres | 563,350.55 |
| 535. | Luz Margarita Mejía Cáceres | 680,101.26 |
| 536. | Ma Sacramento Verónica Borja Frausto | 725,441.35 |
| 537. | Ma Teresa de Jesús López Peniche | 272,040.51 |
| 538. | Ma Teresa de Jesús López Peniche | 170,025.32 |
| 539. | Madrazo Martínez | 236,771.75 |
| 540. | Magaly Garatachia Contreras | 3,369.23 |
| 541. | Magdalena NaimSucar | 22,670.04 |
| 542. | Magdalena Zambrano Elizondo | 453,400.84 |
| 543. | Management &FinancialCorp | 832,640.03 |
| 544. | Manuel Ascencio | 1,347,692.51 |
| 545. | Manuel López García | 3,369.23 |
| 546. | Manuel Nemecio Rodríguez Alvarado | 3,369.23 |
| 547. | Manuel Torres Huato | 113,350.21 |
| 548. | Manuella Garavi | 986,548.96 |
| 549. | Marcantonio Tonino Di Labio | 3,369.23 |
| 550. | Marcela Margarita Rodríguez Pérez | 3,369.23 |
| 551. | Marcela Mayela Rodríguez Quintanilla | 3,369.23 |
| 552. | Marcelo Andujo Pérez | 3,369.23 |
| 553. | Marco Antonio Acuña Medellín | 3,369.23 |
| 554. | Marco Antonio Leal Ávila | 3,369.23 |
| 555. | Marco Antonio PinonDoniz | 226,700.42 |
| 556. | Marco Antonio Sotomayor Juvera | 680,101.26 |
| 557. | María Asunción Costilla Gómez | 872,796.62 |
| 558. | María Celestina Vargas Salcedo | 1,207,536.70 |
| 559. | María Cristina Bandrich Chávez | 62,342.62 |
| 560. | María Cristina Wendt | 83,264.00 |
| 561. | María de la Luz Tamayo de Zavala and/or  José Humberto Zavala Tamayo | 453,400.84 |
| 562. | María de los Angeles Moreno Arroyo | 113,350.21 |



Elena García Beltrán
Expert Translator

| 563. | María del Carmen Arreola Alapizco | 68,010.13 |
|------|------------------------------------|-----------|
| 564. | María del Carmen PinonDoniz | 136,020.25 |
| 565. | María del Pilar González Fernández and Camilo Kuri Con | 2,661,692.72 |
| 566. | María del Pilar Marta García and HurtebiseDit de la Borde | 566,751.05 |
| 567. | María del Refugio Montoya Villalobos | 167,758.31 |
| 568. | María del Rocío Pliego Cervantes and/or Mariela Pliego Cervantes | 113,350.21 |
| 569. | María del Rosario Garza González | 3,369.23 |
| 570. | María del Socorro Gómez Gil | 113,350.21 |
| 571. | María Dolores Orvananos Márquez | 6,801.01 |
| 572. | María Dolores Rodríguez Salazar | 136,020.25 |
| 573. | María Elena Dip Márquez | 117,317.47 |
| 574. | María Elena Moya Aceves | 90,680.17 |
| 575. | María Elena Nogaledo García | 3,369.23 |
| 576. | María Emilia Cepeda Yzaga de Rospigliosi | 158,690.29 |
| 577. | María Emilia Pohls Andrade | 68,010.13 |
| 578. | María Esther Montes Hernández and/or Héctor Ramón Martín Montes | 6,957,889.32 |
| 579. | María Fernanda Siegrist Prado | 113,350.21 |
| 580. | María Gabriela Pliego Cervantes and/or Mariela Pliego Cervantes | 113,350.21 |
| 581. | María Guadalupe Hernández García | 56,675.10 |
| 582. | María Guadalupe Monserrat Alejandra Vigil Toscano | 56,675.10 |
| 583. | María Magdalena Treviño Garza | 3,369.23 |
| 584. | María Margarita Castro González | 68,010.13 |
| 585. | María Olga Toledo | 336,923.13 |
| 586. | Mario Alberto Marcos Zablah | 68,010.13 |
| 587. | Mario Benito Alemán Vázquez | 3,369.23 |
| 588. | Mario de la Garza | 421,153.91 |
| 589. | Mario Martínez Becerril | 113,350.21 |
| 590. | Marisela Hernández Molina | 3,369.23 |
| 591. | Marisol Gómez Díaz | 68,010.13 |
| 592. | Martha Beatriz Dip Márquez | 117,317.47 |
| 593. | Martha Guadalupe Solis Barbosa | 3,369.23 |
| 594. | Martha Liliana Bravo Hernández | 3,369.23 |
| 595. | Martha Ofelia Ramírez González | 3,369.23 |
| 596. | Mauricio Alejandro Morales González | 3,369.23 |
| 597. | Mauricio León Zafrán | 74,123.09 |
| 598. | Mauricio Rubén Vargas García | 3,369.23 |
| 599. | Melissa Vieyra Padilla and/or Rafael Villagómez Contreras | 906,801.68 |
| 600. | Menpa Chiller Service, S.A. de C.V. | 2,527.22 |
| 601. | Mercedes Bonnin Arrieta and/or María del Carmen Erales Sabido | 113,350.21 |
| 602. | MerriiLynck | 1,045,741.90 |
| 603. | Metrométrica Avanzada, S.A. de C.V. | 1,314,862.44 |
| 604. | Miguel Alejandro González Yáñez | 3,369.23 |
| 605. | Miguel Ángel Nájera Flores | 3,369.23 |
| 606. | Miguel Ángel Olivier Tenorio | 3,369.23 |
| 607. | Miguel Ángel Ortiz Cervantes | 3,369.23 |
| 608. | Miguel Ángel Ramírez García | 3,369.23 |
| 609. | Miguel Arroyo Ortega | 3,369.23 |
| 610. | Miguel Carrillo Martínez | 136,020.25 |
| 611. | Miguel Neumann Castillo | 226,700.42 |
| 612. | Miguel Pérez Iturbide | 3,369.23 |
| 613. | MillesimeCampagnieFinanciere | 333,056.01 |
| 614. | MillesimeCampagnieFinanciere | 328,849.65 |
| 615. | MillesimeCampagnieFinanciere | 166,528.01 |
| 616. | MillesimeCampagnieFinanciere | 2,930,892.91 |
| 617. | MillesimeCampagnieFinanciere | 723,723.23 |
| 618. | MillesimeCampagnieFinanciere | 99,916.80 |
| 619. | MillesimeCampagnieFinanciere | 779,373.68 |
| 620. | MillessimeCampagnieFinanciere | 539,077.01 |
| 621. | MirkoSugichPrandini | 3,369.2 |
| 622. | MiroffOverseas- Corp | 66,112.02 |
| 623. | MoisesKananTawil | 113,350.21 |
| 624. | Morgan Stanley and Co., L.L.C. | 333,056.01 |
| 625. | Myriam E. Dabdou | 246,637.24 |
| 626. | Nacional Financiera, S.N.C. | 30,188,417.47 |
| 627. | NaoyaAtarashi | 3,369.23 |
| 628. | NathanBrottman | 2,081,600.08 |

44



Elena García Beltrán
Expert Translator

Case 3:13-35035-545F  Doc 021-2t 9 Filed 02/05/12 Entered 02/05/12 19:52:00 11:38c
[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]
Exhibit B    Page 46 of 82
Format A-55

| 629. | NationalFinancialServices, L.L.C. | 4,656,277.65 |
|------|-----------------------------------|--------------|
| 630. | NationalFinancialServices, L.L.C. | 39,966.73 |
| 631. | NationalFinancialServices, L.L.C. | 374,888.60 |
| 632. | Nayeli Flores Gómez | 3,369.23 |
| 633. | Nayeli Padilla Reyes | 3,369.23 |
| 634. | Nelson Gabriel Hurtado Ávila | 3,369.23 |
| 635. | Nelva Guadalupe Bautista Rodríguez | 3,369.23 |
| 636. | Nicolás Flores Cardona | 3,369.23 |
| 637. | Nicolás Noguera Correa | 3,369,231.29 |
| 638. | Nora Rebeca Arosemena Crespo | 80,861.55 |
| 639. | Nuri Fernanda Godínez Gómez | 3,369.23 |
| 640. | Octavio Salazar Romero | 3,369.23 |
| 641. | Omar Antonio Huerta Granados | 3,369.23 |
| 642. | Omar Vicente Zarate González | 3,369.23 |
| 643. | Oppenheimer& Co. Inc. | 0.00 |
| 644. | Oppenheimer& Co. Inc. | 328,849.66 |
| 645. | Orlafam, S.A. de C.V. | 1,212,847.25 |
| 646. | Oscar Elizondo Alonso | 884.53 |
| 647. | Oscar Ernesto Córdova and Soto | 45,340.08 |
| 648. | Óscar Zavala López and/or Christian Zavala López | 226,700.42 |
| 649. | Paciencia Ontanón Sánchez | 453,400.84 |
| 650. | Patricia González González | 100.65 |
| 651. | Patricio Salinas Santos | 3.369.23 |
| 652. | Paulina Encinas Millan | 3,369.23 |
| 653. | Pedro Ángel Castillo Castellanos | 340,050.63 |
| 654. | Pedro Cárdenas Salinas | 3,369.23 |
| 655. | Pedro Dávila Garza | 3,369.23 |
| 656. | Pedro Delfino Magaña González | 3,369.23 |
| 657. | Pedro Gustavo Catella Eguren | 113,350.21 |
| 658. | Pedro José Isla Martínez | 3,369.23 |
| 659. | Performancia Creativa Integral, S.A. de C.V. | 1,314,862.44 |
| 660. | Proyectos Construcciones Mantenimiento y Asesoría, S.A. de C.V. | 113,350.21 |
| 661. | Rafael Ángel Rosado Lebrum | 11,335.02 |
| 662. | Rafael Avalos Guzmán | 3,369.23 |
| 663. | Rafael Colome Carrasco | 3,369.23 |
| 664. | Ramiro Alberto Tello Álvarez | 3,369.23 |
| 665. | Ramiro Torres Ramírez | 453,400.84 |
| 666. | Ramón Antonio Rionda de González Arguelles | 68,010.13 |
| 667. | Ramón Bernardino Amador | 3,369.23 |
| 668. | Ramón Panama Tostado | 3,369.23 |
| 669. | Ramón Peniche Bernal | 3,369.23 |
| 670. | Raúl Armando Contreras Villafranca | 3,369.23 |
| 671. | Raúl Dávila Garza | 3,369.23 |
| 672. | Raúl Eugenio González Sada | 3,369.23 |
| 673. | Raúl G. Marcos Charur | 328,849.65 |
| 674. | Raúl Garza Rodríguez | 3,369.23 |
| 675. | Raúl Gerardo González Sáenz | 3,369.23 |
| 676. | Raúl Robles Álvarez | 226,700.42 |
| 677. | RBC Capital Makets, L.L.C. | 117,923.09 |
| 678. | RBC Capital Makets, L.L.C. | 333,056.01 |
| 679. | RBC Dominion Securities Inc. | 0.00 |
| 680. | RBC Dominion Securities Inc. | 672,773.14 |
| 681. | RBC Dominion Securities Inc. | 328,849.65 |
| 682. | René Lee Reyes | 498,740.93 |
| 683. | Rene Toussaint | 133,222.40 |
| 684. | Rene Toussaint | 83,264.00 |
| 685. | Rene Toussaint | 166,528.01 |
| 686. | Rene Toussaint | 657,699.31 |
| 687. | Rene Toussaint | 299,750.41 |
| 688. | Rene Toussaint | 1,665,280.06 |
| 689. | Rene Toussaint | 166,528.01 |
| 690. | Rene Toussaint | 1,665,280.06 |



Elena García Beltrán
Expert Translator

| 691. | Rene Toussaint | 333,056.01 |
|------|---------------|------------|
| 692. | Rene Toussaint | 101,076.94 |
| 693. | Rene Toussaint | 166,528.01 |
| 694. | Rene Toussaint | 133,222.40 |
| 695. | Rene Toussaint | 266,444.81 |
| 696. | Rene Toussaint | 133,222.40 |
| 697. | Rene Toussaint | 233,139.21 |
| 698. | Rene Toussaint | 166,528.01 |
| 699. | Rene Toussaint | 66,611.20 |
| 700. | Rene Toussaint | 333,056.01 |
| 701. | Rene Toussaint | 432,972.82 |
| 702. | Rene Toussaint | 116,569.60 |
| 703. | Rene Toussaint | 166,528.01 |
| 704. | Rene Toussaint | 99,916.80 |
| 705. | Rene Toussaint | 134,769.25 |
| 706. | Rene Velasco Sevilla | 3,369.23 |
| 707. | Ricardo Alberto González Leal | 3,369.23 |
| 708. | Ricardo Flores Delsol | 3,369.23 |
| 709. | Ricardo Garza Chaul | 3,369.23 |
| 710. | Ricardo Javier Mena Rodríguez | 3,369.23 |
| 711. | Ricardo Javier Nájera Lozano | 3,369.23 |
| 712. | Ricardo LanderosLópez | 3,369.23 |
| 713. | Ricardo Tomás | 333,056.01 |
| 714. | RIG Investment | 83,264.00 |
| 715. | Roberto Adrián Salinas Margain | 3,369.23 |
| 716. | Roberto Alejandro Sandoval García | 3,369.23 |
| 717. | Roberto Attie | 336,923.13 |
| 718. | Roberto Barrios Archundia | 3,369.23 |
| 719. | Roberto Carlos CantúArreaga | 3,369.23 |
| 720. | Roberto Gutiérrez García | 16,095.73 |
| 721. | Roberto Iruegas Torres | 3,369.23 |
| 722. | Roberto José Flores Gutiérrez | 3,369.23 |
| 723. | Roberto Manuel Romero Samano | 3,369.23 |
| 724. | Roberto Marco Cabrera Llanos | 3,369.23 |
| 725. | Roberto Palacios Garza | 3,369.23 |
| 726. | Roberto Riva Palacio Alonso | 3,369.23 |
| 727. | Roberto Roel Rodríguez Puente | 3,369.23 |
| 728. | Roberto Virgilio Valdez Carrillo | 3,369.23 |
| 729. | Roberto Yever Aguirre | 3,369.23 |
| 730. | Rocío Gabriela Armenta Rosales | 3,369.23 |
| 731. | Rodolfo Alberto Farías Rivera | 90,680.17 |
| 732. | Rogelio Valero Fernández | 3,369.23 |
| 733. | Rogelio González | 134,769.25 |
| 734. | Rogelio Guajardo Castro | 3,369.23 |
| 735. | Rogelio Humberto González Grimaldo | 3,369.23 |
| 736. | Rogelio Ignacio Ontiveros Ramos | 3,369.23 |
| 737. | Rogelio Juan González de la Fuente | 3,369.23 |
| 738. | Rogelio Juárez Ruiz | 31,783.40 |
| 739. | Rogelio Morales Botello | 453,400.84 |
| 740. | Romeel Gutiérrez Cabrera | 3,369.23 |
| 741. | Rómulo Chávez Olivares | 793,451.47 |
| 742. | Rosario Galíndez González | 45,340.08 |
| 743. | Rowan Ltd | 1,665,280.06 |
| 744. | Rubén Moreno Garza | 3,369.23 |
| 745. | Rubén Olivares Sánchez | 3,369.23 |
| 746. | Rubén Omar Alvarado | 66,611.20 |
| 747. | Rubén Robles Chavira | 3,369.23 |
| 748. | Rubén Torres Martínez | 3,369.23 |
| 749. | SalomónAttie | 168,461.56 |
| 750. | Salvador Díaz Campos | 226,700.42 |
| 751. | Salvador Gómez Díaz | 68,010.13 |
| 752. | Salvador Gómez Ramírez | 22,670.04 |
| 753. | Salvador Sandoval Pérez | 3,369.23 |
| 754. | Salvador Valdez Pérez | 113,350.21 |
| 755. | Salvador Velazquez del Monte | 3,369.23 |
| 756. | Samuel Elchner | 999,168.04 |


Elena García Beltrán
Expert Translator

Case 3:33-35035545F Doc 021-2t 93 Filed 02/05/22 Entered 02/05/12 Page 50 11 346c

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Exhibit B    Page 48 of 82

Format A-55

| 757. | Samuel Papazian | 333,056.01 |
| 758. | Santiago Gutiérrez Cantú | 3,369.23 |
| 759. | SaúlRomán Ruiz Ontiveros | 3,369.23 |
| 760. | Sergio Arturo Guerrero Reynoso | 1,464,031.33 |
| 761. | Sergio Eduardo ÁlvarezMartínez | 3,369.23 |
| 762. | Sergio Pretto | 526,159.45 |
| 763. | Sergio Ricardo Rosas Rentaría | 3,369.23 |
| 764. | Servicios Vidriera Guadalajara, S.A. de C.V. | 166,480.94 |
| 765. | Servicios Vitro Cosmos, S.A. de C.V. | 277,468.23 |
| 766. | ShlomoFrymerman Konigsberg | 3,369.23 |
| 767. | Sigvard Ortiz Larralde | 272,040.51 |
| 768. | Sigvard Ortiz Reyes Spindola | 6,744,337.53 |
| 769. | SimónAníbal Villavicencio Cinco | 113,350.21 |
| 770. | Sistema Avanzado Bachillerato Educ. Sup. Edo. Gto. (SABES) | 4,012,597.45 |
| 771. | SixtoOrtízDíaz | 3,369.23 |
| 772. | SocieteGenerale Private Banking | 266,444.81 |
| 773. | SrloymeChajemMoire | 73,272.32 |
| 774. | State Street Bank and Trust | 98,654.91 |
| 775. | State Street Bank and Trust | 99,916.81 |
| 776. | Stephanie GodefroyOtalora | 3,369.23 |
| 777. | Stephanie Luckey | 8,530,893.62 |
| 778. | Tania Elizabeth Gómez Contreras | 3,369.23 |
| 779. | Thompson & Knight Abogados, S.C. | 1,658.01 |
| 780. | Thompson & Knight LLP | 627,771.24 |
| 781. | Tomás Daniel Horacio | 213,752.28 |
| 782. | Tomás Gerardo De la Peña Alanis | 3,369.23 |
| 783. | Tomás Guerrero Avilés | 3,369.23 |
| 784. | UBS AG | 690,584.28 |
| 785. | UBS AG | 979,184.68 |
| 786. | UBS Financial Services Inc. | 0.00 |
| 787. | UBS Financial Services Inc | 0.00 |
| 788. | UBS Financial Services, Inc. | 0.00 |
| 789. | UBS Securities, L.L.C. | 336,922.98 |
| 790. | UBS Securities, L.L.C. | 3,226,091.86 |
| 791. | Uriel González Chona | 56,675.10 |
| 792. | Vanguard Marketing Corporation | 16,846.15 |
| 793. | Vanguard Marketing Corporation | 19,730.99 |
| 794. | Vapor del Nilo | 1,010,769.39 |
| 795. | VerónicaBolio Medina | 113,350.21 |
| 796. | Víctor Aguilera Hernández | 3,369.23 |
| 797. | Víctor Hugo Patlan Méndez | 3,369.23 |
| 798. | Víctor Manuel García Durán | 3,369.23 |
| 799. | Víctor Manuel Treviño Herrera | 3,369.23 |
| 800. | Víctor Manuel Treviño Herrera | 56,675.10 |
| 801. | Vidal Alejandro FragosoRamírez | 3,369.23 |
| 802. | Vidriera Los Reyes, S.A. de C.V. | 141,973,241.32 |
| 803. | Vidriera Monterrey, S.A. de C.V. | 164,769,157.83 |
| 804. | Vidriera Monterrey, S.A. de C.V. | 61,839.73 |
| 805. | Vidriera Monterrey, S.A. de C.V. | 85,186,265.19 |
| 806. | Vidrio Plano de México, S.A. de C.V. | 204,232.88 |
| 807. | Vidrio Plano, S.A. de C.V. | 482,440.68 |
| 808. | Viméxico S.A. de C.V. | 83,222,542.26 |
| 809. | VirginaBorjaFrausto | 725,441.35 |
| 810. | Vitro Automotriz, S.A. de C.V. | 270,966,759.74 |
| 811. | Vitro Cristalglass S.L. | 2,874.74 |
| 812. | Vitro Envases Norteamérica, S.A. de C.V. | 154,787,435.34 |
| 813. | Vitro Envases Norteamérica, S.A. de C.V. | 987,314,671.04 |
| 814. | Vitro Envases Norteamérica, S.A. de C.V. | 159,474,582.95 |
| 815. | Vitro Envases Norteamérica, S.A. de C.V. | 1,510,651,233.89 |
| 816. | Vitro Envases Norteamérica, S.A. de C.V. | 6,980,936.17 |
| 817. | Vitro Europa Ltd (now Vitro Global Ltd.) | 161,409,894.80 |
| 818. | Vitro Europa Ltd (nowVitro Global Ltd.) | 103,797,728.95 |



Elena García Beltrán
Expert Translator

| 819. | Vitro Global Ltd. | 9,806,846.51 |
| 820. | Vitro Packaging L.L.C. | 26,847,071.94 |
| 821. | Vitro Vidrio y Cristal, S.A. de C.V. | 337,886,497.72 |
| 822. | Vitro Vidrio y Cristal, S.A. de C.V. | 76,114,503.89 |
| 823. | VVP Europa Holdings B.V. | 77,245,527.64 |
| 824. | Walter Armando Gómez Díaz | 68,010.13 |
| 825. | Walter CedeñoTriana | 3,369.23 |
| 826. | William John Adsett | 107,815.40 |
| 827. | Willy A Bros | 454,846.22 |
| 828. | Yvonne KawasBabouneand/or José Bernardo KawasBichara | 56,675.10 |
| 829. | Zafrán Mauricio León | 98,654.90 |
| 830. | ZoultiaNagamedianova | 3,369.23 |
| **Amount** | | **7,622,104,903.73** |

Addressing the fact that the executing unsecured creditors, required by article 157 of the Commercial Reorganization and Bankruptcy Law, are holders of credits for an amount of **7'622'104,903.73 UDIs (seven billion six hundred and twenty two million one hundred and four thousand nine hundred and three point seventy three investment unites)**. Therefore, such amount just needs to be multiplied by 100 (%) and the result thereof divided by **10,207,621,683.01 (ten billion two hundred and seven million six hundred twenty one thousand six hundred and eighty three point cero one investment units)** (corresponding to the total amount recognized pursuant to the terms of article 157 of the CRBL), to notice that the executing creditors represent **74.67% (seventy four point sixty seven percent)**, of the entire amount recognized in favor of all the related creditors, therefore it is hereby concluded that such amount exceeds the fifty percent needed to determine the effectiveness of the agreement, which evidences that the requirement provided in article 157 of the insolvency law is fully met.

Regarding the capacity of the persons executing the agreement on behalf of several recognized creditors, it shall be stated that within the legal term no objection was received by any creditor regarding the authenticity of their consent, therefore it is deemed that they implicitly consented to the representation of the

48

Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

person appearing on their behalf, therefore, they shall be subject to the effects arising from the execution of the agreement carried out by the representative or attorney in fact appearing on their behalf.  Especially because on recital number three of the agreement, the parties stated that they mutually acknowledged the capacity and personality with which they appeared.

**FIFTH**. Once the effectiveness requirements of the agreement subject matter of analysis are fully met, it's now turn to meet the provisions of article 164 of the Commercial Reorganization and Bankruptcy Law which provides that this District Court must verify that such agreements meets all the requirements from the Sole Chapter of the Fifth Title of such law and that it does not violate the public dispositions.

Before starting with this analysis, it is important to identify the nature of the insolvency agreement.

From the doctrinal point of view, there are two important trends. The first one, named "*procedural*" considers the agreement as part of the process, since it emphasizes in the special significance of the judicial intervention through which the agreement is approved, and gives little importance to the agreement between the creditors and the debtor, which only serves as a declaration, carried out as a necessary step for the judge to issue the corresponding resolution, in which the effective legal basis of the binding relationship between the debtor and the creditors lies.

Elena García Beltrán
Expert Translator

The second thesis, commonly known as the "*contractual*" thesis, considers the agreement as a contractual *sui generis* form, in which the judicial intervention is just a formal requirement through which the minority is subject to the majority vote as a direct derivation of the Law, which, also, has more than enough justification on practical grounds.[4]

It is considered that the Mexican insolvency laws are more identified with the second thesis, given the fact that according to article 164, this court shall only review that the agreement meets the general requirements provided in the Sole Chapter of Title Fifth and that it does not violates the public dispositions, therefore the Law does not restrict the possible solutions in the agreement.

Therefore, in the explanatory statement of the Commercial Reorganization and Bankruptcy Law, the legislators considered appropriate to allow **greater flexibility in drafting the agreement**, only considering the minimum formalities needed to guarantee the legal certainty of the parties.[5]

Furthermore, from the glossary of defined terms in insolvency matters published by the Federal Institute of Specialists of Insolvency Procedures in its web page[6], a trend in such sense may be noted, since it considers that the terms

---

[4] PEREZ DE LA CRUZ, BLANCO, Antonio "Matters regarding the agreement in an insolvency procedure" (*Cuestiones en torno al convenio de la quiebra*) in Commercial Law studies in tribute to Rodrigo Uría (*Estudios de Derecho Mercantil en homenaje a Rodrigo Uría*), Madrid, Civitas, 1978, pages 526-546

[5] "*The agreement is basically an agreement between merchants, which shall benefit from all the available means for the modern transactions.*
*Nowadays complex negotiations are carried out and agreements of all kinds are executed between merchants located in different continents. Since the agreement is a verification of the business between the merchant and its creditors its evident that its drafting shall be adjusted to the commercial practices of the markets in which the merchant and its creditor operate"*
*In this context, the Commission considered appropriate to allow greater flexibility in drafting the agreement, only considering the minimum formalities needed to guarantee the legal certainty of the parties. Therefore, the drafting and negotiating of the projects or proposals of agreements is not regulated, nor it is required for the creditors to meet to discuss or to vote..."*

[6] http://www.ifecom.cjf.gob.mx/glosario.asp#C

Elena García Beltrán
Expert Translator

[*Appears seal of the Federal Judicial Power which literally reads:*
United Mexican States.-
Federal Judicial Power.]

Format A-55

of the agreement are **free to be agreed between the parties**, as long as they meet the requirements of the Commercial Reorganization and Bankruptcy Law.

In addition to the foregoing, it is important to take in consideration the provisions of the second paragraph of article 1, regarding articles 3 and 148 of the Commercial Reorganization and Bankruptcy Law, which provide that the purpose of the conciliation is to **preserve the companies, since it is a public interest matter**, which confirms that the agreement proposed by the conciliator is a legal mean desired by the legislator for the effective termination of the insolvency procedure, as long as the general conditions provided in the Sole Chapter of Title Fifth of the Commercial Reorganization and Bankruptcy Law are met, and the public dispositions are not violated, whereas, the purpose to reach an agreement is that the creditor is able to recover at least part of its credit.

Once the foregoing has been clarified, it shall be determined if in this particular case, the proposed agreement meets the general requirements provided in articles 153, 155, 156, 159 and 160, which literally state:

> **"Article 153.** *The agreement shall consider the payment of the credits referred to in Article 224[7] of this Law, of credits that are singularly privileged, and if any, of secured credits with special privilege that have not*

---

[7] **Article 224.** Credits against the Estate shall be paid in the order indicated [below] before any of the credits referred to in Article 217 of this Law. I. The credits referred to in Article 123 (XXIII)(A) of the Constitution and regulatory provisions, increasing the salaries to those corresponding to the two year prior to the Merchants' declaration of commercial insolvency; II. Credits contracted by the Merchant for the management of the Estate, which credits were approved by the conciliator or the trustee, or if applicable, which credits were contracted by the conciliator himself; III. Credits contracted to cover normal costs for the security of the property comprising the Estate, or the repair, preservation or administration thereof., and IV. Credits arising from judicial or extrajudicial proceedings; and

Elena García Beltrán
Expert Translator

been included in the agreement, subject to the guarantees and privileges of such secured credits.

The agreement shall provide for sufficient reserves for the payment of the differences that may result from disputes pending resolution and tax credits yet to be calculated.

In relation to tax credits, the agreement shall include the payment of such obligations in accordance with applicable provisions; failure to make such payments shall result in the corresponding administrative enforcement procedure."

"**Article 155.** In the event the draft agreement calls for an increase in authorized capital, the conciliator shall inform the judge so that the judge may inform the shareholders/partners to allow them to exercise their preferential right within fifteen calendar days following such notice. If such right is no exercised within the aforementioned period, the judge may authorize the increase in authorized capital in accordance with the terms of the agreement proposed by the conciliator.

"**Article 156.** All the Recognized Creditors, except the creditors of tax credits and the labor credits referred to in Article 123(XXIII)(A) of the Constitution and in this Law, may sign the agreement.

The creditors do not have to meet to vote on whether to sign the agreement.

"**Article 158.** The agreement shall be deemed signed by all those unsecured Recognized Creditors, without requiring any manifestation by



Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

*such creditors, when the agreement provides, with respect to their credits, the following:*

*I. Payment of the debt due and payable on the date the judgment imposing commercial insolvency became effective, which debt shall be converted into UDIs using the rate in effect on the date of such judgment;*

*II. Payment of all amounts and related charges that would have become due and payable in accordance with the underlying contract as of the date of the judgment imposing commercial insolvency until the agreement is approved, as if commercial insolvency had not been imposed and assuming that the amount referred to in the preceding paragraph is paid on the date of the judgment imposing commercial insolvency. Such amounts shall be converted into UDIs using the rate in effect on the day each payment became due and payable; and*

*III. Payment, on the dates, in the amounts and in the currency agreed upon of the obligations that, in accordance with the contract in question shall become due as of the approval of the agreement, assuming that the amount referred to in section I is paid on the date of the judgment imposing commercial insolvency and that the payments referred to in section II are made at the moment they become due and payable.*

*The payments referred to in sections I and II of this article shall be made within thirty business days after the approval of the agreement, using the value of the UDIs as of the day the payment is made.*

53

Elena García Beltrán
Expert Translator

The credits subject to the provisions of this article shall be deemed current as of the date of the approval of the agreement.

"**Article 159**. In relation to unsecured Recognized Creditors that do not sign the agreement, the agreement may only stipulate the following:

*I*. A waiting period not to exceed the shortest period afforded the unsecured Recognized Creditors that sign the agreement and that represent at least thirty percent of the amount recognized for such classification, during which waiting period ordinary interests shall accrue;

*II*. A reduction in principal and unpaid, accrued interests in an amount equal to the least amount assumed by the unsecured Recognized Creditors that sign the agreement and that represent at least thirty percent of the amount recognized for such classification; or

*III*. A combination of reduction and waiting period, provided the terms are identical to those accepted by at least thirty percent of the amount acknowledged to the unsecured Recognized Creditors that sign the agreement.

The agreement may stipulate that the credits shall remain in the currency, unit value or denomination originally agreed upon.

"**Article 160**. Those secured Recognized Creditors that do not participate in the agreement may initiate or continue the enforcement of their guarantees, unless the agreement contemplates the payment of their credits in accordance with the terms of Article 158 hereof, or the payment of the value of their guarantees. In the latter case, the difference between the

54



Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

*amount of the debt and the amount of the guarantee shall be deemed an*

*unsecured credit and shall be subject to the provisions of the preceding*

*article."*

Addressing the content of such provisions, it is shown that the requirements

that the agreement must meet are the following:

**a)** The reserves for the payment of the differences arising from the contests

that are pending to be resolved and of the tax credits to be determined.

**b)** The tax obligations, pursuant to the law.

**c)** It is stated for the unsecured recognized creditors who didn't execute the

agreement, the following:

**I.** A waiting period not to exceed the shortest period afforded the unsecured

recognized creditors that sign the agreement and that represent at least thirty

percent of the amount recognized for such classification;

**II.** A reduction in principal and unpaid, accrued interests in an amount equal

to the least amount assumed by the unsecured recognized creditors that sign the

agreement and that represent at least thirty percent of the amount recognized for

such classification; or

**III.** A combination of reduction and waiting period provided the terms are

identical to those accepted by at least thirty percent of the amount recognized to

the unsecured recognized creditors that executed the agreement.

Based on the foregoing, it shall be specified that as shown in the agreement

subject matter of this analysis, the foregoing meets the formalities provided in

Elena García Beltrán
Expert Translator

paragraphs **a)** and **b)** since the content of section **5.09** of the insolvency agreement established that the insolvent party shall constitute enough reserves to pay the **differences** that may arise from the challenges pending to be resolved and for the tax credits to be determined pursuant to the applicable laws and, regarding the tax obligations, such obligations shall be paid pursuant to the applicable laws.

However, from sections **20** and **21** attached by the conciliator to the restructuring plan, it's shown that "Vitro", *Sociedad Anonima Bursatil de Capital Variable,* through such reserves is securing the challenges of the following creditors:

**1. The Bank Of New York Mellon**

**2. US Bank N.A.**

**3. Wilmington Trust FSB**

**4. Servicio de Administración Tribuatria**

Additionally, in the format identified as section **22**, it can be gathered that the persons mentioned therein shall have the payment rights from the restructure implemented through the agreement in the event they are recognized as creditors, therefore it is not necessary to constitute reserves for these credits pending recognition, since, in the event they are evaluated by a Court of Appeals, they shall receive, if applicable, a combination of reduction and waiting period according to the recognized amount, especially given that the conciliator states that the majority thereof, in the event they are admissible, shall be deducted from the recognized amount of the common representatives.

Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

On the other hand, this District Court is aware that, pursuant to such section, reserves are not being constituted nor incorporated regarding several challenges made by several creditors acting as holders or common representatives of 2012, 2013 and 2017 bonds based on the fact that:

**1.** Their credits must be recognized with a special privilege and therefore it's illegal that they have been considered as unsecured credits.

**2.** The credits from several companies controlled by the merchant shall not be recognized.

However, in the opinion of this Court, the nature of such challenges is not provided in the hypothesis of article 153, which states that: "*The agreement shall provide for sufficient reserves for the payment of the **differences**[8] that may result from disputes pending resolution and tax credits yet to be calculated[9]...*", because, when referring to the differences that may arise from the challenges, implies that such provisions' purpose is to protect the non-recognized amounts in the recognition, classification and priority judgment, but not regarding the challenges related to the recognition of a credit in a different classification to such requested, or for the disagreement in the recognition of another credit.

Continuing with the analysis of the insolvency agreement, its **second clause** provided that the purpose of the agreement was to maintain the company and avoid that the breach of its payment obligations regarding the existing debt

---

[8] **Difference. 5.** F *Mat.* Balance (ii result of the arithmetic operation of subtracting).
http://buscon.rae.es
[9] Understating from the foregoing only such challenges presented through an appeal against the Recognition, Classification And Priority Judgment.

Elena García Beltrán
Expert Translator

risks its viability, as well as such of other companies with which it maintains a

business relation, therefore the restructuring includes the payment, possible

capitalization, restructuring and/or novation, as the case may be, of the recognized

debts, and therefore the extinction of the existing indebtedness in favor of the

recognized creditors with the restructures, grants and/or amendments and/or

releases of security interests provided for and subject to the terms of the

agreement.

As it can be appreciated, the insolvent company, together with the majority

of the recognized creditors agreed to extinguish the existing indebtedness through

the issuance of several debt securities and a payment in cash, which are described

in section 5.02 as follows:

(a) New senior notes in an aggregate amount of US$814,650,000 (eight
hundred fourteen million six hundred and fifty thousand dollars 00/100
Currency of the United States of America) with a fixed interest rate of
8.0% (eight percent) maturing on 2019 (the "New 2019 Notes") to be
issued by Vitro;

(b) New mandatory convertible debentures in an aggregate amount of
US$95,840,000 (ninety five million eight hundred and forty thousand
dollars 00/100 Currency of the United States of America) (plus the Issue
Date Adjustment) with a fixed interest rate of 12.0% (twelve percent)
maturing on 2015 (the "New Mandatory Convertible Debentures" or
"MCDs" and, together with the New 2019 Notes, as the "New Notes"),
which shall be mandatory convertible in 20.0% (twenty percent) of
Vitro's capital stock if they are not entirely paid at their maturity; and

(c) A restructuring fee to be paid in cash (the "Restructuring Fee") equal to
an annual interest of an investment at a rate of 8.0% (eight percent)
calculated over the principal amount corresponding to the New 2019
Notes to be issued in the Issue Date, as if the latter were issued on
January 1st, 2011 (the "Value Date") and until the effective date of the
issuance of the New Notes.

Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

It shall be specified that is valid that the insolvent party agrees with the majority of the recognized creditors the extinction of the obligations from which the recognized credits arise, given that agreement shall be understood as, pursuant to the provisions of article 1792 of the Federal Civil Code (*Código Civil Federal*), which is applicable by extension to the Commercial Reorganization and Bankruptcy Law, pursuant to its article 8, section V, the agreement between two or more parties to create, transfer, modify or <u>extinguish</u>[10] obligations.[11]

Therefore it shall be concluded that in the agreement referred to in the Commercial Reorganization and Bankruptcy Law in its articles 148, 151, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, and 166 it may be agreed not only to modify obligations, but to extinguish thereof, therefore is possible to agree to substitute one obligation for the other.

Especially because, as provided at the beginning of this clause, the Law does not restrict the possible solutions in an agreement, as long as the formalities providing legal certainty to the parties are met, therefore in the explanatory statements of the Law, the legislators considered to be convenient to allow **greater flexibility in drafting the agreement**.

Following with the corresponding analysis, is appropriate to have in mind that the obligations that are being extinguished come from sophisticated agreements executed regularly by the companies handling high levels of flows or

---

[10] "*Extinguish. Pursuant to a term or a right: To end, to mature.*".
http:/buscon.rae.es.
[11] "*Article 1,792.- Agreement is the agreement between two or more persons to create, transfer, modify or extinguish obligations*"

59

Elena García Beltrán
Expert Translator

revenues than those of an ordinary company, therefore, in the explanatory statements of the Commercial Reorganization and Bankruptcy Law, the legislators considered evident that **the drafting of the agreement shall be adjusted to the commercial practices of the markets in which the merchant and their creditors operate**, and that it shall benefit from all the available means for modern transactions.[12]

In this particular matter, regarding the restructuring instruments named "*new 2019 notes*" and the "*new mandatory convertible debentures*" from section 5.01 of the agreement, it is evidenced that the executing parties agreed that none of them shall be registered under the United States Securities Act of 1933 based on the exemptions provided in the applicable law, nor shall be registered before the National Securities Registry (*Registro Nacional de Valores*) in charge of the National Banking and Securities Commission (*Comisión Nacional Bancaria y de Valores*) therefore the insolvent company shall have the right to implement such procedures, and to request to the Recognized Creditors such representations and/or certifications which it reasonably considers to be necessary or convenient to ensure the fulfillment of the necessary requirements in order to have the corresponding legal exemptions.

---

[12] "*The agreement is basically an agreement between merchants, which shall benefit from all the available means for the modern transactions.*
*Nowadays complex negotiations are carried out and agreements of all kinds are executed between merchants located in different continents. Since the agreement is a verification of the business between the merchant and its creditors its evident that its drafting shall be adjusted to the commercial practices of the markets in which the merchant and its creditor operate"*
*In this context, the Commission considered appropriate to allow greater flexibility in drafting the agreement, only considering the minimum formalities needed to guarantee the legal certainty of the parties. Therefore, the drafting and negotiating of the projects or proposals of agreements is not regulated, nor it is required for the creditors to meet to discuss or to vote…"*



Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

In sections 5.05, 5.06, and 5.07 the general terms of each of the debt securities are provided, as well as the additional terms of the new 2019 notes, as follows:

"**Section 5.05** *General Terms of the New 2019 Notes to be issued by Vitro.*

*The New 2019 Notes shall be issued by Vitro in accordance with the laws of the United States of America on the Closing Date pursuant to the terms and conditions of Section I of the Description of the Notes and the terms and conditions provided for in the corresponding New 2019 Notes indenture.*

*The New 2019 Notes shall:*

I.  *have a principal amount of US$814,650,000 (eight hundred fourteen million six hundred and fifty thousand dollars 00/100 Currency of the United States of America);*

II.  *have a term of eight (8) years following the Value Date;*

III.  *constitute direct, unconditional and non-subordinated obligations of Vitro, and rank pari passu or identical, one on one basis, versus Vitro's non-secured and non-subordinated debt;*

IV.  *be unconditionally and jointly guaranteed by each of the Guarantors;*

V.  *have a fixed annual interest rate of 8.0% (eight percent), payable semiannually in due exhibits and which may be partially capitalized and paid in kind, by 50% (fifty percent), during the first 3 (three) years following the Value Date, at Vitro's election, subject to the compliance by Vitro of certain conditions set forth in the corresponding Indenture;*

VI.  *not have amortization or principal payments during the first 4 (four) years following the Value Date and, from the fifth year until the seventh year following the Value Date, shall have amortizations or principal payments of US$23,960,000.00 (twenty three million nine hundred and sixty thousand dollars 00/100 Currency of the United States of America) payable semiannually on June 30th, and December 31st, each year, and the remaining balance upon maturity;*

VII.  *totally or partially redeemable at Vitro's option, at any time during their term, subject to certain conditions set forth in the Indenture and in the Description of the New Notes, at a price equal to 100% of their value plus interests generated up to the redemption date;*

VIII.  *be totally or partially mandatorily redeemable at a price equal to 100% (one hundred percent) of their value plus the outstanding interest generated as of the redemption date, in the event that Vitro (i) performs a stock issuance subject to certain conditions set forth in the Indenture and in the Description of the New Notes; and (ii) has a cash flow above the amount set forth in the Indenture and in the Description of the New Notes; and*

IX.  *be totally mandatorily redeemable, per request of the holders, in the event of a change of control in Vitro at a price equal to 101% (one hundred one percent) of its value plus interests generated up to the redemption date; and/or (ii) in the event Vitro carries out assets sales when the flow, product of such sale, has not been applied within a term of 360 days to certain defined purposes, pursuant to the provisions of the corresponding Indenture and the Description of the New Notes at a price equal to 100% (one hundred percent) of its value plus the outstanding interests generated as at the redemption date.*

*All of the terms and conditions, as well as the customary and regular negative and affirmative for this kind of transactions, including without limitation, any limitations to incur in additional debt, limitations on investments and creation of liens or encumbrances, limitations on certain payments,*



Elena García Beltrán
Expert Translator

*limitations on the sale of assets, limitations of transactions with partners or affiliates, and early termination events under which the New 2019 Notes will be subject, are contained in Section I of the Description of the New Notes (which is attached herein as **Exhibit "D"** forming integral part hereof) called New 2019 Notes (New 2019 Notes).*

**Section 5.06** *General terms of the New Mandatory Convertible Debentures to be issued by Vitro.*

*The New Mandatory Convertible Debentures shall be issued by Vitro pursuant to the laws of the Unites States of America, complying with all applicable provisions under the General Law Credit Transaction and Negotiable Instruments (Ley General de Títulos y Operaciones de Crédito), on the Closing Date pursuant to the terms and conditions of Section II of the Description of the New Notes and the terms and conditions provided under the New Mandatory Convertible Debentures Indenture.*

*The New Mandatory Convertible Debentures shall:*

I. *have a principal amount of US$95,840,000 (ninety five million eight hundred and forty thousand dollars 00/100 Currency of the United States of America) plus the Issue Date Adjustment;*

II. *have a term of five (5) years following the Value Date;*

III. *constitute direct obligation of Vitro, and shall rank paripassu or identical, one on one basis, versus Vitro's non-guaranteed debt;*

IV. *have an annual fixed interest rate equal to 12.00% (twelve percent), which may be totally capitalized and paid in kind, on an annual basis, during its term;*

V. *be mandatorily convertible into shares of Vitro which represent 20.00% (twenty percent) of its corporate capital at the end of its term, in the event that they are not paid in cash at the end of its term or in the absence of mandatory redemptions pursuant to the Indenture and the Description of the Notes;*

VI. *be totally or partially redeemable at Vitro's option, at any time during their term, subject to the terms and conditions set forth in the Indenture and in the Description of the Notes, at a price equal to 100% of their value (subject to prepayment discounts set forth in the Description of the New Notes) plus the interests generated up to the redemption date;*

VII. *be totally or partially mandatorily redeemable at a price equal to 100% (one hundred percent) of its value plus the outstanding interest generated as at the redemption date in the event that Vitro (i) issues capital stock subject to certain conditions set forth in the corresponding Indenture and in the Description of the New Notes; and/or (ii) has a cash flow above the amount set forth in the Indenture and in the Description of the New Notes; and*

VIII. *be totally mandatorily redeemable, per request of the holders, in a total manner, in case of a change of control in Vitro, at a price equivalent to the 101% (one hundred one percent) of its value plus the unpaid interests that may have been generated upon the redemption date; and/or (ii) in case that Vitro carries out several asset sales in case that the flow from said sale has not been applied to certain determined purposes within a period of 360 days, according to the provisions in the Indenture and in the Description of the Notes at a price equal to 100% (one hundred percent) of its principal plus the unpaid interests generated up to the redemption date.*

*The main terms and conditions, the conversion terms and procedures, as well as the negative and affirmative covenants and early termination events which govern the New Mandatory Convertible Debentures are provided under Section II of the Description of the New Notes (which is attached herein as **Exhibit "D"** forming integral part hereof)called the New Mandatory Convertible Debentures (New MCDs).*

*The principal amount of the New Mandatory Convertible Debentures and, therefore, the base to calculate the Issue Date Adjustment, may be adjusted, if applicable, pursuant to this Agreement.*



[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

**Section 5.07** *Additional Terms of the New 2019 Notes and the New Mandatory Convertible Debentures to be issued by Vitro*

*Pursuant to the corresponding terms in the Indenture and in the Description of the New Notes, each of the New 2019 Notes and the New Mandatory Convertible Debentures to be issued by Vitro shall include other usual definitions, terms and conditions (subject to certain usual exceptions for transactions of this nature), including:*

*(a) usual representations for restructuring instruments of this nature, including, corporate existence and authorities, authorization and enforceability of the documents of the transaction; lack of additional authorizations, binding effects; litigations and fulfillment of the applicable laws (including social security laws and stock market laws); financial statements and other information; absence of substantial adverse effects, no defaults; no contingent liabilities; insurances; subsidiaries; commercial acts; correct legal form; margin regulations; pension plan; labor matters; guarantee documents and priority of guarantees; anti-terrorism laws, existing indebtedness; affiliate transactions; hedge agreements, and hedge and guarantee policies.*

*(b) covenants (including without limitation, those regarding the delivery of the financial statements, reports, accounting opinions (to be audited by an internationally recognized accounting firm), officers certificates and other information which is reasonably required by the creditors; notices of substantial events; maintenance of existence, maintenance of goods and insurances; maintenance of governmental authorizations, material licenses, permits, franchises, tax payments and other obligations, classification of obligations; maintenance of the current share in relevant subsidiaries; fulfillment of applicable laws; maintenance of books and records; obligation of guaranteeing and granting guarantees; fulfillment of the hedge policies; intercompany debts; fulfillment of the Agreement and additional guarantees, and in each case with the usual exceptions, if applicable, to be agreed;*

*(c) financial obligations*

*(d) negative covenants (with several usual exceptions) restricting (1) liens, (2) investments, (3) mergers, consolidations, sales and leases, (4) restricted payments, (5) burdensome agreements, (6) affiliate transactions, (7) changes in incorporation documents, or documents evidencing other debts, (8) fundamental changes in asset sales or exchanges and acquisitions, (9) capital expenses, (10) advance payments of other debts (11) incur in additional debts, (12) hedge transactions (12) intercompany debts and (14) issuance of shares, among others;*

*(e) compensations; and*

*(f) usual default events for this kind of restructuring instruments including those related to the: payment default or default in advance payments: default of specific obligations; other defaults of obligations: cross default; lack of accuracy in the representations regarding any substantial matter; bankruptcy or insolvency events voluntary or involuntary; substantial judgments; unenforceability of the Restructuring Instruments; seizure; change of control; guarantee documents; to lose necessary governmental authorizations; default in the payments to be carried out at the Closing date; and the merger, consolidations, dissolution, liquidation, transfer or sale, by any title, all or substantially all the assets, among others."*

Additionally, a description of the "*new 2019 notes*" and "*new mandatory convertible debentures*" were attached to the agreement, explaining in greater detail both the terms and conditions of said restructuring instruments which were accepted by the majority of the recognized creditors and which would be

63



Elena García Beltrán
Expert Translator

implemented once the restructuring has been concluded, and the exhibits "E-1" and "E-2".

It is also convenient to indicate that the description taken into consideration herein, is the one indicated by the conciliator through the writ received by this Court on January twentieth, two thousand eleven, whereby, upon the opinion of the specialist, the exhibit attached to the agreement failed to delete a provision that had been deleted from the definite agreement that was filed on December fifth, last year before the Central Filing Desk of the District Courts in Civil and Labor Matters in the State of Nuevo Leon.

Section 5.04 establishes the manner and the date for the payment to be made by the insolvent company in favor of the recognized creditors.

It was mainly established that they would receive their pro rata amount of the consideration due to the restructure upon the closing date[13], through the method established on the agreement and on the restructuring documents established on subparagraphs b and c from the referred section.

In connection to the appearing recognized creditors (except for those that hold intercompany debts), it was established that they would receive the pro rata portion of the consideration for the restructure upon the closing date, which would be indirectly through one or more trusts specifically incorporated for such purposes, prior the subscription and delivery of the "E-1" format to the corresponding fiduciary.

---

[13]The closing date pursuant to section 5.04 would occur as soon as possible after the agreement is approved, but in no case later than sixty business days after said approval, unless there is a legal impediment for the above.

Elena García Beltran
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

Said trusts would have as a main purpose to issue instruments linked to the new 2019 notes and the new mandatory convertible debentures, on economic conditions identical to those established on the new 2019 notes and for the new mandatory convertible debentures, in favor of the appearing recognized creditors, who upon an event of default of Vitro and/or due to other circumstances, shall have the right of requesting the immediate termination of the trusts and to directly receive the new 2019 notes and the new convertible debentures in the proportion that may correspond to them.

The recognized creditors that did not appear shall receive their pro rata portion of the payment of the consideration for the restructure upon the closing date through a trust that shall hold the part of the payment that corresponds to them from the restructuring instruments, from the restructuring fees, and from any other profit or income related to the restructuring; the fiduciary of said trust shall release the instruments and the corresponding fee payments for the restructure solely against the receipt of the "E-2" format duly executed by the non-appearing recognized creditor.

That the amount of the new notes and other restructuring schedule to be delivered by the fiduciary and which corresponds to the non-appearing recognized creditors, shall be determined pro rata pursuant to the proportion of the existing debt held by each one of the non-appearing recognized creditors.

The delivery of the new notes or securities shall be made through a distribution intermediary or agent, and those recognized creditors that are not

65

Elena García Beltrán
Expert Translator

qualified creditors and who by legal provision cannot receive securities, shall have the right to receive the profit from the sale of said securities through an agent hired for such purposes.

In connection to the payment of the restructuring fee, it was established that it would be made through a wire transfer of funds to the receiving account indicated in writing by each one of the recognized creditors, pursuant to the formats "E-1" and "E-2" as it corresponds, or to the account indicated in writing by the fiduciary that holds the restructuring instruments and the restructuring fee that may correspond to the non-appearing recognized creditors.

Since the creditors that hold intercompany debts agreed to receive less favorable treatments, they would not receive any of the restructuring instruments nor the restructuring fee established above.

Therefore, said creditors (except for the holders of ordinary course intercompany debts) would each receive a promissory note[14] for the amount recognized in their favor on the judgment of credit recognition, which shall be due in nine years, counted as from the issuance of the new notes, and shall accrue an annual interest at a fixed rate of two point five per year, which shall be payable in a lump sum upon maturity together with the payment of the principal, therefore, regarding intercompany debts, no payment of principal or of interests (except for any ordinary course intercompany debt) may be paid before the full payment of the principal, interests and any other alleged amount in connection to the restructuring instruments or before the trust that holds the restructuring instruments and fees

---

[14] Same which shall be subject to the terms and conditions of the intercompany credit and subordination agreement, for which an irrevocable administration trust shall be incorporated, on which the totality of the intercompany credits shall be contributed in order for them to be administered and voted pursuant to the provisions of said voting trust.



[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

that correspond to the non-appearing recognized creditors is terminated, except for the payment of principal or of interests on the ordinary course and which are consistent with the past practices in connection to the ordinary course intercompany debts.

It should be noted that the description of the new notes referred to on the same agreement[15], defines the "*ordinary course intercompany debt*" as the intercompany debt issued by the company or its restricted subsidiaries or a restricted subsidiary on the ordinary course of business, on or as from April 8th, 2011[16], pursuant to past practices, including, without being limited to, commercial accounts collectibles and intercompany debt issued with management purposes from the treasury of the company or from said restricted company[17].

In virtue of the above, the exception of section 5.8 has no connection to the recognized amounts on the judgment of recognition, classification, and priority of credits in favor of the recognized creditors holders of intercompany debts, such is the case, that the promissory note to be received by each creditor shall be issued in the amount recognized in their favor on said judgment.

Based on all the previous issues, it is evidenced that the proposed agreement refers to the payment of all kinds of credits that were recognized, through debt instruments adjusted to the commercial practices of the markets whereby the merchant and its creditors operate, it also establishes which currency

---

[15] Section 1.01
[16] Day when "Vitro" was declared in a commercial reorganization.
[17] "*Ordinary Course Intercompany Debt*" *means the Intercompany Debt issued by the Company or its Restricted Subsidiaries or a restricted subsidiary on the ordinary course of business, on or as from April 8th, 2011, pursuant to past practices, including, without being limited to, commercial accounts collectibles and Intercompany Debt issued with management purposes from the treasury of the Company or from said Restricted Company.*

[Signature]
Elena García Beltrán
Expert Translator

shall govern the new debt (US Dollars), as established at the end of article 159 of the Commercial Reorganization Law.

Now then, clause ninth establishes that the parties agreed that, <u>given the nature of the agreement and the purposes of the insolvency agreement</u>, the payment of the restructuring fee and of the restructuring instruments subscribed by the insolvent company shall novate, pay, substitute and terminate the previous obligations, instruments and certificates, agreements and guarantees whereby they may have agreed over the recognized credits, therefore, in terms of the provisions of articles 1991 and 2223 of the Federal Civil Code, which is applicable by extension to the Commercial Reorganization Law, in terms of article 8° subparagraph V, they shall terminate the personal guarantees that may have been granted to third parties and/or the direct or indirect subsidiaries of Vitro in connection to the obligations, instruments, certificates and agreements that gave rise to the recognized credits. Likewise, the recognized executing creditors, or the ones that did not execute it through the "E-2" format, condone the difference between the credits recognized in their favor and the new debt resulting from the agreement once it is approved, and they grant "Vitro" and its guarantors the broadest receipt in connection to such original credits, and the new debt exclusively on the agreed terms, shall subsist as from the judicial approval of the agreement.

This clause is in compliance with the restructure agreed to by the insolvent company with the majority of the creditors, since they decided to substitute the obligations of "Vitro", *Sociedad Anónima Bursátil de Capital Variable*, through the

68



Elena García Beltrán
Expert Translator

[Appears seal of the Federal Judicial Power which literally reads:
United Mexican States.-
Federal Judicial Power.]

restructuring instruments, except for the intercompany debts since they agreed to have a less favorable treatment. Therefore, the provisions agreed by the parties constitute a novation in terms of article 2213 of the Federal Civil Code[18], applicable by extension to the Commercial Reorganization Law, and pursuant to the provisions of the court precedent issued by the former Third Chamber of the Supreme Court of Justice of the Country, with the following title and text:

"**NOVATION, EXISTENCE OF.** *It is true that the amendments to a liability, in connection to the guarantees that are granted, do not imply a novation, since the latter only exists when the main liability is totally amended and terminated to give rise to a new one, and a cause and effect relationship exists between them. This transformation may appear in virtue of a substitution between the parties or through a change of the obligation, which cannot be deemed existent when only the amount of the thing is amended or if a guarantee is granted to secure its payment; the regular case whereby an obligation is amended or transformed is the one that modifies its quality, for example, when a person is in debt for a certain amount per concept of lease, and the creditor accepts that he keeps the debt as a loan; but when the obligation agreed to by the debtors, upon subscribing a commercial promissory note, which is a literal and autonomous obligation, such as all those that arise from a credit instrument, is renewed in virtue of a public deed, indicating that henceforth the supporting instrument of the claim shall be precisely the same deed, and that the mercantile promissory note is returned to the debtors,*

---

[18] *There will be a novation of an agreement when its interested parties substantially amend it substituting the previous obligation with a new one".*

Elena García Beltrán
Expert Translator

*it is evident that the capacity of the obligation has changed, substituting the original literal obligation, consigned on the promissory note, with an ordinary commercial debt obligation[19].*

Again, it is valid to have established the termination of the personal guarantees that would have been granted by third parties and/or by the direct and indirect subsidiaries of "Vitro" in connection to the obligations, instruments, certificates and agreements that gave rise to the recognized credits, since the termination of the main obligation can lead to the termination of the ancillary liability[20].

It is obvious that the substantive civil legislation governs the agreements on a different scenario than the commercial reorganization law, therefore, in virtue of the rule specialization principle, that is, the one that indicates that the specific rule shall prevail over the rules of general observance, it should be considered for purposes of this law, that the plurality of creditors with diverse concurring credits[21], can agree not only over the payment of their credits, but also of those belonging to all the other recognized creditors, through a method whereby they all receive at least what would correspond to them in the best scenario of a purchase after the bankruptcy.

For such reasons, on the declaration of purpose of the Law of the Matter, the legislation body that presented it established that the conciliation stage of a commercial reorganization procedure is intended to create the best conditions in

---

[19]Fifth Period, Instance: Third Chamber, Source: Federal Weekly Judicial Newspaper, tome XLVIII, page 3068.
[20]*Article 2,220.-The novation terminates the main obligation and the ancillary obligations. The creditor may, in virtue of an express reservation, prevent the termination of the ancillary obligations, which would then pass on to the new one".*
[21]Upon the condition consisting in that they shall be the majority.

Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

order for any favorable arrangement for all the participants to be materialized in an

agreement, and that, even though the nature of an agreement is that of obtaining

and reflecting several consents, <u>it is permissible for an agreement of the majority to</u>

<u>be imposed over a dissident minority and to duly protect their rights to avoid an</u>

<u>unsatisfied or uninterested minority from preventing a solution preferable to all</u>. The

intent is that all the creditors receive at least what would correspond to them in the

event of a purchase after a bankruptcy, **and the above is achieved by assuring**

**to the dissents the best conditions accepted by the creditors of their**

**classification that subscribe the agreement**.

Furthermore, it is considered that said clause does not breach any provision

established on the sole chapter of Title Fifth of the Commercial Reorganization

Law, since it establishes on articles 160 and 165, that the recognized secured

creditors that have not participated on the agreement may start or continue with the

execution of their guarantees, and that the subscription by the secured recognized

creditors or those with a special privilege does not imply the waiver to their

guarantees or privileges, therefore they shall subsist to guarantee the payment of

their credits, the above implies that on the commercial reorganization agreement

the obligations that guarantee the recognized credits that were classified as

common may be affected, since there is no provision on the contrary, as there is in

case of the secured credits.

Consequently, upon the establishment of the payment of the previously

described credits, it is evident, pursuant to the conditions accepted by the majority

71

Elena García Beltrán
Expert Translator

of the creditors that were classified as common, that it is possible for the filed commercial reorganization agreement to establish the termination of the ancillary obligations, since pursuant to the Commercial Reorganization Law, the obligations of the insolvent company shall be considered as paid in connection to the credits that were recognized against it on the corresponding judgment (recognition, classification and priority of credits) through the terms and conditions established on the agreement that comply with the provisions of Title Fifth thereof.

Nevertheless, the fact that the creditors that hold the intercompany debts appear in their capacity as guarantors of certain recognized credits derived from the 2012, 2013 and 2017 issuance certificates is not contrary to the above.

This is because the voting right, pursuant to the commercial reorganization law, is only conditioned to the recognition on the corresponding judgment of the creditors' credit, therefore, it cannot refuse to accept or limit this recognized right for any circumstance that is not established on the law, for example that the appearing creditor appears as a guarantor on a different recognized credit, therefore, the voting provision has the effect, should it be placed among the majorities, of imposing the best collection conditions to the minorities, **so that they can obtain an acceptable return of their recognized credit**.

That is, the main interest of the intercompany debts creditors, as well as those of any recognized creditor, is that of inducing through their vote a method whereby they would all receive at least what would correspond to them on the best scenario of a purchase after a bankruptcy.



Elena García Beltrán
Expert Translator

[*Appears seal of the Federal Judicial Power which literally reads:*
United Mexican States.-
Federal Judicial Power.]

Therefore, in virtue of said particular situation, it is not possible to restrict the rights of this group of creditors to subscribe the agreement, since the above would restrict them from an opportunity of safeguarding their rights derived from their credits, therefore, if they are not allowed to participate on the negotiations by exercising their vote, not only would that be breaching the rights that they have as recognized creditors pursuant to the Commercial Reorganization Law, but also the general provision contained on number 1° of the Federal Civil Code, applicable by extension to the previous law[22].

Besides, in case that the termination of the guarantees by the persons that subscribed the agreement were not agreed, or well, if this District court chooses to disapprove the referred clause, it may undoubtedly lack of the effectiveness of the proposed agreement, the above considering that if the guarantees subsist, the recognized creditors in whose favor they are incorporated would have the opportunity of collecting their credits from the guarantors, with the subsequent risk that in the future, they could exercise legal actions against the insolvent company, through the subrogation of the creditors' rights[23], notwithstanding they have agreed over the payment thereof.

The previous argument leads to the conclusion that the termination of the ancillary liabilities is necessary to grant certainty to the commercial reorganization agreement, which is the method preferred by the Law to terminate the commercial

---

[22]Federal Civil Code: **"Article 1°.-** *Only whoever has an interest in the declaration or the incorporation of a right or the imposition of a condemnation established by the judicial authority may appear to a judicial procedure either to start it or appear on it as well as those that have an interest on the contrary".*
[23]**"ARTICLE 1,999.** *The joint debtor who pays the debt in full has the right to request from the other debtors the proportional part that corresponds to them over it.*
*.... To the extent whereby a joint debtor pays the debt, he is subrogated on the rights of the creditor."*

Elena García Beltrán
Expert Translator

reorganization procedure, therefore, pursuant to article 3° the preservation of the companies is considered of public interest.

In other words, the termination of the guarantees would be an aspect linked to the conclusion of the restructuring, since the main obligation could not be renewed due to the previously mentioned reasons.

Furthermore, when this kind of creditors are established as joint obligors of the restructuring instrument, it is evidenced that the provisions of clause ninth of the agreement approved by the conciliator are addressed to safeguard the interests of the insolvent company and of all those creditors[24], whereas, they will now answer before the payment obligations established in favor of the insolvent company.

Finally, pursuant to article 159 of the referred law, for the recognized creditors that were classified as common who did not execute the agreement, a combination of forgiveness of debt and delay was established, which is in the same terms as those accepted by the group of recognized creditors that were classified as common who were not holders of intercompany debts, who represent more than thirty percent of the recognized amount to that group of recognized creditors. It should be clarified that in order to obtain the percentage established on subparagraph III of the referred ordinance, the amount represented by the creditors that are holders of intercompany debts was not considered, whereas, said group accepted to receive a less favorable treatment, which, as per the provisions of the referred article, would not be applicable, extended and binding to the non-

---

[24]Different than the intercompany debts.

Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

appearing creditors that were classified as common; even so since better conditions are granted to the latter than to be subsidiaries, and in this manner, their rights are being duly protected and the protection established for the non-appearing recognized creditors pursuant to the terms of article 159 in connection to the declaration of purpose of the Commercial Reorganization Law is fulfilled[25].

Additionally it is hereby considered that the agreement does not establish greater burdens for those that did not subscribe the agreement or that it excludes any recognized credit on the recognition, classification and acknowledgement of credits resolution, pursuant to the provisions of articles 160, 161 and 164 of the Commercial Reorganization Law, since it is hereby considered that the agreement complies with the requirements of law for its due approval.

It should be clarified, that pursuant to the limitation established on article 159, which indicates that the agreement may only provide forgiveness of debts, delays or a combination of both for the recognized creditors that did not execute it, it is hereby considered that the above is only applicable to the payment proposal of the credits made by the insolvent company in connection to the persons found on said presumption, but it does not prevent other presumptions to be established on the agreement, such as those tending to govern the manner whereby the

---

[25]The conciliation stage is destined to create the best conditions so that any arrangement opportunity can be materialized through an agreement which is favorable to all participants. Now then, notwithstanding that the nature of an agreement is to achieve and reflect a collection of consents, is it permissible for an agreement of the majority to be imposed over a dissident minority, duly protecting their interests, in order to avoid that a stubborn or uninterested minority prevents a solution that is preferable to all. The intent is that all creditors should receive at least what would correspond to them in the best scenario of a purchase after a bankruptcy and the above is obtained by insuring to the dissidents the best conditions accepted by the creditors of their own classification that subscribe the covenant.

75

[Appears seal:]
Elena García Beltrán
Expert Translator

obligations of the insolvent company are to be restructured in connection to the credits and which are not bound over these matters.

In other words, the article being analyzed only limits the above with the payment proposal of the credits from the recognized creditors that were classified as common who did not execute the agreement, as well as of their interests, through a forgiveness of debt or delay, or through a combination of both, but from its content, no prohibition can be evidenced in order to establish the necessary conditions that tend to create the better possible conditions for the insolvent company to make its payment proposal.

This construction is in accordance to the declaration of purpose, whereby the legislator indicated the need of establishing provisions for the protection of minorities, but being limited only to the recognized amount, but it does not mean that other provisions regarding the matter of implementing the restructure cannot be established[26].

Pursuant to the above, considering the previous arguments of thisrecital, the terms of the agreement can be freely adopted between the parties, therefore, this District Court can only review that the requirements established on the sole chapter of Title Fifth of the Law of the Matter are complied with, and that the public order provisions are not breached.

---

[26] Since the agreement is binding for the "absent and dissident creditors, it is "necessary to establish provisions for the protection of minorities which preserve the flexibility of the process, "prevent abuses on the agreement to take advantage from the dissidents. Likewise, the impositions to the dissident creditors *in connection to the recognized amount* is limited "and *converted to UDIs, a forgiveness of debt, a delay or a combination of both*, similar to the more favorable ones that have been "accepted by those who subscribed the agreement, as long as a sufficient part of those who subscribed the agreement that has received said conditions. The ones that have family or patrimonial links with the merchant shall be excluded from this group.

Elena García Beltrán
Expert Translator

[Appears seal of the Federal
Judicial Power which literally
reads:
United Mexican States.-
Federal Judicial Power.]

Format A-55

The first requirement is duly complied with pursuant to the explanations of the previous paragraphs.

In connection to the "public order", it is hereby considers that it is important to explain this concept, in order to be able to establish whether the agreement does not challenge provisions of this nature.

According to the Mexican Legal Dictionary from the Legal Research Institute of the Autonomous University of Mexico (*Universidad Autónoma de México*), public interest shall be understood <u>as the petitions related to the collective needs of the members of a community</u> and protected through the direct and permanent intervention of the State.

The numerous and diverse petitions and desires that are protected by the law can be classified in two groups.

The first one includes the petitions that tend to satisfy the specific needs of the individuals and social groups; said petitions constitute the 'private interests' and have the characteristic consisting in that, once they are complied with, they produce benefits only for specific persons.

On the contrary, the second group includes the petitions that are shared between society as a whole, and which compliance generates benefits for all the members of a community. These last petitions are guaranteed through the constant activity of the State offices, and to refer to them the term 'public interest' is used.

Elena García Beltrán
Expert Translator

<u>The protection granted to the public interest has greater legal extent than
the protection granted to private interests[27]</u>.

Based on the above, it is possible to say that the clauses of the agreement
do not breach public order provisions, on the contrary, they grant certainty to the
agreement that has as a purpose to achieve the maintenance of the insolvent
company, which has an impact that favors the collective requests of society, as the
commercial reorganization law considered the conservation of the company as a
matter of public interest, since they are deemed as fundamental economic entities
that generate employments and which are producers of goods and services, that
shall be kept through the agreement that the troubled merchant executes with his
recognized creditors, therefore it is appropriate and reasonable to give preference
to the private interests located corresponding to the minorities on the insolvency
procedure.

Besides, it would be more convenient for all the interested parties on the
commercial insolvency procedure, that the company as such, continues with its
operations once it is restructured, than for it to be declared as bankrupt with the
negative result of its disappearance with the subsequent impact particularly for the
creditors that would have lost their investment without any positive result, besides
the employment sources that are directly and indirectly generated with the
operation of the merchant subject of this procedure, those circumstances
undoubtedly affect the social and economic environment of the insolvent company.

---

[27]Mexican Legal Dictionary edited by the Legal Research Institute of the Autonomous University of Mexico, tome containing
from the letter I through O, pages 2113-2114, regarding the term "public interest".



Elena García Beltrán
Expert Translator

[*Appears seal of the Federal
Judicial Power which literally
reads:*
United Mexican States.-
Federal Judicial Power.]

**SIXTH**: In virtue of the previous explanations, **the agreement is approved with a capacity of a definite judgment and as a matter finally adjudged**, since it complies with the requirements established on the Sole Chapter of the Title Fifth of the Commercial Reorganization Law and since it is not contrary to public order provisions; consequently, and in terms of the provisions of article 165 of the previously mentioned legal ordinance, the agreement binds the merchant before the totality of the recognized creditors that were classified as common, including those that did not execute it.

**SEVENTH**: As it is ordered on articles 166 and 262 subparagraph I, the commercial reorganization procedure of the merchant is hereby concluded, that is, of the entity called **"Vitro"**, *Sociedad Anónima Bursátil de Capital Variable,* **and both the appointed Conciliator Javier Luis Navarro Velasco as well as the Receiver Raúl Fernando Robledo Tovi are hereby dismissed**, the first one, shall cancel, within a term of five business days, the recordation registries made in virtue of the declaration of commercial reorganization. Therefore, it is hereby ordered to put the necessary official communications and the certified copies to his disposition.

**EIGHTH**: In compliance to the provisions by article 265 of the Commercial Reorganization Law, this judgment shall be notified by posting it on the bulletin board of this Court.

Based on the foregoing it is:

**RESOLVED:**

[*Stamp:* Elena García Beltrán
Expert Translator]

**FIRST.** This District Court **approves the agreement** filed by the insolvent company **"Vitro"**, *Sociedad Anónima Bursátil de Capital Variable* and by the creditors indicated on the Fourth Recital of this Resolution and grants it **a capacity as definite judgment and as a matter finally adjudged.**

**SECOND:** The approved agreement, pursuant to the explanations herein, binds all the recognized creditors and the merchant.

**THIRD:** The conciliator is hereby ordered to cancel the recordation registries of the commercial reorganization judgment, within a term of five business days following the day when the notice of this resolution is effective, for the above, the necessary official communications and certified copies shall be issued to him.

**FOURTH:** The commercial reorganization procedure of the insolvent company called **"Vitro"**, *Sociedad Anonima Bursátil de Capital Variable* is hereby terminated, and consequently, the members of the commercial reorganization are hereby dismissed.

**FIFTH: Let it be known by means of the posting** published on the bulletin board of this Court, as it is established on article 265 of the Commercial Reorganization Law.

It is resolved and signed by Mrs. **Sandra Elizabeth Lopez Barajas**, Fourth District Judge in Civil and Labor Matters in the State of Nuevo Leon, assisted by Mr. **Daniel Iduarte Ledesma,** Secretary who attests.

[Appears illegible signature]                    [Appears illegible signature]

80


Elena García Beltrán
Expert Translator

The undersigned, ELENA GARCIA BELTRAN, Expert Translator appointed by the Supreme Court of the State of Nuevo León, as evidenced in authorization number 1006/2012 dated on the 31st day of January , 2012, certify under oath that this translation to the English language is, to my knowledge, true, complete and accurate, without additions or omissions, and is composed of 80 page(s) corresponding to the document in Spanish which is composed of 82 page(s) and which original was delivered to the undersigned for its translation. Each page of the translated document contains the legend "Elena Garcia Beltrán - Expert Traslator" and has been initialed by the undersigned. This translation is issued in the City of Monterrey, Nuevo León, on the 15th day of February , 2012 .

Elena García Beltrán
GABE-860305-JP1

**<u>EXHIBIT B</u>**

| **Business Reorganization Act** | **Ley de Concursos Mercantiles** |
|---|---|
| VII. Any non-monetary obligations must be appraised in cash; if this is not possible, the credit may not be recognized. | dinero, y<br>VII.        Las obligaciones no pecuniarias deberán ser valoradas en dinero; de no ser posible lo anterior, el crédito no podrá reconocerse. |
| Article 89. On the date on which the business reorganization judgment is issued:<br>I.  The unpaid principal and related financial charges of any Mexican currency credits without collateral, shall cease to earn interest and will be converted into UDIs using, for this purpose, the equivalence in said units published by Banco de México.  Any credits originally denominated in UDIs shall cease to earn interest;<br>II.  The unpaid principal and related financial charges of foreign currency credits that are not backed with a collateral, regardless of the place which was originally agreed that they should be paid, shall cease to earn interest and shall be converted into Mexican currency at the exchange rate determined by Banco de México to pay foreign currency-denominated obligations payable in the Republic of Mexico.  Said amount shall in turn be converted into UDIs as provided in Section I above; and<br>III.  Any credits backed with a collateral, regardless that it was initially agreed that they would be repaid in the Republic of Mexico or overseas, shall remain in the currency or unit in which they are denominated, and will only earn the ordinary interest stipulated in the contracts, up to the value of the property that serves as guaranty.<br>In order to determine the participation of creditors having collaterals in the decisions that ey should make pursuant to this Act, the amount of their credits up to the reorganization declaration date, will be converted into UDIs as provided in Sections I and II of this Article for credits not backed with a collateral.  Any creditors with a collateral will participate as such reason of such amount, regardless of the value of their collaterals, unless they choose the option provided for in the next paragraph.<br>If a creditor with a collateral believes that the value of his collateral is lower than the amount of the debt for principal and related charges as of the business reorganization declaration date, may ask the judge to be regarded as a creditor with a collateral for the amount that the creditor itself attributes to his collateral, and as a regular creditor for the balance.  The value that the creditor attributes to his collateral will be converted into UDIs at their value in effect on the business reorganization declaration date.  In this case, the creditor must expressly relinquish, in favor of the Estate, any excess amount between the price obtained upon foreclosing on the collateral and the value that he attributed to the collateral on the basis of the value of the UDIs as of the date on which the foreclosure takes place. | Artículo 89.-  A la fecha en que se dicte la sentencia de concurso mercantil:<br>I.        El capital y los accesorios financieros insolutos de los créditos en moneda nacional, sin garantía real, dejarán de causar intereses y se convertirán a UDIs utilizando al efecto la equivalencia de dichas unidades que da a conocer el Banco de México.   Los créditos que hubieren sido denominados originalmente en UDIs dejarán de causar intereses;<br>II.        El capital y los accesorios financieros insolutos de los créditos en moneda extranjera, sin garantía real, independientemente del lugar en que originalmente se hubiere convenido que serían pagados, dejarán de causar intereses y se convertirán a moneda nacional al tipo de cambio determinado por el Banco de México para solventar obligaciones denominadas en moneda extranjera pagaderas en la República Mexicana. Dicho importe se convertirá, a su vez, a UDIs en términos de lo previsto en la fracción anterior, y<br>III.        Los créditos con garantía real, con independencia de que se hubiere convenido inicialmente que su pago sería en la República Mexicana o en el extranjero, se mantendrán en la moneda o unidad en la que estén denominados y únicamente causarán los intereses ordinarios estipulados en los contratos, hasta por el valor de los bienes que los garantizan.<br>Para los efectos de determinar la participación de los acreedores con garantía real en las decisiones que les corresponda tomar conforme a esta Ley, el monto de sus créditos a la fecha de declaración del concurso, se convertirá a UDIs en términos de lo establecido para los créditos sin garantía real en las fracciones I y II de este artículo.   Los acreedores con garantía real participarán como tales por este monto, independientemente del valor de sus garantías, salvo que decidan ejercer la opción prevista en el párrafo siguiente.<br>Cuando un acreedor con garantía real considere que el valor de su garantía es inferior al monto del adeudo por capital y accesorios a la fecha de declaración del concurso mercantil, podrá solicitar al juez que se le considere como acreedor con garantía real por el valor que el propio acreedor le atribuya a su garantía, y como acreedor común por el remanente. El valor que el acreedor le atribuya a su garantía se convertirá en UDIs al valor de la fecha de declaración del concurso mercantil.  En este caso, el acreedor deberá renunciar expresamente, en favor de la Masa, a cualquier excedente entre el precio que se obtenga al ejecutar la garantía y el valor que le atribuyó, considerando el valor de las UDIs de la fecha en que tenga lugar la ejecución. |
| **Article 90.**  As from the business reorganization judgment | Artículo 90.-   A partir de la fecha en que se dicte la |